UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

Defendant.

Case No. 24-CR-676 (VEC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TAL ALEXANDER'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH WARRANTS AND IDENTIFICATION EVIDENCE, AND IN THE ALTERNATIVE, FOR A HEARING**

Date: June 9, 2025

Milton L. Williams
Deanna M. Paul
Alexander Kahn
**WALDEN MACHT HARAN & WILLIAMS LLP**
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com
akahn@wmhwlaw.com

*Attorneys for Defendant Tal Alexander*

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

A. The Investigation ..... 3

B. The Search Warrants ..... 5

1. *The iCloud Application* ..... 6

2. *The Meta and Premises Applications* ..... 7

C. Photo Book Identification Procedure ..... 8

ARGUMENT ..... 9

I. THE WARRANTS OMITTED MATERIAL FACTS, LACKED PROBABLE CAUSE, AND WERE OVERBROAD ..... 9

A. The Warrant Applications Make Material Omissions Which Alter the Probable Cause Analysis ..... 9

1. *The iCloud Application omits that Tal created his iCloud account after the commission of the alleged crimes.* ..... 10

2. *The Government omits facts relating to Victim-2's* [redacted] ..... 12

3. *The Government omits facts relating to Victim-1.* ..... 14

4. *The Government omits the effect of plaintiff's attorneys on the victims' credibility.* ..... 15

5. *Minor Victim-1 does not even allege wrongdoing by Defendants, which was a knowable fact omitted from the applications.* ..... 16

6. *The omissions were material.* ..... 17

B. The Warrant Applications Are Not Supported by Probable Cause and Rely on Stale Evidence ..... 19

1. *The facts presented to the magistrates were stale.* ..... 20

2. *The iCloud and Meta Applications provide an insufficient connection between the use of the accounts and the Subject Offenses.* ....22

C. The Warrants are Overbroad and Lack Particularity ....23

D. The Premises Warrant is Tainted by Evidence Illegally Recovered from the iCloud Warrant....26

II. THE IDENTIFICATION PROCEDURE WAS UNDULY SUGGESTIVE, WARRANTING SUPPRESSION OF IN-COURT IDENTIFICATIONS ....27

CONCLUSION....30

# TABLE OF AUTHORITIES

## Cases

*Brown v. D'Amico*,
35 F.3d 97 (2d Cir. 1994) ........ 10

*Florida v. Jardines,*
569 U.S. 1 (2013) ........ 27

*Franks v. Delaware*,
438 U.S. 154 (1978) ........ 2, 9, 19

*McColley v. County of Rensselaer*,
740 F.3d 817 (2d Cir. 2014) ........ 10, 16

*Payton v. New York*,
445 U.S. 573 (1980) ........ 27

*Rainsberger v. Benner*,
913 F.3d 640 (7th Cir. 2019) ........ 10

*Riley v. California*,
134 S.Ct. 2473 (2014) ........ 24

*Rivera v. United States*,
928 F.2d 592 (2d Cir. 1991) ........ 9

*United States v. Abboud*,
438 F.3d 554 (6th Cir. 2006) ........ 24

*United States v. Bertini*,
2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023) ........ 20

*United States v. Blake*,
868 F.3d 960 (11th Cir. 2017) ........ 25

*United States v. Canfield*,
212 F.3d 713 (2d Cir. 2000) ........ 9

*United States v. Cerda*,
No. 21-CR-451 (GRB), 2023 WL 3792448 (E.D.N.Y. June 2, 2023) ........ 12

*United States v. Cioffi*,
668 F. Supp. 2d 385 (E.D.N.Y. 2009) ........ 24

*United States v. Clark,*
638 F.3d 89 (2d Cir. 2011) ........ 19, 25

*United States v. Colkley*,
899 F.2d 297 (4th Cir. 1990) .......... 18

*United States v. Combs,*
24-CR-542 (AS), 2025 WL 1361728 (S.D.N.Y. May 9, 2025).......... 16, 17

*United States v. Galpin*,
720 F.3d 436 (2d Cir. 2013).......... 23, 26

*United States v. Garcia*,
2023 WL 4850553 .......... 19, 20

*United States v. Garlick*,
No. 22-CR-540 (VEC), 2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023).......... 17

*United States v. George*,
975 F.2d 72 (2d Cir. 1992).......... 26

*United States v. Gori*,
230 F.3d 44 (2d Cir. 2000).......... 27

*United States v. Hernandez*,
2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) .......... 24

*United States v. Jacobs,*
986 F.2d 1231 (8th Cir. 1993) .......... 10

*United States v. Kostin*,
2025 WL 1504409 (S.D.N.Y. 2025).......... 9

*United States v. Lahey*,
967 F. Supp. 2d 698 (S.D.N.Y. 2013).......... 9

*United States v. Lauria*,
70 F.4th 106 (2d Cir. 2023) .......... passim

*United States v. Leon*,
468 U.S. 897 (1984).......... 20

*United States v. Levy*,
2013 WL 664712 (S.D.N.Y. Feb. 25, 2013).......... 24

*United States v. Marsh*,
644 F. App'x 5 (2d Cir. 2016) .......... 28

*United States v. Moore*,
968 F.2d 216 (2d Cir. 1992).......... 19

*United States v. Mouzon*,
No. 16 CR 284 (CM), 2016 WL 7188150 (S.D.N.Y. Dec. 2, 2016) ................................ 20

*United States v. Nejad*,
436 F. Supp. 3d 707 (S.D.N.Y. 2020)................................................................... 25

*United States v. Ohlson*,
No. 11-cr-225-A (RJA), 2012 WL 913037 (W.D.N.Y. Mar. 16, 2012)........................... 21

*United States v. Ortiz*,
143 F.3d 728 (2d Cir. 1998)................................................................................ 20

*United States v. Prideaux-Wentz*,
543 F.3d 954 (7th Cir. 2008) .............................................................................. 21

*United States v. Purcell*,
967 F.3d 159 (2d Cir. 2020)................................................................................ 25

*United States v. Rajaratnam*,
719 F.3d 139 (2d Cir. 2013)........................................................................... 10, 11

*United States v. Ray*,
541 F. Supp. 3d 355 (S.D.N.Y. 2021)................................................................... 18

*United States v. Raymonda*,
780 F.3d 105 (2d Cir. 2015)....................................................................... 19, 20, 21

*United States v. Reed*,
No. 11-CR-487 (RJS), 2012 WL 2053758 (S.D.N.Y. June 6, 2012), *aff'd*, 756
F.3d 184 (2d Cir. 2014)...................................................................................... 29

