# EXHIBIT 30

**24 MAG 3017**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of Three Warrants for All Content and Other Information Associated with Certain Electronic Accounts Maintained at Premises Controlled by Apple Inc., USAO Reference No. 2024R00643

**TO BE FILED UNDER SEAL**

**AGENT AFFIDAVIT**

**Agent Affidavit in Support of Application for Three Search Warrants for Stored Electronic Communications**

STATE OF NEW YORK )
) ss.
COUNTY OF NEW YORK )

JUSTINE ATWOOD, being duly sworn, deposes and states:

## I. Introduction

### A. Affiant

1. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since June 6, 2021. I am currently assigned to the Child Exploitation, Human/Sex Trafficking Task Force in FBI's New York Field Office, which investigates child exploitation, human trafficking and sex offenses, among other offenses. During my tenure as a Special Agent with FBI, I have conducted and participated in numerous investigations of sex trafficking, the sexual exploitation of women and children, coercion and enticement, Mann Act, Travel Act, and other related offenses. I have participated in obtaining and executing search warrants, including warrants to search premises as well as warrants for electronic communications. I have reviewed and assisted in reviewing information obtained from electronic storage media of the type sought herein. Over the course of the investigations I have been involved in, I have become familiar with the ways in which individuals engaged in criminal activity use electronic storage media in



ATTORNEYS POSSESSION ONLY

connection with these crimes, including to store documents, photographs, and other materials evidencing their involvement in such crimes. I have also received training regarding computer technology and the way electronic devices and email accounts are used to further criminal activity, including human trafficking, sexual violence, and other related offenses.

**B. The Provider, the Subject Accounts, and the Subject Offenses**

2. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. § 2703 for all content and other information associated with the following iCloud accounts associated with the below Apple IDs maintained and controlled by Apple Inc. ("Apple," or the "Provider"), headquartered at One Apple Park Way, Cupertino, CA 95014-2084:

| Subject Account | Apple ID | DSID | Target Subject |
|---|---|---|---|
| 1 | [redacted] | 176588751 | ALON ALEXANDER |
| 2 | [redacted] | 274320370 | OREN ALEXANDER |
| 3 | [redacted] | 1344729381 | TAL ALEXANDER |

(each a "Subject Account," and collectively the "Subject Accounts"). The information to be searched is described in the following paragraphs and in Attachment A to each of the proposed warrants.

3. As detailed below, there is probable cause to believe that the Subject Accounts contain evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1962(d) (racketeering conspiracy); 1591 and 1594 (sex trafficking and sex trafficking conspiracy); 2421 (transportation to engage in illegal sexual activity); and 2422 and 2423 (coercion and enticement, and transportation of a minor to engage in illegal sexual activity) (the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training

and experience concerning the use of email in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**C. Services and Records of the Provider**

4. I have learned the following about the Provider:

i. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

ii. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

1. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

2. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

3. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email

accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

4. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

5. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

6. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

7. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be

purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

iii. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

iv. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

v. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

vi. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

vii. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled

by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

viii. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

ix. The stored communications and files connected to an Apple ID may also provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

x. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

xi. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

xii. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

xiii. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

### D. Jurisdiction and Authority to Issue Warrants

5. Pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Government may require a provider of an electronic communications service or a remote computing service, such as the Provider, to disclose all stored content and all non-content records or other information pertaining to a subscriber, by obtaining a warrant issued using the procedures described in the Federal Rules of Criminal Procedure.

6. A search warrant under § 2703 may be issued by "any district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7. When the Government obtains records under § 2703 pursuant to a search warrant, the Government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2) & (3). Additionally, the Government may obtain an order precluding the Provider from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize an investigation. 18 U.S.C. § 2705(b).

## II. Probable Cause

### A. Probable Cause Regarding the Subject Offenses

8. Since approximately June 2024, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation, Child Exploitation, Human/Sex Trafficking Task Force have been conducting a criminal investigation of ALON ALEXANDER ("ALON"),

OREN ALEXANDER ("OREN"), and TAL ALEXANDER ("TAL") (collectively the "Alexander Brothers"), and others known and unknown, for their involvement in a wide-ranging racketeering enterprise engaged in sex trafficking of minors and adults; and the enticement of minors and adults to travel in interstate and foreign commerce to engage in illegal sex acts, among other offenses.

