# EXHIBIT 31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of A Warrant for All Content and Other Information Associated with Six Electronic Accounts Maintained at Premises Controlled by Meta Platforms, Inc., USAO Reference No. 2024R00643

**24 MAG 3152**

**TO BE FILED UNDER SEAL**

**AGENT AFFIDAVIT**

**Agent Affidavit in Support of Application for Three Search Warrants for Stored Electronic Communications**

STATE OF NEW YORK )
) ss.
COUNTY OF NEW YORK )

JUSTINE ATWOOD, being duly sworn, deposes and states:

## I. Introduction

### A. Affiant

1. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since June 6, 2021. I am currently assigned to the Child Exploitation, Human/Sex Trafficking Task Force in FBI's New York Field Office, which investigates child exploitation, human trafficking and sex offenses, among other offenses. During my tenure as a Special Agent with FBI, I have conducted and participated in numerous investigations of sex trafficking, the sexual exploitation of women and children, coercion and enticement, Mann Act, Travel Act, and other related offenses. I have participated in obtaining and executing search warrants, including warrants to search premises as well as warrants for electronic communications. I have reviewed and assisted in reviewing information obtained from electronic storage media of the type sought herein. Over the course of the investigations I have been involved in, I have become familiar with the ways in which individuals engaged in criminal activity use electronic storage media in

connection with these crimes, including to store documents, photographs, and other materials evidencing their involvement in such crimes. I have also received training regarding computer technology and the way electronic devices and email accounts are used to further criminal activity, including human trafficking, sexual violence, and other related offenses.

**B. The Provider, the Subject Accounts, and the Subject Offenses**

2. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. § 2703 for all content and other information associated with the following Instagram and Facebook accounts maintained and controlled by Meta Platforms, Inc. ("Meta," or the "Provider"), headquartered at 1 Meta Way, Menlo Park, CA 94025:

| Subject Account | Service | Account Identifier | Meta Target Number | Target Subject |
|---|---|---|---|---|
| 1 | Instagram | [redacted] | [redacted] | ALON ALEXANDER |
| 2 | Instagram | [redacted] | [redacted] | OREN ALEXANDER |
| 3 | Instagram | [redacted] | [redacted] | TAL ALEXANDER |
| 4 | Facebook | [redacted] | [redacted] | ALON ALEXANDER |
| 5 | Facebook | [redacted] | [redacted] | OREN ALEXANDER |
| 6 | Facebook | [redacted] | [redacted] | TAL ALEXANDER |

(each a "Subject Account," and collectively the "Subject Accounts"). The information to be searched is described in the following paragraphs and in Attachment A to each of the proposed warrants.

3. As detailed below, there is probable cause to believe that the Subject Accounts contain evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1962(d) (racketeering conspiracy); 1591 and 1594 (sex trafficking and sex trafficking conspiracy); 2421 (transportation to engage in illegal sexual activity); 2422 and 2423 (coercion and enticement,

and transportation of a minor to engage in illegal sexual activity); and 1512 and 1591(d) (obstruction of justice) and 2 (aiding and abetting) (the "Subject Offenses"). This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of email in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**C. Services and Records of the Provider**

Instagram

4. I have learned the following about Instagram:

a. Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

b. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

c. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to

create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

d. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

e. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

f. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

g. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

h. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

i. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

j. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

k. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

l. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

m. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

n. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

o. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

p. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

q. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

r. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

s. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

Facebook

5. I have learned the following about Facebook:

a. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

b. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

c. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

d. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these

privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

e. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

f. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

g. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

h. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

i. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

j. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

k. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

l. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

m. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

n. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

o. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

p. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

**D. Jurisdiction and Authority to Issue Warrants**

6. Pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Government may require a provider of an electronic communications service or a remote computing service, such as the Provider, to disclose all stored content and all non-content records or other information pertaining to a subscriber, by obtaining a warrant issued using the procedures described in the Federal Rules of Criminal Procedure.

7. A search warrant under § 2703 may be issued by "any district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

8. When the Government obtains records under § 2703 pursuant to a search warrant, the Government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2) & (3). Additionally, the Government may obtain an order precluding

the Provider from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize an investigation. 18 U.S.C. § 2705(b).