*United States v. Reilly*,
76 F.3d 1271, 1280 (2d Cir.), *on reh'g*, 91 F.3d 331 (2d Cir. 1996).................... 14, 15, 27

*United States v. Rivera*,
No. 19 CR. 131 (PAE), 2019 WL 6497504 (S.D.N.Y. Dec. 3, 2019)........................ 28, 29

*United States v. Rowell*,
903 F.2d 899 (2d Cir. 1990)................................................................................ 22

*United States v. Singh*,
390 F.3d 168 (2d Cir. 2004)................................................................................ 21

*United States v. Trzaska*,
111 F.3d 1019 (2d Cir. 1997).............................................................................. 27

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017).................................................................................. 24

*United States v. Vasey*,
834 F.2d 782 (9th Cir. 1987) ..... 27

*United States v. Vigeant*,
176 F.3d 565 (1st Cir. 1999) ..... 10, 12

*United States v. Wagner*,
989 F.2d 69 (2d Cir. 1993) ..... 21

*United States v. Wey*,
256 F. Supp. 3d 355 (S.D.N.Y. 2017) ..... 26

*United States v. Williams*,
365 F. Supp. 3d 343 (S.D.N.Y. 2019) ..... 26

*United States v. Zimmerman*,
277 F.3d 426 (3d Cir. 2002) ..... 22, 23

*Walczyk v. Rio*,
F.3d 139 (2d Cir. 2007) ..... 19

*Washington v. Napolitano*,
29 F.4th 93 (2d Cir. 2022) ..... 2, 10

*Wilson v. Russo*,
212 F.3d 781 (3d Cir. 2000) ..... 2, 10, 11

**Statutes**

18 U.S.C. § 1594 ..... 11

18 U.S.C. § 1962 ..... 11

## INTRODUCTION

The Government's investigation was, by its own admission, rushed. In the words of the FBI, less than four months into investigating a purported 12-year conspiracy: the U.S. Attorney's Office was "looking to charge asap." Decl. Ex. 1.[1] And it did, announcing the indictment at a press conference at the very end of former U.S. Attorney Damian Williams' tenure in office. But the haste to indict quickly cannot justify the use of defective warrants. The Government's search warrants here rest on evidence that was stale, attenuated, and facially overbroad. In its attempt to establish probable cause, the Government cobbled together statements from purported victims of sexual assault dating back nearly 25 years. Critically, there are no specific allegations of criminal conduct against Tal Alexander (hereinafter "Tal") *since 2012*—over 12 years before the warrants' issuance. No warrants should have been issued based on facts this stale.

But it does not stop there. The warrant applications omit dispositive facts that were undoubtedly known to the Government at the time. Notably, the very first warrant, which targeted Tal's Apple iCloud account, fails to establish any reasonable basis to believe that evidence of the offenses would be found therein—particularly because, as the Government well knew, Tal did not even have an iCloud account at the time of nearly all of the alleged conduct. That glaring omission alone undermines the validity of the iCloud warrant.

Just as significantly, in all of the warrants, the Government relied on statements from accusers whose credibility was deeply compromised. As two of the three total accusers alleging wrongdoing against Tal in the warrants, [redacted]

---

[1] "Decl. Ex." refers to exhibits to the accompanying Declaration of Milton L. Williams ("Williams Declaration"). Pursuant to the Protective Order in this matter, *see* ECF No. 57, we respectfully request to file the redacted portions of this memorandum under seal.

[redacted] Nor did the Government disclose that civil plaintiff's attorneys played critical roles in driving the Government's investigation from its early stages and amplifying unreliable allegations.

The Government failed to present any of this information to the Magistrate Judge, as required. *See Washington v. Napolitano*, 29 F.4th 93, 108 (2d Cir. 2022) ("[A] police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.") (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000). Had the Government included these key facts (and others outlined below), as it should have, there would have been no probable cause to support the warrants. It is telling that of the eleven women in the first warrant, not one of these individuals appears in any of the three indictments. At a minimum, a *Franks* hearing should be ordered to determine whether the warrant applications contained intentional or recklessly misleading omissions and whether the omissions were material. *See Franks v. Delaware*, 438 U.S. 154 (1978).

On the basis of these patently stale and misleading allegations, the Government obtained warrants to conduct as broad of a search of Tal's property as can be conceived. They effectively searched his entire digital and personal life. Lacking any meaningful limits, the warrants amounted to unconstitutional general warrants, and this court should suppress any evidence obtained from them.

The warrants were not the only unlawful method the Government employed to obtain evidence. The Government also used highly suggestive photo books to identify Tal. *See* Exs. 2-18. These photo books, shown to multiple witnesses, were apparently comprised almost entirely of photos of individuals involved in the Government's investigation—either possible subjects,

witnesses, or otherwise. They appear to contain few or no filler photos and demonstrate no effort to conduct a fair and non-suggestive procedure. Given the taint from this procedure, the Government should not be permitted to elicit in-court identifications of Tal at trial from these witnesses.

## FACTUAL BACKGROUND

### A. The Investigation[2]

The origins of the criminal investigation raise stark questions about the integrity of the prosecutorial process. The inquiry was set in motion not through any organic law enforcement discovery, but rather through a private email exchange rooted in personal animus and political affinity.

On June 18, 2024, a Miami-based real estate broker—a business rival to Tal and Codefendant Oren Alexander—emailed her sister, who worked as a prosecutor at the Miami-Dade State Attorney's Office ("SAO"), urging her to pursue a case against the Defendants. Decl. Ex. 19. Lacking any first-hand knowledge of misconduct, the broker simply cited social media and linked to an article published a day earlier. "I hope you guys can go after them," she wrote, "the comments on socials are outrageous. . . it seems everyone hates them - even their fellow Trumpers. . . Birds of a feather…" *Id.* The article relied heavily on lawsuits against Tal's Codefendants and on the lawyer that brought them. *Id.* Notably, the article quoted Evan Torgan, a plaintiff's attorney who, in March 2024, filed the first two sexual assault lawsuits against Oren and Alon Alexander.[3]

---

[2] Materials cited herein were produced in response to Chapter 119 Florida State Public Records Requests.