<u>Rapes While the Alexander Brothers Were Minors</u>

9. As discussed in paragraphs 9 through 11 below, based on my participation in interviews of victims and witnesses, I have learned, among other things, that the Alexander Brothers attended high school in Miami, Florida, and during that time, they raped and sexually assaulted[1] female minor victims. The Alexander Brothers engaged in these assaults alone, with each other, and with other teenage boys.

*Minor Victim-1*

10. Based on my participation in interviews of Minor Victim-1, I have learned, among other things, the following:

a. [redacted]

---

[1] Throughout this affidavit, including in descriptions of information provided by victims, the terms "rape" and "sexual assault" are used to describe conduct that, as currently understood, meets legal definitions of the terms. This terminology is used regardless of whether the victims would characterize their experiences using these terms.

[2] [redacted]

[redacted]

b. [redacted]

c. [redacted]

*Minor Victim-2, Minor Victim-3, and Witness-1*

11. Based on my participation in interviews of Minor Victim-2, Minor Victim-3, and Witness-1, I have learned, among other things, the following:

---

3 [redacted]

a. [redacted]

b. [redacted]

4 [redacted]

[redacted]

c. [redacted]

d. [redacted]

e. [redacted]

Sexual Assaults by the Alexander Brothers as Adults

12. As discussed in paragraphs 13 through 19 below, based on my participation in interviews of multiple victims and my review of open-source material, documents and photographs, I have learned, among other things, that after graduating from college, the Alexander Brothers moved to Manhattan, New York, where OREN and TAL worked as real estate agents. OREN and TAL initially worked at the real estate company, Douglas Elliman, before starting their own company, Official Partners. While living in New York, the Alexander Brothers sexually assaulted multiple women, alone and together, often after giving the women drugs. On some occasions, the Alexander Brothers transported women across state lines in order to sexually assault them.

*Victim-1*

13. Based on my participation in an interview of Victim-1 and my review of documents and Facebook messages, I have learned, among other things, the following:

a. [redacted]

5 [redacted]

[redacted]

b. [redacted]

c. [redacted]

[redacted]

d. [redacted]

e. [redacted]







ATTORNEYS POSSESSION ONLY

f. [redacted]

*Victim-2*

14. Based on my participation in an interview of Victim-2, I have learned, among other things, the following:

a. [redacted]

b. [redacted]

[redacted]

*Victim-3 and Victim-4*

15. Based on my participation in an interview with Victim-3, I have learned among other things, the following:

a. [redacted]

[redacted]

b. [redacted]

c. [redacted].

d. [redacted]

[redacted]

e. [redacted]

f. [redacted]

g. [redacted]

h. [redacted]

[redacted]

i. [redacted]

j. [redacted]







ATTORNEYS POSSESSION ONLY

*Victim-5*

16. Based on my participation in an interview with Victim-5, I have learned among other things, the following:

a. [redacted]

b. [redacted]

c. [redacted]

d. [redacted]

*Victim-6*

17. Based on my interview of Victim-6 and my review of documents and photographs, I have learned among other things the following:

a. [redacted]

b. [redacted]

c. [redacted]

d. [redacted]

e. [redacted]

f. [redacted]

g. [redacted]

*Minor Victim-4*

18. Based on my participation in an interview with Minor Victim-4, I have learned among other things, the following:

a. [redacted]

[redacted]

b. [redacted]

c. [redacted]

d. [redacted]

6 [redacted]







ATTORNEYS POSSESSION ONLY

[redacted]

e. [redacted]

f. [redacted]

*Victim-7*

19. Based on my interview of Victim-7 and my review of documents and photographs, I have learned among other things the following:

a. [redacted]

[redacted]

**B. Probable Cause Regarding the Subject Accounts**

20. There is probable cause to believe that the Alexander Brothers have used Subject Account-1, Subject Account-2, and Subject Account-3 based on the following information from records maintained by Apple, Inc., among other things:

a. The Apple ID for Subject Account-1 is [redacted] and Subject Account-1 is subscribed in the name Alon Alexander. The telephone number for the iPhone associated with Subject Account-1 is [redacted], which is subscribed to Alon Alexander]. The address associated with Subject Account-2 is [redacted], Bal Harbour, Florida, an address associated with ALON, OREN, and TAL in financial records. According to records maintained by Apple, among other items saved to Subject Account-1 are back-up copies of iOS devices (such as iPhones), photos, messages, notes, and contacts.