## II. Probable Cause

### E. Probable Cause Regarding the Subject Offenses

9. Since approximately June 2024, the U.S. Attorney's Office for the Southern District of New York and the Federal Bureau of Investigation, Child Exploitation, Human/Sex Trafficking Task Force have been conducting a criminal investigation of ALON ALEXANDER ("ALON"), OREN ALEXANDER ("OREN"), and TAL ALEXANDER ("TAL") (collectively the "Alexander Brothers"), and others known and unknown, for their involvement in a wide-ranging racketeering enterprise engaged in sex trafficking of minors and adults; and the enticement of minors and adults to travel in interstate and foreign commerce to engage in illegal sex acts, among other offenses.

Rapes While the Alexander Brothers Were Minors

10. As discussed in paragraphs 11 through 12 below, based on my participation in interviews of victims and witnesses, I have learned, among other things, that the Alexander Brothers attended high school in Miami, Florida, and during that time, they raped and sexually assaulted[1] female minor victims. The Alexander Brothers engaged in these assaults alone, with each other, and with other teenage boys.

*Minor Victim-1*

11. Based on my participation in interviews of Minor Victim-1, I have learned, among other things, the following:

---

[1] Throughout this affidavit, including in descriptions of information provided by victims, the terms "rape" and "sexual assault" are used to describe conduct that, as currently understood, meets legal definitions of the terms. This terminology is used regardless of whether the victims would characterize their experiences using these terms.

a. [redacted]

b. [redacted]

2 [redacted]

[redacted]

c. [redacted]

*Minor Victim-2, Minor Victim-3, and Witness-1*

12. Based on my participation in interviews of Minor Victim-2, Minor Victim-3, and Witness-1, I have learned, among other things, the following:

a. [redacted]

[3] [redacted]

[redacted]

b. [redacted]

c. [redacted]

d. [redacted]

e. [redacted]

<u>Sexual Assaults by the Alexander Brothers as Adults</u>

13. As discussed in paragraphs 14 through 22 below, based on my participation in interviews of multiple victims and my review of open-source material, documents and photographs, I have learned, among other things, that after graduating from college, the Alexander Brothers moved to Manhattan, New York, where OREN and TAL worked as real estate agents. OREN and TAL initially worked at the real estate company, Douglas Elliman, before starting their own company, Official Partners. While living in New York, the Alexander Brothers sexually assaulted multiple women, alone and together, often after giving the women drugs. On some occasions, the Alexander Brothers transported women across state lines in order to sexually assault them.

*Victim-1*

14. Based on my participation in an interview of Victim-1 and my review of documents and Facebook messages, I have learned, among other things, the following:

a. [redacted]

[redacted]

b. [redacted]

---

5 [redacted]

[redacted]

c. [redacted]

d. [redacted]

[redacted]

e. [redacted]

f. [redacted]

*Victim-2*

15. Based on my participation in an interview of Victim-2, I have learned, among other things, the following:

a. [redacted]

[redacted]

b. [redacted]

*Victim-3 and Victim-4*

16. Based on my participation in an interview with Victim-3, I have learned among other things, the following:

a. [redacted]

b. [redacted]

c. [redacted]

d. [redacted]

e. [redacted]

f. [redacted]







ATTORNEYS POSSESSION ONLY

g. [redacted]

h. [redacted]

i. [redacted]

[redacted]

j. [redacted]

*Victim-5*

17. Based on my participation in an interview with Victim-5, I have learned among other things, the following:

a. [redacted]

b. [redacted]

c. [redacted]

[redacted]

d. [redacted]

*Victim-6*

18. Based on my interview of Victim-6 and my review of documents and photographs, I have learned among other things the following:

a. [redacted]

b. [redacted]

c. [redacted]

[redacted]

d. [redacted]

e. [redacted]

f. [redacted]

g. [redacted]

[redacted]

*Victim-9 and Victim-10*

19. Based on my participation in an interview with Victim-9 and my review of documents and photographs and other materials, I have learned among other things, the following:

a. [redacted]

b. [redacted]

c. [redacted]

[redacted]

d. [redacted]

e. [redacted]

[redacted]

f. [redacted]

g. [redacted]

h. [redacted]

6 [redacted]

*Minor Victim-4*

20. Based on my participation in an interview with Minor Victim-4, I have learned among other things, the following:

a. [redacted]

b. [redacted]

c. [redacted]

[7] Based on ALON and OREN's date of birth, they were approximately 30 at this time.