[3] These litigations were first reported by The Real Deal, which published seven articles and shared seven Instagram posts between June 8, 2024 and June 18, 2024, all of which repeated the two lawsuits' allegations and included "rape" in the headline. Six of the stories quoted Mr. Torgan. The New York Times and Wall Street Journal first published stories about the assault claims levied

The sister passed the email on to Natalie Snyder, Chief of the SAO's Sexual Battery Division, with a note: "My sister will not stop talking about these 2 brothers who make a practice of dosing and raping young women." *Id.* Around the same time, Ms. Snyder forwarded the email to Jessica Pasqual, a detective in the Miami Beach Police Department's Special Victims Unit. *Id.* That same day, Det. Pasqual began investigating a sexual assault allegation against Oren Alexander.

Almost immediately, state prosecutors coordinated with their federal counterparts. Rather than undertake an independent, objective investigation, law enforcement leaned on media coverage and private plaintiffs' attorneys to build their cases—specifically, Evan Torgan and Carissa Peebles. *See, e.g.,* Exs. 20-23. These lawyers became integral members of the state and federal government's respective prosecution teams. In addition to being advocates for their clients, they acted as de facto investigators, facilitators, and strategic partners of the government. *See, e.g.,* Decl. Ex. 27; Decl. Ex. 24. Information was readily exchanged between federal and state law enforcement agencies and civil counsel; bond conditions were discussed collaboratively, Decl. Ex. 25; Decl. Ex. 26; and complainants were often sourced or funneled directly through civil litigation, Decl. Ex. 20. For example, within weeks of providing federal agents with a USB drive containing hundreds of photographs, dozens of videos, and a trove of cherry-picked data, *see* Decl. Ex. 27, Mr. Torgan handed Florida prosecutors "a new victim in Miami Beach." Decl. Ex. 28. On another occasion, Ms. Snyder asked Mr. Torgan to contact potential accuser-witnesses because she worried that direct outreach from the government might scare the women off. Decl. Ex. 23.

---

against the Alexanders on June 17, 2024, and June 18, 2024, respectively, again quoting Mr. Torgan.

Perhaps more troubling, the relationship was reciprocal and even transactional. Ms. Snyder solicited complainants through these plaintiffs' attorneys; Mr. Torgan and Ms. Peebles brought accusers and evidence to Ms. Snyder; and Ms. Snyder referred potential clients to them. On one occasion, when a victim told Ms. Snyder she wanted to sue the Defendants, Ms. Snyder referred her directly to Mr. Torgan and Ms. Peebles.[4] Decl. Ex. 24.

The investigative process—rather than filtering out weak or unreliable allegations—appears to have amplified them. Indeed, as described below, the first federal search warrant, dated August 16, 2024, detailed allegations from eleven accusers, most of whom were either represented by a plaintiff's attorney (primarily, by Mr. Torgan) or had their stories published by the media in June 2024. None of these women appear in the original or superseding indictments.

### B. The Search Warrants

In its investigation, the Government obtained and executed a series of search warrants. Tal moves to suppress the evidence recovered from three of them.[5] In August 2024, the Government obtained warrants to search each of the defendants' Apple iCloud accounts (the "iCloud

[4] This referral may run afoul of nationally recognized standards for prosecutors, which warn against making referrals. The American Bar Association Criminal Justice Standards for the Prosecution Function provides: "The prosecutor should not recommend the services of particular defense counsel to accused persons or witnesses in cases being handled by the prosecutor's office. If requested to make such a recommendation, the prosecutor should consider instead referring the person to the public defender, or to a panel of available criminal defense attorneys such as a bar association lawyer-referral service, or to the court. . . . In the rare case where a specific recommendation is made by the prosecutor, the recommendation should be to an independent and competent attorney, and the prosecutor should not make a referral that embodies, creates or is likely to create a conflict of interest." Standard 3-1.7(i).

[5] On December 11, 2024, the Government also obtained a warrant to search 248 Bal Bay Drive, Bal Harbor, Florida, where they purportedly recovered Tal's cell phone. As of this submission, it is our understanding that the Government has not been able to access this cell phone or recover evidence from it. Tal reserves all rights to request leave from the Court to move to suppress any evidence from this cell phone, should the Government later obtain evidence from it.

Application"), Decl. Ex. 30, and each of the defendants' Facebook and Instagram accounts (the "Meta Application"). Decl. Ex. 31. On December 8, 2024, three days before Tal's arrest, the Government obtained a warrant to search his apartment at 432 Park Avenue, New York, NY (the "Premises Warrant Application" and together the "Warrant Applications"). Decl. Ex. 32. The warrants sought evidence related to certain crimes, including racketeering conspiracy, sex trafficking, sex trafficking conspiracy, transportation to engage in illegal sexual activity, coercion and enticement and transportation of a minor to engage in illegal sexual activity, and aiding and abetting (the "Subject Offenses").

### 1. *The iCloud Application*

The iCloud Application outlines sexual assault allegations of eleven purported victims, referred to in each of the Warrant Applications as Victims 1-7 and Minor Victims 1-4. Only three (Minor Victim-2 and Victims 1 and 2) allege any wrongdoing by Tal.[6] Significantly, none of the allegations implicating Tal in criminal activity were more recent than 2012. [redacted]

[6] [redacted]

According to the iCloud affidavit, [redacted] *See* Decl. Ex. 30, at 11 n.3. Even by June 5, 2025, nine months after the Government's warrant was issued, it confirmed by email that it had *still* not obtained the police report. Review of this police report, attached hereto as Exhibit 29, which the defense obtained in less than a month, demonstrates that [redacted]

[redacted] None of these allegations include facts that could conceivably sustain a charge of sex trafficking (even under the Government's strained theory) or any of the other charges listed in the warrants.[7]

Crucially, Tal did not even have an iCloud account at the time of at least two of those three alleged assaults. Records from Apple, which the Government had in its possession, plainly show that Tal created his account on March 29, 2012. *See* Decl. Ex. 33. The allegations of [redacted] all fall before this date. It is also unclear from the iCloud Application whether Tal had an iCloud account at the time of [redacted] allegations. The iCloud Application states only that [redacted] and does not provide a more precise date for the alleged sexual assault. The Government failed to include any of this information in the warrants.

As described below (*see* Section I.A), the Government also had in its possession and omitted vital information undermining the purported victims' credibility.

### 2. *The Meta and Premises Applications*

The Meta Application, submitted two weeks after the iCloud warrant, included the same eleven victim accounts as in the iCloud Application (and the same material omissions) but added facts relating to sexual assaults of three additional victims (Victims 8-10). [redacted]

---

[7] The iCloud warrant lists the crimes of racketeering conspiracy and sex trafficking conspiracy, but as described further below, the facts presented do not establish either, and no indictment had been obtained at the time of this warrant's issuance. Moreover, Tal's name is mentioned sparsely after [redacted], and not with respect to partaking in any conspiracy.