b. The Apple ID for Subject Account-2 is [redacted], and Subject Account-2 is subscribed in the name Oren Alexander. The telephone number for the iPhone associated with Subject Account-2 is [redacted], which is subscribed to Oren Alexander. The address associated with Subject Account-2 is [redacted] Miami, Florida, an address associated with the Alexander Brothers in financial records. This address is also listed as the subscriber address on OREN's telephone records for the cellphone number associated with Subject Account-2. According to records maintained by Apple, among other items saved to Subject Account-2 are back-up copies of iOS devices (such as iPhones), photos, messages, notes, and contacts.

c. The Apple ID for Subject Account-3 is [redacted], and Subject Account-3 is subscribed in the name Tal Alexander. The telephone number for the iPhone associated with Subject Account-3 is [redacted], which is subscribed to Tal Alexander. The address associated with Subject Account-3 is [redacted], New York, New York, an address associated with TAL in financial records and the subscriber records for the cellphone number associated with Subject Account-3. According to records maintained by Apple, among other items saved to Subject Account-3 are back-up copies of iOS devices (such as iPhones), photos, messages, notes, and contacts.

d. There is probable cause to believe that evidence of the Subject Offenses is contained in Subject Account-1, Subject Account-2, and Subject Account-3 because, as described below and above, the Alexander Brothers regularly communicated with Victims through cellphone text and instant messages, and the Subject Accounts contain backup copies of full iOS devices and copies of messages. The messages sent by the Alexander Brothers to their victims that could reasonably be expected to be found in the Subject Accounts include messages that the Alexander

Brothers sent their victims to convince Victims to meet the Alexander Brothers for the purpose of sexually assaulting and raping the victims, and the messages that the Alexander Brothers sent to victims after the assaults.

e. There is also probable cause to believe that the Alexander Brothers communicated with each other about sexually assaulting and raping the Victims and that those communications will similarly be found in Subject Account-1, Subject Account-2, and Subject Account-3. As described in detail above, ALON, OREN, and TAL began raping and sexually assaulting women and girls together beginning in high school and continued to do so until at least as recently as 2021. The attacks described by victims that included multiple of the Alexander Brothers demonstrated that the Alexander Brothers coordinated their attacks, and therefore likely communicated about their execution. For example, as described by [redacted] This coordinated attack, [redacted] could not happen without electronic communication between geographically separated conspirators. Similarly, [redacted] Based on the coordination necessary for all three Alexander Brothers to know when and where to meet to carry out the assault, there is probable cause to believe that electronic communications were used in furtherance of that assault. Based on my training and experience, individuals who carry out sexual assaults and rapes together on an ongoing basis, communicate with each other to coordinate and plan opportunities to meet victims, coordinating meeting up with victims for the purpose of sexually assaulting and raping them, and to arrange travel with and to meet victims across state and international borders.

f. Multiple victims described accounts of rape and assault that are consistent with the Alexander Brothers drugging the victims. In order to acquire the controlled substances necessary to drug their victims, the Alexander Brothers would likely have communicated either with physicians and pharmacies (if misusing as date rape drugs, prescription drugs given to them) or with drug dealers with access to controlled substances that could be used as date rape drugs. Either way, electronic communications with the sources of controlled substances are likely to be saved in backup copies of iOS devices and in backup copies of messages saved on the Subject Accounts.

g. In addition to messages sent by the Alexander Brothers to their victims and to their co-conspirators, there is probable cause to believe that other evidence of the Subject Offenses, including photographs or videos, will be found in the Subject Accounts. As described above, the Alexander Brothers or their co-conspirators recorded portions of the sexual assaults. Based on records provided by Apple, I am aware that the Subject Accounts contain saved copies of photos and videos that are saved to iCloud.

h. Based on my training and experience, I know that individuals who engage in crimes like the Subject Offenses commonly use electronic communications to communicate with victims; establish and use online accounts to facilitate their crimes; use mobile applications to search the Internet, thus generating an online search history; or maintain photographs, videos, or screenshots, emails, text messages, records of purchases, travel records, among other similar materials. Further, historical location data collected by a user's electronic accounts can be relevant to establishing that user's participation in certain events related to the Subject Offenses, such as trips or meetings with victims. These records can be easily moved between an individual's electronic storage accounts, such as by email and file sharing and transfers between accounts (such as an Apple iCloud account).

i. Based on my training and experience, I also know that, where electronic messages or other electronic files are used in furtherance of criminal activity, evidence of the criminal activity can often be found months or even years after it occurred. This is typically true because electronic files can be stored on computer servers for years at little or no cost and users thus may have little incentive to delete data that may be useful to consult in the future.