[redacted]

d. [redacted]

e. [redacted]

f. [redacted]

*Victim-8*

21. Based on my interview of Victim-8 and my review of documents and photographs, I have learned among other things the following:

a. [redacted]

b. [redacted]

c. [redacted]

d. [redacted]

e. [redacted]

*Victim-7*

22. Based on my interview of Victim-7 and my review of documents and photographs, I have learned among other things the following:

a. [redacted]

[redacted]

F. **Probable Cause Regarding the Subject Accounts**

23. There is probable cause to believe that the Alexander Brothers have used Subject Account-1, Subject Account-2, Subject Account-3, Subject Account-4, Subject Account-5, and Subject Account-6 based on the following information from records maintained by Meta Platforms, Inc., among other things:

a. Subject Account-1 is the Instagram account with account identifier "Alon_alexander" and Meta target number 3167256. Subject Account-1 is subscribed in the name Alon Alexander. The registered email address for Subject Account-1 is [redacted], which, according to records provided by Google, is subscribed to by Alon Alexander. The telephone number associated with Subject Account-1 is [redacted], which, according to records provided by Verizon, is subscribed to Alon Alexander.

b. Subject Account-2 is the Instagram account with account identifier "Orenalexander" and Meta target number 51776294. According to records from Meta, an alternative account identifier listed for a preserved copy of Subject Account-2 is 17841400008820809, and the vanity name is orenalexander. Subject Account-2 is subscribed in

the name Oren Alexander. The telephone number associated with Subject Account-2 is [redacted], which according to records from AT&T, is subscribed to Oren Alexander.

c. Subject Account-3 is the Instagram account with account identifier "Talalexander" and Meta target number 30398440. Subject Account-3 is subscribed in the name Tal Alexander. The telephone number associated with Subject Account-3 is [redacted], which, according to records provided by AT&T, is subscribed to Tal Alexander. The email address associated with Subject Account-3 is [redacted], which, according to records provided by Google, is subscribed to Tal Alexander.

d. Subject Account-4 is the Facebook account with account identifier Facebook.com/alon.alexander and Meta target number 5722227. Subject Account-4 is subscribed to Alon Alexander. The registered email address for Subject Account-4 is [redacted], which according to records provided by Google is subscribed to Alon Alexander. The telephone number associated with Subject Account-4 is [redacted], which according to records provided by Verizon, is subscribed to Alon Alexander. The email address and telephone number associated with Subject Account-4 are the same as those associated with Subject Account-1, also used by ALON.

e. Subject Account-5 is the Facebook account with account identifier Facebook.com/orenalexander and Meta target number 100066853671676. Subject Account-5 is subscribed to Oren Alexander. The email addresses associated with Subject Account-5 include [redacted], which, according to records provided by Google, is subscribed to Oren Alexander, and [redacted]. Based on publicly reported information and based on information learned during the investigation, including information provided by victims who know OREN, I am aware that OREN previously worked at the real estate company Douglas

Elliman. The telephone number associated with Subject Account-5 is [redacted], which, according to records provided by AT&T, is subscribed to Oren Alexander, and is the same telephone number associated with Subject Account-2.

f. Subject Account-6 is the Facebook account with account identifier [redacted] and Meta target number [redacted]. Subject Account-6 is subscribed to Tal Alexander. The email address associated with Subject Account-6 [redacted], which, according to records provided by Google, is subscribed to Tal Alexander. The telephone number associated with Subject Account-6 is [redacted], which, according to records provided by AT&T, is subscribed to Tal Alexander, and is the same telephone number associated with Subject Account-3.

24. There is further probable cause to believe that evidence of the Subject Offenses is contained in Subject Account-1, Subject Account-2, Subject Account-3, Subject Account-4, Subject Account-5, and Subject Account-6, because, as described below and above, the Alexander Brothers communicated with their Victims through Instagram and Facebook, and the Subject Accounts are the Instagram and Facebook accounts used by the Alexander Brothers. Multiple victims described communicating with the Alexander Brothers via Instagram and Facebook, for example:

a. [redacted]

b. [redacted]

c. [redacted]

d. [redacted]

e. [redacted]







ATTORNEYS POSSESSION ONLY

[redacted] As further described above, the three Alexander Brothers often participated in sexual assaults and rapes together and identified and found multiple Victims using the Subject Accounts. The messages sent by the Alexander Brothers to their victims that could reasonably be expected to be found in the Subject Accounts include messages that the Alexander Brothers sent their victims to convince Victims to meet the Alexander Brothers for the purpose of sexually assaulting and raping the victims, and the messages that the Alexander Brothers sent to victims after the assaults.