In the Premises Warrant Application, the Government included the same victim accounts as in the Meta Application. However, as is key here, the Premises Warrant Application relied heavily on communications obtained from the illegal search of Tal's iCloud account. Indeed, the Premises Warrant Application included six-pages-worth of text messages recovered from Tal's iCloud account. Decl. Ex. 32 at 11-16. Because this evidence was unlawfully obtained, it should not be considered when reviewing the legality of the Premises Warrant. Without it, this warrant too lacked probable cause.

### C. Photo Book Identification Procedure

Various witnesses identified Tal in a photo book identification procedure administered by law enforcement. *See* Exs. 2-18. Although the Government has declined to disclose which witnesses identified Tal, the extent of any prior relationship between those witnesses and Tal, or any FBI reports describing the procedures, it has provided a general description of the procedure. Decl. ¶¶ 23. Typically, near the conclusion of a witness interview, the Government showed the photo book to the witness. *Id.* The photos were shown to the witness one at a time and in order, and the witness was asked if they knew who was depicted in each photo, as it was viewed. *Id.* The witnesses were not told the sources of the photos or whether they correctly identified someone in the photo. *Id.* The number of photos in each photo book ranged from 7 to 18 photos. The Government intends to elicit in-court identifications of Tal at trial from witnesses who viewed and identified him in the photo books.

Relevant here, the photos in each of the photobooks were apparently comprised solely of individuals involved in the Government's investigation—the defendants, and either other subjects or witnesses. This is apparent from other discovery materials that the Government has provided where these individuals appear. In other words, the photo books did not appear to include meaningful filler photos or photos of individuals not involved in the investigation.

## ARGUMENT[8]

### I. THE WARRANTS OMITTED MATERIAL FACTS, LACKED PROBABLE CAUSE, AND WERE OVERBROAD

#### A. The Warrant Applications Make Material Omissions Which Alter the Probable Cause Analysis

Evidence obtained pursuant to a warrant must be suppressed if (1) the warrant application contained intentionally or recklessly misleading statements or omissions and (2) the falsehoods or omissions were material and necessary to the warrant's issuance. *See United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). To obtain a *Franks* hearing, a defendant is required to make a "substantial preliminary showing" as to each prong. *Franks*, 438 U.S. at 155-56; *United States v. Lauria*, 70 F.4th 106, 131-32 (2d Cir. 2023) (vacating judgment and remanding for a *Franks* hearing on unresolved factual issues). Recklessness "may be inferred where the omitted information was clearly critical to the probable cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *see United States v. Kostin*, 2025 WL 1504409 *21 (S.D.N.Y. 2025) (finding, after hearing, that "affidavit contained material misstatements and omitted material facts in reckless disregard of the truth"); *United States v. Lahey*, 967 F. Supp. 2d 698, 723-27 (S.D.N.Y. 2013) (suppressing evidence after finding reckless omissions).

Although a law enforcement officer "need not volunteer every fact that arguably cuts against the existence of probable cause," the officer "may not omit circumstances that are critical to the evaluation of probable cause." *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994); *see also Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019) ("An officer similarly violates the Fourth

---

[8] Tal also joins in any forthcoming motions to suppress evidence filed by Codefendants Alon and Oren Alexander to the extent they are applicable to Tal. Similarly, Codefendants Oren and Alon Alexander adopt arguments raised in Tal's motion to suppress evidence to the extent they are applicable to Codefendants.

Amendment if he intentionally or recklessly withholds material information from a probable cause affidavit."). An officer "cannot make unilateral decisions about the materiality of information" or "merely inform the magistrate or judge of inculpatory evidence." *Washington v. Napolitano*, 29 F.4th 93, 108 (2d Cir. 2022) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)). Stated differently, the affiant is required to include in the warrant affidavit facts falling into the category of "the kind of thing the judge would wish to know." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir. 1993)).

Where, as here, a warrant affidavit relies on witnesses' statements and not an affiant's own observations, the witnesses' "credibility is plainly relevant—even critical—to the probable cause determination." *McColley v. County of Rensselaer*, 740 F.3d 817, 825 (2d Cir. 2014). The "failure to provide known information that goes directly to the credibility" of a witness violates an agent's disclosure obligations. *Id.*; *see also United States v. Vigeant*, 176 F.3d 565, 574 n.9 (1st Cir. 1999) ("The magistrate judge must be given the opportunity to assess the totality of the circumstances.").

Here, the Warrant Applications contain glaring omissions that were, at a minimum, recklessly made. As outlined below, (i) the iCloud Application omits critical information that Tal's iCloud account did not exist at the time of nearly all of the alleged crimes, and (ii) each of the Warrant Applications omits key evidence bearing on the credibility of the only victims alleging wrongdoing by Tal. At bottom, the Government presented one-sided and misleading evidence to obtain the warrants, which requires suppression, or in the alternative, a *Franks* hearing.

**1. *The iCloud Application omits that Tal created his iCloud account after the commission of the alleged crimes.***

As a threshold matter with respect to the iCloud Application (the first warrant obtained), the Government knew, but failed to disclose, that Tal did not even have an iCloud account at the time of two of the three total sexual assaults he was accused of in the affidavit. The Government

was in possession of records from Apple indicating that Tal created his iCloud account on March 29, 2012—[redacted] Decl. Ex. 33. [redacted] Decl. Ex. 30 at 17. Without a more specific date, this third accusation may too have occurred before the creation of the iCloud account.

This is a critical omission. It surely constitutes "the kind of thing the judge would wish to know" when reviewing the application. *Rajaratnam*, 719 F.3d at 154 ("Omissions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known was the kind of thing the judge would wish to know.") (quoting *Wilson*, 212 F.3d at 788) (cleaned up). The iCloud Application contains no explanation for how text messages, photos, videos, and other evidence sought might be contained on an iCloud account from *before* such an account was created. The evidence recovered from searching the iCloud account should be suppressed on this material omission alone.

To be sure, the iCloud affidavit also states that the Government is searching for evidence of, among other listed crimes, racketeering conspiracy (18 U.S.C. § 1962(d)) and conspiracy to commit sex trafficking (18 U.S.C. § 1594). The latest superseding indictment charges Tal with a sex trafficking conspiracy from 2009 to 2021. ECF 63. However, at the time of the iCloud warrant's issuance, no indictment had been obtained or incorporated into the application. And, the probable cause section of the affidavit fails to present facts establishing any conspiracy, much less Tal's involvement in a conspiracy lasting beyond 2012 when his name is last mentioned with respect to any misconduct.