**C. Evidence, Fruits and Instrumentalities**

21. Based upon the foregoing, I respectfully submit there is probable cause to believe that information stored on the Providers' servers associated with the Subject Accounts will contain evidence, fruits, and instrumentalities of the Subject Offenses, as more fully described in Section II of Attachment A to each of the proposed warrants.

22. In particular, I believe the Subject Accounts are likely to contain the following information:

- Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Accounts, including at the time the records and items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, photographs, videos, and browsing history;
- Communications with co-conspirators or other participants in the Subject Offenses;
- Communications about commission of the Subject Offenses;
- Communications with victims of the Subject Offenses;
- Calendar or other scheduling information relating to the commission of the Subject Offenses (including but not limited to travel itineraries and meetings with co-conspirators);
- Digital photographs and videos relating to the commission of the Subject Offenses;

- Evidence concerning knowledge of the commission of the Subject Offenses by co-conspirators;
- Location information related to the commission of the Subject Offenses;
- Evidence regarding motivations for committing the Subject Offenses;
- Evidence regarding consciousness of guilt with respect to the Subject Offenses;
- Evidence concerning any online accounts or any electronic devices where evidence of the Subject Offenses could be stored, including any passwords or encryption keys needed to access such evidence;
- evidence of the acquisition, distribution, or use of controlled substances to commit the subject offenses; and
- Evidence of attempts to evade arrest or destroy evidence.

**III. Review of the Information Obtained Pursuant to the Warrants**

23. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service of a search warrant issued under § 2703, or for the collection or production of responsive records. Accordingly, the warrants requested herein will be transmitted to the Providers, which shall be directed to produce a digital copy of any responsive records to law enforcement personnel within 30 days from the date of service. The Government requests that, notwithstanding Title 18, United States Code, Section 2252A, the Court order that the Providers shall be authorized to deliver encrypted files responsive to the proposed warrants by delivering encrypted files electronically. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will retain the records and review them for evidence, fruits, and

instrumentalities of the Subject Offenses as specified in Section III of Attachment A to each of the proposed warrants.

24. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all emails within the Subject Accounts. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

**IV. Request for Non-Disclosure and Sealing Order**

25. The existence and scope of this ongoing criminal investigation is not publicly known. As a result, premature public disclosure of this affidavit or the requested warrants could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. As is set forth above, the targets of this investigation are known to have participated in intimidation or threatening of other individuals in furtherance of and to conceal their criminal activities, and alerting these targets to the existence and scope of the investigation may lead the targets to endanger the life or physical

safety of others. *See* 18 U.S.C. § 2705(b)(1), (4). For example, as discussed in paragraph 13(d), the Alexander Brothers [redacted]. Additionally, as is set forth above, the targets of this investigation appear to have the financial means that would facilitate their flight from prosecution, and have traveled internationally in the past to jurisdictions where extradition to the United States for purposes of prosecution is unlikely or impossible. *See* 18 U.S.C. § 2705(b)(2), (5).

26. The targets of this investigation are also known to use computers and electronic communications in furtherance of their activity and thus could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation. *See* 18 U.S.C. § 2705(b)(3).

27. Accordingly, there is reason to believe that, were the Providers to notify the subscribers or others of the existence of the warrants, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Court direct the Providers not to notify any person of the existence of the warrants for a period of one year from issuance, subject to extension upon application to the Court, if necessary.

28. For similar reasons, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrants and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

**V. Conclusion**

29. Based on the foregoing, I respectfully request that the Court issue the warrants sought herein pursuant to the applicable provisions of the Stored Communications Act, 18 U.S.C.

§ 2703(b)(1)(A) (for contents) and § 2703(c)(1)(A) (for records and other information), and the relevant provisions of Federal Rule of Criminal Procedure 41.