25. In addition to the Alexander Brothers using their Facebook and Instagram accounts to communicate with their victims, there is also probable cause to believe that the Subject Accounts will contain evidence of the Alexander Brothers' locations on particular dates when they committed rapes and sexual assaults and show who they were with on those particular occasions. Based on my review of previously public photographs[8] from the Subject Accounts, the Alexander Brothers regularly posted photos of themselves and others at parties and events and at various locations around the world where they committed rapes and sexual assaults.

26. There is also probable cause to believe that the Alexander Brothers communicated with each other about sexually assaulting and raping the Victims and that those communications will similarly be found in the Subject Accounts. As noted above, the Alexander Brothers used Facebook and Instagram's messaging features to communicate regularly. Also as described in detail above, ALON, OREN, and TAL began raping and sexually assaulting women and girls together beginning in high school and continued to do so until at least as recently as 2021. The attacks described by victims that included multiple of the Alexander Brothers demonstrated that

[8] The Alexander Brothers' have subsequently made the Subject Accounts private and/or deactivated their accounts, after the Government preserved the Subject Accounts with Meta.

the Alexander Brothers coordinated their attacks, and therefore likely communicated about their execution. For example, as described by [redacted] This coordinated attack, [redacted] could not happen without electronic communication between geographically separated conspirators. Similarly, [redacted] Based on the coordination necessary for all three Alexander Brothers to know when and where to meet to carry out the assault, there is probable cause to believe that electronic communications were used in furtherance of that assault. Based on my training and experience, individuals who carry out sexual assaults and rapes together on an ongoing basis, communicate with each other to coordinate and plan opportunities to meet victims, coordinating meeting up with victims for the purpose of sexually assaulting and raping them, and to arrange travel with and to meet victims across state and international borders.

27. Based on my training and experience, I know that individuals who engage in crimes like the Subject Offenses commonly use electronic messaging on social media platforms such as Instagram and Facebook to communicate with victims; establish and use online accounts on those platforms to facilitate their crimes; or maintain photographs, videos, or screenshots, emails, text messages, records of purchases, travel records, among other similar materials. For example, the stored communications and files connected to an Instagram or Facebook account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in

furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

28. Based on my training and experience, providers of electronic communications platforms such as Instagram and Facebook typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, providers of electronic communications platforms often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

29. Based on my training and experience, in some cases, communications account users will communicate directly with a platform about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers of electronic communications platforms typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

30. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31. Based on my training and experience, for each of the Subject Accounts described above, historical location data collected by a user's electronic accounts can be relevant to establishing that user's participation in certain events related to the Subject Offenses, such as trips or meetings with victims. These records can be easily moved between an individual's electronic storage accounts, such as by email and file sharing and transfers between accounts.

32. Based on my training and experience, I also know that, where electronic messages or other electronic files are used in furtherance of criminal activity, evidence of the criminal activity can often be found months or even years after it occurred. This is typically true because electronic files can be stored on computer servers for years at little or no cost and users thus may have little incentive to delete data that may be useful to consult in the future.

**G. Evidence, Fruits and Instrumentalities**

33. Based upon the foregoing, I respectfully submit there is probable cause to believe that information stored on the Providers' servers associated with the Subject Accounts will contain evidence, fruits, and instrumentalities of the Subject Offenses, as more fully described in Section II of Attachment A to each of the proposed warrants.

34. In particular, I believe the Subject Accounts are likely to contain the following information:

- Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Accounts, including at the time the records and items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, photographs, videos, and browsing history;

- Communications with co-conspirators or other participants in the Subject Offenses;
- Communications about commission of the Subject Offenses;
- Communications with victims of the Subject Offenses;
- Calendar or other scheduling information relating to the commission of the Subject Offenses (including but not limited to travel itineraries and meetings with co-conspirators);
- Digital photographs and videos relating to the commission of the Subject Offenses;
- Evidence concerning knowledge of the commission of the Subject Offenses by co-conspirators;
- Location information related to the commission of the Subject Offenses;
- Evidence regarding motivations for committing the Subject Offenses;
- Evidence regarding consciousness of guilt with respect to the Subject Offenses;
- Evidence concerning any online accounts or any electronic devices where evidence of the Subject Offenses could be stored, including any passwords or encryption keys needed to access such evidence;
- Evidence of the acquisition, distribution, or use of controlled substances to commit the subject offenses; and
- Evidence of attempts to evade arrest or destroy evidence.