### 2. *The Government omits facts relating to Victim-2's* [redacted]

But the iCloud account's creation date was not the only key fact omitted. All of the Warrant Applications fail to include critical information required to assess the credibility of the victims on which the applications entirely rely. This missing information constitutes "obvious reasons to doubt the veracity of the allegations." *United States v. Cerda*, No. 21-CR-451 (GRB), 2023 WL 3792448, at *6 (E.D.N.Y. June 2, 2023); *Vigeant*, 176 F.3d at 574 n.9 (even with independent corroboration, "known unreliability" cannot be omitted). One critical piece of material information omitted is related to Victim-2's credibility. Specifically, [redacted]

[redacted]

[redacted]

[9] [redacted]

[redacted]

[redacted]

This long history [redacted] was known to the Government. It was publicly available at the time it sought the warrants. Any serious investigation would have involved gathering background information on the key victims, including information in the public domain and asking the victims if they had accused anyone of sexual assault previously. [redacted] They were "clearly critical" facts that should have been presented to the magistrate to "assess[] the legality of the search." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.), *on reh'g*, 91 F.3d 331 (2d Cir. 1996). It is remarkable that the Government would ask any

court to rely on any information provided by Victim-2 without mentioning [redacted], and this Court should infer recklessness from its failure to do so.

**3. *The Government omits facts relating to Victim-1.***

With respect to Victim-1, the Warrant Applications [redacted]

[redacted]

[redacted] The affiant omitted these key facts from the Warrant Applications as well.[10]

The affiant's selective exclusion of material information—all known to the affiant at the time—and "fail[ure] to provide all potentially adverse information" undercuts the Magistrate Judge's probable cause finding. *Reilly*, 76 F.3d at 1280.

#### 4. *The Government omits the effect of plaintiff's attorneys on the victims' credibility.*

Compounding these credibility issues, the Government fails to mention the guiding role that plaintiff's attorneys had in the investigation from its early stages. These lawyers not only helped coordinate the victim accounts presented in the Warrant Applications but had a powerful economic motivation to do so. Indeed, most of the victims named in the iCloud application were represented by lawyers. Mr. Torgan, in particular, represented four victims, [redacted] An alleged victim is of course entitled to hire a lawyer to pursue monetary damages. But the risk that a motivated plaintiff's lawyer will shape his client's account is undeniable. Any competent agent would be aware of that risk when assessing the credibility of a plaintiff-victim, and the failure of the Warrant Application to inform the Magistrate Judge of the role of plaintiff lawyers in this investigation was at least reckless. This investigation was sparked by allegations that plaintiff lawyers seeded in the media; pursued by Florida prosecutors who were guided by those same lawyers; and passed to federal enforcers, who put many of those same allegations in warrant

[10] Demonstrating the one-sidedness of the affidavits, the affiant did include the fact that Tal filed a police report concerning Victim-1's vandalization at his apartment building (an act that constitutes the crime of Criminal Mischief, Penal Law § 145.00, under New York law).

applications. The Magistrate Judge knew nothing of these critical reliability issues, and these omissions should alone be fatal.

In *United States v. Combs*, the defendant made a similar argument because a victim had previously filed a civil suit. 24-CR-542 (AS), 2025 WL 1361728, at *3 (S.D.N.Y. May 9, 2025). The Court rejected the argument but only because the victim there had already "resolv[ed] the [civil] case" by the time the warrant was issued and therefore "lacked any financial motive to lie." *Id.* (citing *McColley*, 740 F.3d at 825). The opposite occurred here. [redacted] As the Court in *Combs* recognized, "a confidential informant's credibility must be considered in a warrant application." *Id.* Also, unlike in *Combs*, [redacted] accounts are not corroborated by other evidence presented in the Warrant Applications. The financial motivation to exaggerate and falsify, and the influence of civil attorneys sharing that motivation, should have been disclosed to the Magistrate Judge.

**5. *Minor Victim-1 does not even allege wrongdoing by Defendants, which was a knowable fact omitted from the applications.***

Even in the Warrant Applications, Minor Victim-1 [redacted] It is unclear why the Government would even include [redacted] other than to improperly infer that the defendants perpetrated the alleged assault without any evidence.

[redacted][11] It strains credulity to believe that the FBI cannot obtain a simple complaint report, which defense counsel has easily obtained. But had they made the effort and reviewed it, they would have seen that Tal is *completely absent* from the report. Decl. Ex. 29. It does not even indicate his presence at the party where the alleged assault occurred, let alone implicate him in the alleged crime. Nor were the Codefendants even listed as suspects. None of the defendants were ever interviewed by law enforcement about the allegations. This information was clearly ascertainable, but the Government failed to do its diligence, and as a result, presented misleading information to the magistrate.

### 6. ***The omissions were material.***

The second prong of the analysis focuses on whether the alleged misstatements or omissions were material to the probable cause determination. For omissions, as we have here, the reviewing court should "supplement the affidavit with any facts known at the time that were omitted from the affidavit" and determine "if the corrected warrant application establishes probable cause." *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *8 (S.D.N.Y. Mar. 20, 2023); *United States v. Lauria*, 70 F.4th 106, 126 (2d Cir. 2023) ("For an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the

[11] [redacted] *See, e.g.*, Decl. Ex. 30 at 11 n.3. Notably, even if the FBI could not locate these records by the time of the iCloud warrant (issued on August 16, 2024), they certainly should have been able to locate the records by the time of the Premises Warrant nearly four months later (issued on December 8, 2024). The statement that the [redacted] thus appears to be false. Indeed, on June 5, 2025, nine months after the Government's warrant issued, it confirmed by email that it had still not obtained the police report. By contrast, the defense obtained a copy of this report in less than a month.

affidavit would defeat probable cause for arrest.") (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

Here, the inclusion of the fact that Tal had no iCloud account at the time of the alleged assaults "defeats" probable cause in the iCloud Application. *Lauria*, 70 F.4th at 126. In other words, at the critical juncture when evidence would theoretically have been saved on his iCloud account, there was no such account. Nor did the Government make the slightest effort to explain why, long after the alleged assaults occurred, Tal would have saved relevant evidence to his iCloud account. This reckless omission of a material, known fact alone defeats the probable cause determination.