**/s Justine Atwood** (By Court with Authorization)
Justine Atwood, Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this Affidavit by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this 16th day of August, 2024

[signature]
HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York







ATTORNEYS POSSESSION ONLY

**24 MAG 3017**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of Three Warrants for All Content and Other Information Associated with Certain Electronic Accounts Maintained at Premises Controlled by Apple Inc., USAO Reference No. 2024R00643

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO: Apple Inc. ("Provider")

United States Department of Homeland Security, Homeland Security Investigations ("Investigative Agency")

**1. Warrant.** Upon an affidavit of Special Agent Yasin Binda of the Investigative Agency, and pursuant to the provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) and § 2703(c)(1)(A), and the relevant provisions of Federal Rule of Criminal Procedure 41, the Court hereby finds there is probable cause to believe the following iCloud accounts (the "Subject Accounts"), maintained at premises controlled by Apple Inc., contain evidence, fruits, and instrumentalities of crime, all as specified in Attachment A hereto:

| Subject Account | Apple ID | DSID | Target Subject |
|---|---|---|---|
| 1 | [redacted] | 176588751 | ALON ALEXANDER |
| 2 | [redacted] | 274320370 | OREN ALEXANDER |
| 3 | [redacted] | 1344729381 | TAL ALEXANDER |

Accordingly, the Provider is hereby directed to provide to the Investigative Agency, within 30 days of the date of service of this Warrant and Order, the records specified in Section II of Attachment A hereto, for subsequent review by law enforcement personnel as authorized in Section III of Attachment A. The Government is required to serve a copy of this Warrant and



ATTORNEYS POSSESSION ONLY

Order on the Provider within 14 days of the date of issuance. The Warrant and Order may be served via electronic transmission or any other means through which the Provider is capable of accepting service.

**2. Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence, danger to the physical safety of an individual, flight from prosecution, and/or intimidation of potential witnesses, or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of one year from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

**3. Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

8/16/2024 — Date Issued

1:50pm — Time Issued

[signature]

UNITED STATES MAGISTRATE JUDGE
Southern District of New York







ATTORNEYS POSSESSION ONLY

**Apple iCloud Search Attachment A**

**I. Subject Account and Execution of Warrant**

This warrant is directed to Apple Inc. (the "Provider"), headquartered at One Apple Park Way, Cupertino, CA 95014-2084, and applies to all content and other information within the Provider's possession, custody, or control associated with the following iCloud accounts (the "Subject Accounts"):

| Subject Account | Apple ID | DSID | Target Subject |
|---|---|---|---|
| 1 | [redacted] | 176588751 | ALON ALEXANDER |
| 2 | [redacted] | 274320370 | OREN ALEXANDER |
| 3 | [redacted] | 1344729381 | TAL ALEXANDER |

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below. Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II. Information to be Produced by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate,

rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the account from account inception to the present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account from account inception to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted

messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Notwithstanding Title 18, United States Code, Section 2252A, the Provider is authorized to deliver encrypted files responsive to this warrant by delivering encrypted files electronically to the Investigative Agency

**III.Review of Information by the Government**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1962(d) (racketeering conspiracy); 1591 and 1594 (sex trafficking and sex trafficking conspiracy); 2421 (transportation to engage in illegal sexual activity); and 2422 and 2423 (child enticement, and transportation of a minor to engage in illegal sexual activity, and coercion and enticement to engage in illegal sexual activity) (the "Subject Offenses"), from account inception to the present, including the following:

- Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Accounts, including at the time the records and items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, photographs, videos, and browsing history;
- Communications with co-conspirators or other participants in the Subject Offenses;

- Communications about commission of the Subject Offenses;
- Communications with victims of the Subject Offenses;
- Calendar or other scheduling information relating to the commission of the Subject Offenses (including but not limited to travel itineraries and meetings with co-conspirators);
- Digital photographs and videos relating to the commission of the Subject Offenses;
- Evidence concerning knowledge of the commission of the Subject Offenses by co-conspirators;
- Location information related to the commission of the Subject Offenses;
- Evidence regarding motivations for committing the Subject Offenses;
- Evidence regarding consciousness of guilt with respect to the Subject Offenses;
- Evidence concerning any online accounts or any electronic devices where evidence of the Subject Offenses could be stored, including any passwords or encryption keys needed to access such evidence;
- evidence of the acquisition, distribution, or use of controlled substances to commit the subject offenses; and
- Evidence of attempts to evade arrest or destroy evidence.