**III. Review of the Information Obtained Pursuant to the Warrants**

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for service of a search warrant issued under § 2703, or for the collection or production of responsive records. Accordingly, the warrants requested herein will be transmitted to the Providers, which shall be directed to produce a digital copy of any responsive records to law

enforcement personnel within 30 days from the date of service. The Government requests that, notwithstanding Title 18, United States Code, Section 2252A, the Court order that the Providers shall be authorized to deliver encrypted files responsive to the proposed warrants by delivering encrypted files electronically. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will retain the records and review them for evidence, fruits, and instrumentalities of the Subject Offenses as specified in Section III of Attachment A to each of the proposed warrants.

36. In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to undertaking a cursory inspection of all emails within the Subject Accounts. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with emails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases that investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but that do not contain any keywords that an agent is likely to search for.

**IV. Request for Non-Disclosure and Sealing Order**

37. The existence and scope of this ongoing criminal investigation is not publicly known. As a result, premature public disclosure of this affidavit or the requested warrants could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. As is set forth above, the targets of this investigation are known to have participated in intimidation or threatening of other individuals in furtherance of and to conceal their criminal activities, and alerting these targets to the existence and scope of the investigation may lead the targets to endanger the life or physical safety of others. *See* 18 U.S.C. § 2705(b)(1), (4). For example, [redacted]. Additionally, as is set forth above, the targets of this investigation appear to have the financial means that would facilitate their flight from prosecution, and have traveled internationally in the past to jurisdictions where extradition to the United States for purposes of prosecution is unlikely or impossible. *See* 18 U.S.C. § 2705(b)(2), (5).

38. The targets of this investigation are also known to use computers and electronic communications in furtherance of their activity and thus could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation. *See* 18 U.S.C. § 2705(b)(3).

39. Accordingly, there is reason to believe that, were the Providers to notify the subscribers or others of the existence of the warrants, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Court direct the Providers not to notify any person of the existence of the warrants for a period of one year from issuance, subject to extension upon application to the Court, if necessary.

40. For similar reasons, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrants and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

## V. Conclusion

41. Based on the foregoing, I respectfully request that the Court issue the warrants sought herein pursuant to the applicable provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) (for contents) and § 2703(c)(1)(A) (for records and other information), and the relevant provisions of Federal Rule of Criminal Procedure 41.

/s/ Justine Atwood, by SDA with permission
Justine Atwood, Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this Affidavit by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this 29th day of August, 2024

Stewart D. Aaron
___________________________________
HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of A Warrant for All Content and Other Information Associated with Six Electronic Accounts Maintained at Premises Controlled by Meta Platforms, Inc., USAO Reference No. 2024R00643

# 24 MAG 3152

## SEARCH WARRANT AND NON-DISCLOSURE ORDER

TO: Meta Platforms, Inc. ("Provider")

Federal Bureau of Investigations ("Investigative Agency")

1. **Warrant.** Upon an affidavit of Special Agent Justine Atwood of the Investigative Agency, and pursuant to the provisions of the Stored Communications Act, 18 U.S.C. § 2703(b)(1)(A) and § 2703(c)(1)(A), and the relevant provisions of Federal Rule of Criminal Procedure 41, the Court hereby finds there is probable cause to believe the following Instagram and Facebook accounts (the "Subject Accounts"), maintained at premises controlled by Meta Platforms Inc., contain evidence, fruits, and instrumentalities of crime, all as specified in Attachment A hereto:

| **Subject Account** | **Service** | **Account Identifier** | **Meta Target Number** | **Target Subject** |
|---|---|---|---|---|
| 1 | Instagram | [redacted] | [redacted] | ALON ALEXANDER |
| 2 | Instagram | [redacted] | [redacted] | OREN ALEXANDER |
| 3 | Instagram | [redacted] | [redacted] | TAL ALEXANDER |
| 4 | Facebook | [redacted] | [redacted] | ALON ALEXANDER |
| 5 | Facebook | [redacted] | [redacted] | OREN ALEXANDER |
| 6 | Facebook | [redacted] | | TAL ALEXANDER |

Accordingly, the Provider is hereby directed to provide to the Investigative Agency, within 30 days of the date of service of this Warrant and Order, the records specified in Section II of Attachment A hereto, for subsequent review by law enforcement personnel as authorized in Section III of Attachment A. The Government is required to serve a copy of this Warrant and Order on the Provider within 14 days of the date of issuance. The Warrant and Order may be served via electronic transmission or any other means through which the Provider is capable of accepting service.