Moreover, the omissions relating to the credibility of Victim-1 and Victim-2, including their financial motivations and the role of their lawyers, undercut the most recent two victim accounts relating to Tal in each of the Warrant Applications (although they still date from a decade before the warrant's issuance). Had those omissions been cured in the affidavits, they most certainly would have "cast [them] in a materially different light or raised issues about [their] credibility." *United States v. Ray*, 541 F. Supp. 3d 355, 384 (S.D.N.Y. 2021). Victim 2's history of [redacted] are not "general in nature" and indeed "suggest that . . . [she] would lie or had lied about a matter of importance." *Id.*

Setting Victims 1 and 2 aside, the only remaining allegations are from nearly 25 years ago, and there are no allegations that Tal used a phone or social media in connection with these incidents (nor could there be, as these technologies did not exist). With the inclusion of the omitted material facts in the warrant affidavits, the warrants plainly lack probable cause with respect to Tal. Moreover, the Government cannot rely on the good faith exception because it does not apply where, as here, the affiant officer was at least reckless or grossly negligent. *United States v.*

*Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015); *United States v. Clark,* 638 F.3d 89, 100 (2d Cir. 2011); *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).

At a minimum, Tal has made a "substantial preliminary showing" that the affiant recklessly omitted facts known at the time of the warrant's issuance and those facts were material to the probable cause showing, justifying a *Franks* hearing. *Franks*, 438 U.S. at 155-56.

**B. The Warrant Applications Are Not Supported by Probable Cause and Rely on Stale Evidence**

Not only do the Warrant Applications omit material facts, but those asserted fall far short of establishing probable cause that evidence of the Subject Offenses would be found in Tal's iCloud account, Meta accounts, and home. The facts implicating Tal are extremely remote—ranging from over 12 years to 23 years prior to issuance of the warrants. The evidence that Tal used a phone or social media in the commission of any of the alleged crimes is threadbare. And as for the iCloud warrant, nearly all of the allegations were before Tal even had such an account. Taken together, the facts attributed to Tal are simply too stale, attenuated, and sparse to establish probable cause for any of the searches.

"[P]robable cause to search a location for . . . particular items or records is demonstrated where a totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found thereby." *Lauria*, 70 F.4th at 128. This standard requires less than "hard certainties" but "more than a hunch." *Id*. Undoubtedly, "[a] court reviewing an issuing judge's finding of probable cause must accord considerable deference to the probable cause determination." *United States v. Garcia*, 2023 WL 4850553, at *4 (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)). But that deference must yield where the affidavit in support of the challenged warrant "requires too far an inferential leap" between the information supplied and the establishment of probable cause. *Garcia*, 2023 WL 4850553, at *8; *see United States v. Bertini*, 2023 WL 8258334,

at *4 (S.D.N.Y. Nov. 29, 2023) ("The deference owed to a magistrate judge's determination does not . . . preclude this Court from properly concluding that a warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of circumstances." (cleaned up) (citing *United States v. Leon*, 468 U.S. 897, 915 (1984)).

In addition, with respect to the iCloud and Meta Applications, the magistrate did not have the benefit of a grand jury's finding of probable cause, as no indictment existed at that time. *Cf. United States v. Mouzon*, No. 16 CR 284 (CM), 2016 WL 7188150, at *6 (S.D.N.Y. Dec. 2, 2016) (grand jury's probable cause finding "further supports the judge's determination"). Hand-waving about a continuing conspiracy in this case cannot substitute for the utter failure to lay such a factual basis.

**1. *The facts presented to the magistrates were stale.***

The Warrant Applications allege Tal's involvement in the sexual assaults of three victims, one of which occurred [redacted] and two of which were [redacted] These alleged facts are entirely stale and cannot support the issuance of a warrant so many years later. "[A] warrant lacks probable cause where the evidence supporting it is not sufficiently close in time to the issuance of the warrant that probable cause can be said to exist as of the time of the search—that is, where the facts supporting criminal activity have grown stale by the time that the warrant issues." *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (internal quotations omitted). To determine staleness, a court may assess the "age of the information in the affidavit" and the "nature of the conduct alleged to have violated the law." *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998).

Courts have found evidence far less remote than that offered here to be stale. *See, e.g.*, *Raymonda*, 780 F.3d at 114 (finding nine-month old evidence that defendant accessed child

pornography to be stale); *United States v. Prideaux-Wentz*, 543 F.3d 954, 959 (7th Cir. 2008) (four-year gap was stale with respect to possession of child pornography); *United States v. Ohlson*, No. 11-cr-225-A (RJA), 2012 WL 913037, at *2-3 (W.D.N.Y. Mar. 16, 2012) (finding staleness where warrant affidavit alleged criminal activity over a five-day period "more than one year [ago]"); *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (finding staleness where the warrant affidavit alleged a drug sale six weeks before the search).

Indeed, there does not appear to be any case in this Circuit affirming issuance of a warrant, even for electronic records, based on evidence close to as remote as here. Even in child pornography cases where, uniquely, "collectors and distributors rarely, if ever, dispose of their collections," courts recognize that there "must be some limitation on this principle." *Prideaux-Wentz*, 543 F.3d at 959 (finding staleness based on four-year lapse). As well, even if temporal requirements are relaxed for conspiracies and continuing patterns of conduct (*see United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990)), the Warrant Applications contain no allegations of criminal conduct attributed to Tal since 2012, which is simply too remote.

Moreover, the notion that Tal, who was not under criminal investigation until June 2024, retained all data and files from over 12 years ago is also a stretch, even in an age where cloud technology and social media can retain large amounts of data. The iCloud Application presents no evidence that Tal continuously backed up his account for 12 years without disruption. These are personal accounts, not business accounts or devices with retention policies for its documents and files. *Cf. United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (warrant to search for 20-month-old records not stale where defendant was alleged to have run a long-term fraud scheme because the nature of the documents were business records).

**2. *The iCloud and Meta Applications provide an insufficient connection between the use of the accounts and the Subject Offenses.***

The iCloud and Meta Applications also fail to allege any meaningful connection between the Subject Offenses and Tal's use of his iCloud account, cell phone, or Meta accounts. Indeed, the applications make only a passing reference to Tal using a cell phone in connection with [redacted][12] And that usage was far more limited than the areas of the iCloud account that the warrant authorized to search. [redacted] These threadbare facts concerning the use of Tal's phone in relation to the alleged sexual assaults provide no reason to believe any evidence from these incidents would be found on Tal's iCloud account [redacted]

To be sure, the affidavits also allege that [redacted] *See United States v. Zimmerman*, 277 F.3d 426, 435 (3d Cir. 2002) (warrant to search home for evidence of adult pornography, among other things, insufficient where affidavit "did not even suggest that [the

[12] The allegations with respect to Minor Victims 1-3 occurred six years before the release of the first iPhone, ten years before iCloud was brought to market, and at a time when cell phones were not universal.

defendant] ever downloaded the video clip [to his computer].”). Absent these facts, the Court cannot draw the inference that [redacted] would be located on these digital accounts.