2. **Non-Disclosure Order.** Pursuant to 18 U.S.C. § 2705(b), the Court finds that there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence, danger to the physical safety of an individual, flight from prosecution, and/or intimidation of potential witnesses, or otherwise will seriously jeopardize an ongoing investigation. Accordingly, it is hereby ordered that the Provider shall not disclose the existence of this Warrant and Order to the listed subscriber or to any other person for a period of one year from the date of this Order, subject to extension upon application to the Court if necessary, except that Provider may disclose this Warrant and Order to an attorney for Provider for the purpose of receiving legal advice.

3. **Sealing.** It is further ordered that this Warrant and Order, and the Affidavit upon which it was issued, be filed under seal, except that the Government may without further order of this Court serve the Warrant and Order on the Provider; provide copies of the Affidavit or Warrant and Order as need be to personnel assisting the Government in the investigation and prosecution of

this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

08/29/2024 — Date Issued

1:01 p.m. — Time Issued

UNITED STATES MAGISTRATE JUDGE
Southern District of New York

**Meta Platforms, Inc. (Instagram and Facebook) Search Attachment A**

**I.Subject Account and Execution of Warrant**

This warrant is directed to Meta Platforms, Inc. (the "Provider"), headquartered at One Meta Way, Menlo Park, CA 94025, and applies to all content and other information within the Provider's possession, custody, or control associated with the following Instagram and Facebook accounts (the "Subject Accounts"):

| **Subject Account** | **Service** | **Account Identifier** | **Meta Target Number** | **Target Subject** |
|---|---|---|---|---|
| 1 | Instagram | [redacted] | [redacted] | ALON ALEXANDER |
| 2 | Instagram | [redacted] | [redacted] | OREN ALEXANDER |
| 3 | Instagram | [redacted] | [redacted] | TAL ALEXANDER |
| 4 | Facebook | [redacted] | [redacted] | ALON ALEXANDER |
| 5 | Facebook | [redacted] | [redacted] | OREN ALEXANDER |
| 6 | Facebook | [redacted] | [redacted] | TAL ALEXANDER |

A law enforcement officer will serve this warrant by transmitting it via email or another appropriate manner to the Provider. The Provider is directed to produce to the law enforcement officer an electronic copy of the information specified in Section II below. Upon receipt of the production, law enforcement personnel will review the information for items falling within the categories specified in Section III below.

**II.Information to be Produced by the Provider**

**Instagram Accounts (Subject Accounts-1, -2, and -3)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been

deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A. All business records and subscriber information, in any form kept, pertaining to the account, including:

1. Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2. All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3. Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4. Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5. All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers,

7. Privacy and account settings, including change history; and

8. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata,;

C. All content, records, and other information relating to communications sent from or received by the account, including but not limited to:

1. The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the account and other Instagram users, including but not limited to:

1. Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account; and

F. All location information, including location history, login activity, information geotags, and related metadata.

**Facebook Accounts (Subject Accounts-4, -5, and -6)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18

U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

(a) All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**III.Review of Information by the Government**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate any evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1962(d) (racketeering conspiracy); 1591 and 1594 (sex trafficking and sex trafficking conspiracy); 2421 (transportation to engage in illegal sexual activity); and 2422 and 2423 (child enticement, and transportation of a minor to engage in illegal sexual activity, and coercion and enticement to engage in illegal sexual activity); and 1512 and 1591(d) (obstruction of justice) and 2 (aiding and abetting) (the "Subject Offenses"), from account inception to the present, including the following:

- Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Accounts, including at the time the records and items described in this warrant were

created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, photographs, videos, and browsing history;

- Communications with co-conspirators or other participants in the Subject Offenses;
- Communications about commission of the Subject Offenses;
- Communications with victims of the Subject Offenses;
- Calendar or other scheduling information relating to the commission of the Subject Offenses (including but not limited to travel itineraries and meetings with co-conspirators);
- Digital photographs and videos relating to the commission of the Subject Offenses;
- Evidence concerning knowledge of the commission of the Subject Offenses by co-conspirators;
- Location information related to the commission of the Subject Offenses;
- Evidence regarding motivations for committing the Subject Offenses;
- Evidence regarding consciousness of guilt with respect to the Subject Offenses;
- Evidence concerning any online accounts or any electronic devices where evidence of the Subject Offenses could be stored, including any passwords or encryption keys needed to access such evidence;
- Evidence of the acquisition, distribution, or use of controlled substances to commit the subject offenses; and
- Evidence of attempts to evade arrest or destroy evidence.