With respect to the Meta Application, the additional facts added (relating to Victims 8-10 and Minor Victim-4) do not change the probable cause analysis at all. At most, [redacted]

The Meta Application also provides a list of evidence purportedly demonstrating that the Subject Offenses would be found on the defendants' Meta accounts. *Id.* at 34-41. However, [redacted] By contrast, the warrant seeks to review nearly the entirety of Tal's Facebook and Instagram accounts without any date restriction, which is overbroad, as discussed below. As with the iCloud Application, the evidence presented to the magistrate in the Meta Application was extremely stale and unsupported by probable cause, and evidence from Tal's Meta accounts should be suppressed.

### C. The Warrants are Overbroad and Lack Particularity

The Fourth Amendment's Warrants Clause requires that a warrant state with particularity the place to be searched and the things to be seized. “The chief evil that prompted the framing and adoption of the Fourth Amendment was the indiscriminate searches and seizures conducted by the British under the authority of general warrants.” *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013). For searches of electronic accounts, in particular, a general search is “an especially potent threat to privacy.” *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). That is because

"[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions . . . ." *Riley v. California*, 134 S.Ct. 2473, 2490 (2014). The warrants here are overbroad and lack particularity for two primary reasons.

*First*, none of the warrants contain a date limitation. The warrants effectively authorize a search of the entirety of Tal's iCloud account, Meta accounts, and electronic records in his home without restriction. Courts in this Circuit have expressly found that the absence of a date limitation in a warrant to search electronic records is problematic and can render a warrant unconstitutionally overbroad. *United States v. Levy*, 2013 WL 664712, at *11 n.7 (S.D.N.Y. Feb. 25, 2013) ("Several courts in this Circuit have recognized the constitutional questions that are raised by the lack of a specific date range in a warrant for documentary records and warned the Government to include one when possible."); *United States v. Hernandez*, 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) ("A failure to indicate a time frame could render a warrant constitutionally overbroad because it could allow the seizure of records dating back arbitrarily far and untethered to the scope of the affidavit which ostensibly provided probable cause."); *see also United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.").

Here, although the affidavits allege conduct spanning a number of years, there are no allegations of criminal activity more recent than 2012. Yet, the warrants authorize a search of Tal's electronic accounts virtually without limitation and with no date restrictions. This, in and of itself, is unconstitutionally overbroad. *See United States v. Cioffi*, 668 F. Supp. 2d 385, 396 (E.D.N.Y. 2009) (warrant for search of computer overbroad where it did not limit the items to be seized from an email account by date limitation or otherwise); *United States v. Nejad*, 436 F. Supp. 3d 707, 724–25 (S.D.N.Y. 2020) ("Many courts, for example, have found warrants for the seizure

of business records constitutionally deficient where they imposed too wide a time frame or failed to include one altogether."); *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (noting overbreadth of Facebook warrant and explaining that "[w]ith respect to private instant messages, for example, the warrants could have limited the request to messages sent to or from persons suspected at that time of being prostitutes or customers").

*Second*, for the same reasons the warrants lack probable cause, as described in Section I.B above, the warrants are also demonstrably overbroad, with hand-waving about a continuing conspiracy equally as insufficient to save them. "In determining whether a warrant is overbroad, courts must focus on whether there exists probable cause to support the breadth of the search that was authorized." *United States v. Nejad*, 436 F. Supp. 3d 707, 725 (S.D.N.Y. 2020). The warrants authorize the search of an incredibly broad set of private data from Tal—essentially the entirety of his iCloud and Meta accounts. Decl. Ex. 30, Attachment A; Decl. Ex. 31, Attachment A. The breadth of this data clearly "outruns the probable cause supporting the warrant." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011). Indeed, the facts presented to the magistrate do not establish that criminal activity "pervaded [the] entire account[s]," warranting seizure of all records. *United States v. Purcell*, 967 F.3d 159, 181 (2d Cir. 2020) (internal quotations omitted).

In addition, not only are the warrants overbroad, but the list of categories of evidence for which law enforcement will search does little to particularize the searches. Decl. Ex. 30, Attachment A at 4-5. For the iCloud warrant, these broad categories include, without any date limitation, all communications, photographs, videos, documents, calendars, location data, other online accounts, related to the "commission of the Subject Offenses." *Id.* The evidence to search for in Tal home was even broader. It included a 17-point bulleted list comprised of nearly every conceivable type of evidence that could be found in a home relating to the Subject Offenses,

including "any computer devices and storage media." Decl. Ex. 32, Attachment A at 4. Notably, this list repeatedly used catch-all phrases including "such as" and "including but not limited to," which courts have found can render a warrant unconstitutionally overbroad. *See United States v. Wey*, 256 F. Supp. 3d 355, 385 (S.D.N.Y. 2017) (finding lack of particularity where warrants set forth "expansive categories of often generic items subject to seizure—several of a 'catch-all' variety—without, crucially, any linkage to the suspected criminal activity, or indeed any meaningful content-based parameter or other limiting principle"); *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (granting suppression where "broad authorization to search for 'any other evidence relating to the commission of a crime' plainly is not sufficiently particular with respect to the things to be seized because it effectively granted the executing officers' virtually unfettered discretion to seize anything they saw").

At bottom, the warrants do not pass the "heightened sensitivity" for digital searches given the scope of personal information involved. *Galpin*, 720 F.3d at 447.

### D. The Premises Warrant is Tainted by Evidence Illegally Recovered from the iCloud Warrant

The Government obtained the Premises Warrant months after the iCloud and Meta warrants. The Premises Warrant Application makes the same material omissions and contains the same inferential leaps as the iCloud and Meta Applications, but also relies extensively on evidence recovered from the illegal search of Tal's iCloud account. For this additional reason, the evidence obtained from 432 Park Avenue should be suppressed.

"Evidence seized during an illegal search should not be included in a search warrant affidavit." *United States v. Williams*, 365 F. Supp. 3d 343, 350 (S.D.N.Y. 2019) (citing *United States v. Trzaska*, 111 F.3d 1019, 1026 (2d Cir. 1997)). When the Government includes such tainted evidence in a search warrant affidavit, a reviewing court must "excise the tainted evidence

and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Reilly*, 76 F.3d at 1282 n.2 (quoting *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987)). If no probable cause can be had, the evidence seized pursuant to the illegal search warrant must be suppressed. *See United States v. Williams*, 365 F. Supp. 3d 343, 350 (S.D.N.Y. 2019).

The Premises Warrant Application relied extensively on evidence the Government had seized in execution of the iCloud warrant. Specifically, the affiant quoted six-pages-worth of text message chains recovered from Tal's iCloud. *See* Decl. Ex. 32 at 11-16. Because these messages were recovered pursuant to an illegal search, the Court must excise them from the warrant and make a determination with respect to the remaining facts. This leaves the same stale facts on which the iCloud and Meta warrants rely. Where those facts should be considered insufficient to support warrants to search electronic accounts, they certainly are not adequate to search Tal's home. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980); s*ee also Florida v. Jardines,* 569 U.S. 1, 5 (2013) ("[W]hen it comes to the Fourth Amendment, the home is the first among equals"); *United States v. Gori*, 230 F.3d 44, 51 (2d Cir. 2000) ("Fourth Amendment privacy interests are most secure when an individual is at home with doors closed and curtains drawn tight."). The same arguments outlined above apply to the Premises Warrant.

## II. THE IDENTIFICATION PROCEDURE WAS UNDULY SUGGESTIVE, WARRANTING SUPPRESSION OF IN-COURT IDENTIFICATIONS

The Government's use of photo books to identify Tal was unduly suggestive. S*ee* Exs. 2-18. Although the Government has represented that it does not intend to introduce evidence of these pretrial identifications, it does intend to elicit in-court identifications by witnesses who previously identified Tal in the photo books. Because any in-court identifications would be tainted

by this unduly suggestive procedure, this Court should not allow them. At a minimum, a hearing should be ordered to determine the suggestiveness of the identification procedure. "When a defendant challenges the admissibility of identification testimony given by a witness who made a pretrial identification, we conduct a two-part inquiry, asking first whether the pretrial identification procedures were unduly suggestive and, if so, whether the identification is nonetheless independently reliable." *United States v. Marsh*, 644 F. App'x 5, 7 (2d Cir. 2016) (internal quotations omitted).

Here, the composition of the photo books was highly unusual and unduly suggestive. The photo books appear to be comprised solely of individuals that had some role in the Government's investigation of the defendants. The FBI made no effort to include fillers or individuals that resembled Tal. And, the Government showed the photo books to witnesses only after they were interviewed. In several of the photobooks, for example, only 7 photos are included in the book. *See, e.g.*, Decl. Ex. 2. This includes Tal, his brothers, and other individuals that appear elsewhere in the discovery materials that the Government has produced. No filler photos appear to have been used or any effort made to use photos resembling Tal. This practice strays far from the common photo book procedure that courts have upheld. *See, e.g.*, *United States v. Rivera*, No. 19 CR. 131 (PAE), 2019 WL 6497504, at *4 (S.D.N.Y. Dec. 3, 2019) (upholding photo book where defendant was one of 50 photos, including fillers, compiled from "state court and motor vehicle records and/or social media").

Cases where photo books were comprised solely of individuals under investigation are sparse.[13] However, *United States v. Reed*, No. 11-CR-487 (RJS), 2012 WL 2053758, at *6

---

[13] One high-profile sexual assault case bears some similarity in this respect. In 2006, a woman accused three players on the Duke University lacrosse team of sexually assaulting her at an off-campus party held by the team. To identify the alleged perpetrators, the prosecutor instructed law

(S.D.N.Y. June 6, 2012), *aff'd*, 756 F.3d 184 (2d Cir. 2014), is instructive, even though the photo book contained fillers. There, the Court found a photo book to be unduly suggestive where the book contained photos of 84 individuals, the photos of three suspects were grouped together, and the witness already knew two of the three suspects. *Id.* The court found that the third suspect's proximity to the other two may have led the witness to believe that the "suspects were grouped together and that [the third suspect] must be the shooter, with whom the witness was not as familiar." *Id.* Here, Tal's photo was similarly in proximity to other individuals under investigation. A hearing is therefore necessary.

If an identification procedure is unduly suggestive, the court must then "inquire[] whether the in-court identification is independently reliable, so as to vitiate any taint from the suggestive procedure." *Rivera*, 2019 WL 6497504, at *3. Courts assess independent reliability by considering the "*Biggers*" factors: "(1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification." *Id.* (internal citations and quotations omitted). To date, the Government has produced insufficient information to address these factors with any specificity. Tal is effectively in the dark as to who identified him and under what circumstances. However, the Government has indicated that Tal's accusers will be among those that identify him. Given that some of Tal's accusers claim to have been drugged during their

---

enforcement to put photos of all forty-six players on the team "into a group," show them to the accuser, and "see if she recalled seeing the individuals at the party." Robert P. Mosteller, *The Duke Lacrosse Case, Innocence, and False Identifications: A Fundamental Failure to "Do Justice,"* FORDHAM L. REV, 1378-79 (2007). The accuser misidentified three individuals who were then falsely charged. Although the photo books here were shown to the witnesses sequentially (which was not done in the Duke case), the suggestive nature of using only photos of those under investigation cannot be ignored.

interaction with Tal, their opportunity to have viewed him, and the attention they gave all weigh against the independent reliability of an in-court identification. Even without allegations of drugging, the significant lapse in time since the alleged incidents (up to 25 years) heavily weighs against independent reliability. A hearing is thus necessary before they can be permitted to make such an identification notwithstanding the suggestive procedures that came before.

## CONCLUSION

For the above-stated reasons, this Court should suppress the evidence and all fruits obtained from the warrants to search Tal's iCloud account, Meta Accounts, and home. In the alternative, this Court should order a *Franks* hearing to hear additional evidence and determine whether the warrants were improperly obtained through misleading statements and material omissions. The Court should also suppress any in-court identifications of witnesses who viewed the photo books, or, alternatively, order a hearing.

Dated: New York, NY
June 9, 2025

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By: /s/ *Milton L. Williams*

Milton L. Williams
Deanna M. Paul
Alexander Kahn
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com
akahn@wmhwlaw.com

*Attorneys for Defendant Tal Alexander*