UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER,

Defendant.

Case No. 24-CR-676 (VEC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF TAL ALEXANDER'S MOTION TO DISMISS THE INDICTMENT, AND IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**

Date: August 7, 2025

Milton L. Williams
Deanna M. Paul
Alexander Kahn
**WALDEN MACHT HARAN & WILLIAMS LLP**
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com
akahn@wmhwlaw.com

*Attorneys for Defendant Tal Alexander*

# TABLE OF CONTENTS

**PAGES**

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................4

I. THE GOVERNMENT FAILS TO CHARGE A COMMERCIAL SEX ACT ....................4

A. The Indictment Does Not Charge The "On Account Of" Element ....................4

B. Even The Second Circuit Questioned Whether The Government's "Commercial Sex Act" Theory Is Appropriate Under 18 U.S.C. § 1591 ....................7

II. THE GOVERNMENT FAILS TO ADDRESS FATAL DEFICIENCIES IN THE INDUCEMENT COUNTS ....................8

III. THE COURT SHOULD DISMISS COUNTS THREE AND FOUR—WHICH RELATE TO VICTIM 2—AS A MATTER OF LAW ....................9

IV. THE COURT SHOULD DISMISS THE SEX TRAFFICKING AND CONSPIRACY COUNTS FOR LACK OF SPECIFICITY. ALTERNATIVELY, THE COURT SHOULD GRANT A BILL OF PARTICULARS. ....................11

CONCLUSION ....................15

## TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Acevedo v. eXp Realty, LLC*,
713 F. Supp. 3d 740 (C.D. Cal. 2024) .......... 5, 6

*Ardolf v. Weber*,
332 F.R.D. 467 (S.D.N.Y. 2019) .......... 5, 6

*David v. Weinstein Co. LLC*,
431 F. Supp. 3d 290 (S.D.N.Y. 2019) .......... 5, 6, 10

*Eckhart v. Fox News Network, LLC*,
2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021).......... 5, 6

*Fierro v. Taylor*,
2012 WL 13042630 (S.D.N.Y. July 2, 2012) .......... 8

*Geiss v. Weinstein*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019) .......... 5, 6

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) .......... 2, 4, 5

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) .......... 2, 5, 6, 10

*Ramsbottom v. Ashton*,
2024 WL 4993391 (M.D. Tenn. Dec. 5, 2024) .......... 1, 4, 5, 6

*Reed v. Barnes*,
2025 WL 963072 (N.D. Tex. Mar. 31, 2025) .......... 1, 4, 5

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987) .......... 13

*United States v. Cannone*,
528 F.2d 296 (2d Cir. 1975) .......... 13

*United States v. Estrada-Tepal*,
57 F. Supp. 3d 164 (E.D.N.Y. 2014) .......... 10

*United States v. Marcus*,
487 F. Supp. 2d 289 (E.D.N.Y. 2007) .......... 4

*United States v. Martir*,
782 F.2d 1141 (2d Cir. 1986) .......... 15

*United States v. Paduch*,
2024 WL 778938 (S.D.N.Y. Feb. 26, 2024).......... 14

*United States v. Paulino*,
335 F. Supp. 3d 600 (S.D.N.Y. 2018) .......... 11

*United States v. Pierre-Louis*,
2018 WL 4043140 (S.D.N.Y. Aug. 9, 2018) .......... 13, 15

*United States v. Pirro*,
212 F.3d 86 (2d Cir. 2000) .......... 9

*United States v. Raniere*,
55 F.4th 354 (2d Cir. 2022) .......... 4, 7

*United States v. Ray*,
2021 WL 3168250 (S.D.N.Y. July 27, 2021) .......... 14

*United States v. Risk*,
843 F.2d 1059 (7th Cir. 1988) .......... 11

*United States v. Thompson*,
141 F. Supp. 3d 188 (E.D.N.Y.), *aff'd*, 896 F.3d 155 (2d Cir. 2018) .......... 3, 9

*United States v. Urso*,
369 F. Supp. 2d 254 (E.D.N.Y. 2005) .......... 12

*United States v. Warme*,
2009 WL 427111 (W.D.N.Y. Feb. 20, 2009) .......... 13

*Vang v. Prataya*,
2017 WL 401942 (D. Minn. Jan. 30, 2017) .......... 2, 4, 5

**STATUTES**

18 U.S.C. § 1591 .......... 1, 7, 9, 10

18 U.S.C. § 2241 .......... 8

18 U.S.C. § 2242 .......... 8

18 U.S.C. § 2422 .......... 9, 10

Fed. R. Crim. P. 7(f) .......... 12

N.Y. Penal Law § 130.25 .......... 8

N.Y. Penal Law § 130.30 .......... 8

N.Y. Penal Law § 130.35 .......... 8

N.Y. Penal Law § 130.52 .......... 8

**PRELIMINARY STATEMENT**

Defendant Tal Alexander ("Tal") moved this Court to dismiss the Sex Trafficking and Conspiracy Counts because those charges do not allege a commercial sex act.[1] Specifically, the Indictment does not satisfy the "on account of" element necessary for federal criminal jurisdiction.

To take a stark, simplified hypothetical, consider an indictment charging that (1) the defendant met the complainant on a dating app and bought the complainant a drink at a bar, and (2) the complainant then accompanied the defendant to his apartment, where he engaged in a non-consensual sex act. Does such an indictment charge a commercial sex act under 18 U.S.C. § 1591? If not, can the Government proceed here?

The Government alleges that Tal provided, not a drink, but rather "travel to vacation destinations, luxury accommodations … and access to other luxury experiences." Ind. ¶ 4; Opp. at 2. However, that is a difference in degree, not in kind. And precedent from other circuits shows that such allegations do not describe a commercial sex act.

Four separate courts, in four different jurisdictions, have rejected the Government's theory. In each case, the defendant paid or otherwise arranged for the victim's travel, food, and/or lodging. When the victim arrived at the desired location, the defendant effectively engaged in statutory rape of a minor. In all four cases, the courts held that the sex act was not a "commercial sex act" because nothing "suggests that [the defendant's] payment for lodging and food was … 'on account of' … any sex act." *Ramsbottom v. Ashton*, 21-CV-00272, 2024 WL 4993391 (M.D. Tenn. Dec. 5, 2024). *Accord Reed v. Barnes*, No. 24-CV-1500-D, 2025 WL 963072 (N.D. Tex. Mar. 31, 2025); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013

[1] Capitalized terms have the same meaning as defined in the Motion. *See* ECF 76.

WL 6816174 (W.D. Ark. Dec. 24, 2013); *Vang v. Prataya*, No. 12-CV-1847, 2017 WL 401942 (D. Minn. Jan. 30, 2017).

The Government concedes that federal courts "must interpret statutory provisions consistently in civil and criminal cases." Opp. at 22. Yet the Government neither claims these four cases were wrongly decided, nor seeks to distinguish the facts of those cases from the facts charged here.

Instead, the Government relies upon a different, inapposite line of cases—typified by *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018)—where, at the time of the sex act, the defendant held out the (false) promise of a *future* benefit, such as a job or professional opportunity, which establishes the thing of value "on account of which" the sex act was exchanged. Opp. at 21. But the Government does not—and, based upon its proffers, cannot—rely upon any such theory here.

Since Tal filed his motion to dismiss, some of the judges in the Second Circuit—in the context of addressing this Court's detention order, ECF 35—expressed skepticism about the Indictment's validity on the same grounds, questioning whether a sexual assault committed *after* providing paid travel or accommodations could constitute a "commercial sex act." *See* Oral Argument (2d Cir. Jun. 10, 2025) ("2d Cir. Tr."), at 29:4-33:2. As Judge Gerard Lynch pointedly stated: "Doesn't the thing of value have to be in exchange for a sex act?" *Id.* at 29:4-30:7.

The Government described no such exchange in its response to Judge Lynch, and does not do so here. Not a single case cited by the Government holds that arranging travel, lodging, or luxury experiences in advance of the sex act establishes an "exchange" that satisfies the "on account of" requirement for a "commercial sex act." The four separate courts that have considered the issue each concluded it does not. Accordingly, the Court should dismiss the Sex Trafficking and Conspiracy Counts as fatally defective.

***

Separately, Tal moved to dismiss the Inducement Counts because they fail to specify "the *particular* sexual activity" constituting the offense based upon "sufficient factual allegations" that support the charge. *United States v. Thompson*, 141 F. Supp. 3d 188, 195-96 (E.D.N.Y.), *aff'd*, 896 F.3d 155 (2d Cir. 2018). The Government does not address or attempt to remedy the deficiencies in the Inducement Counts. Consequently, the Court should dismiss Counts Four and Nine.

Tal's motion also showed that the Court should dismiss the counts relating to Victim 2. The Indictment does not allege Tal had any personal contact with Victim 2 prior to the alleged crime, and the Government's proffers show that he did not. In opposition, the Government relies solely on a text message in which Tal purportedly agreed with Oren and Alon Alexander to share the costs of Victim 2's flight. Opp. at 27 n.16. Yet the Government does not (and will not) claim that Tal personally induced Victim 2 to travel to New York or that he committed any unlawful sexual act against her. Accordingly, the Court should dismiss Counts Three and Four on these grounds.

Finally, the Government continues to stonewall Tal's requests for the most basic information about the allegations in the Sex Trafficking and Conspiracy Counts. Contrary to the Government's contentions, the Indictment's "Overview and Background" section lacks factual specificity; it does not inform Tal which specific acts, committed by which defendant, support the allegations. Nor does the discovery provided to date inform Tal what conduct the Government may seek to prove at trial. The Court should either dismiss these counts or direct the Government to answer Tal's requests for particularity. Alternatively, it should grant a bill of particulars and

leave to join in motions filed by Oren and Alon Alexander, to the extent they are relevant or applicable to Tal's defense.

## ARGUMENT

## I. THE GOVERNMENT FAILS TO CHARGE A COMMERCIAL SEX ACT

### A. The Indictment Does Not Charge The "On Account Of" Element

Tal's motion challenges the Government's failure to satisfy the "on account of" requirement based upon on-point precedent. It is no surprise that the Government packs the whole of its response into a paragraph of string cites that avoids the core of Tal's motion: the alleged victims did not participate in the sex acts "on account of" the "thing of value." Opp. at 21.

"On account of" requires "a causal relationship between the sex act and an ***exchange*** of an item of value." *United States v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D.N.Y. 2007) (emphasis added); *see also United States v. Raniere*, 55 F.4th 354, 365 (2d Cir. 2022). The Government makes no effort to establish any such exchange, and the lack of one is fatal to the Indictment.

Four separate decisions issued by four separate courts—*Ramsbottom*, *Reed*, *Kolbek*, and *Vang*—have held where, like here, a defendant provides travel or accommodations to an accuser and later engages in sexual conduct with that accuser, no "commercial sex act" occurs because the sex act is not provided "on account of" the travel or accommodations. Tal's diligent research has located no case contrary to such precedent, and the Government cites none.

For example, in *Ramsbottom v. Ashton*, 21-CV-00272, 2024 WL 4993391 (M.D. Tenn. Dec. 5, 2024), a minor plaintiff met the defendant on three occasions during which (unlawful) sexual activity occurred. On one occasion, the defendant gave the plaintiff cash after the sexual activity, which the court found constituted a commercial sex act. However, on the other two occasions, the defendant paid for the victim's hotel room and food over the course of the weekend, but the court held that no commercial sex act occurred. Because the victim was never threatened

with having to pay her own expenses unless she engaged in sex, "nothing about the interaction suggest[ed] that his payment for lodging and food was because of—or 'on account of'—any sex act." *Id*. at *7 (noting that the victim traveled of her own accord).

The remaining three courts have drawn exactly the same line. In *Reed v. Barnes*, No. 24-CV-1500-D, 2025 WL 963072 (N.D. Tex. Mar. 31, 2025), the defendant arranged for the minor plaintiff's transport from her residence in Indianapolis to Texas, where she spent several days with defendant during which he paid for her travel, meals, accommodations, and experiences. In *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013), the minor plaintiffs attended out-of-state trips organized by the perpetrator's ministry. In *Vang v. Prataya*, No. 12-CV-1847, 2017 WL 401942 (D. Minn. Jan. 30, 2017), the defendant paid for the minor plaintiff's meals, lodging, clothing and transportation. All three courts, like *Ramsbottom*, concluded that the sexual activity did not constitute "a sex act, on account of which" the plaintiff received the thing of value.

The Indictment does not charge anything different, as the Government's multiple proffers and opposition brief confirm. Instead, the Government relies upon wholly inapposite cases involving defendants who had falsely promised, at the time of the sex act, to advance the victim's career, establishing the required exchange: *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018); *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290 (S.D.N.Y. 2019); *Geiss v. Weinstein*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019); *Eckhart v. Fox News Network*, *LLC*, 20-CV-5593, 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021); *Ardolf v. Weber*, 332 F.R.D. 467 (S.D.N.Y. 2019); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740 (C.D. Cal. 2024).

Thus, in *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018), the film producer Harvey Weinstein invited an aspiring actress to his hotel room for "audition purposes." In the

room, he placed the plaintiff on the phone with a Weinstein Company producer, who told her that, if she was "a good girl" and did "whatever [Weinstein] wished," then "they would work" with her. Then, Weinstein assaulted her. The plaintiff complied "because of the tangible and intangible benefits Harvey Weinstein promised" and her belief that he "would follow through on his promise to wield his influence in this industry in her favor if the sex act was completed." *Id.* at 512-13. The court concluded that the plaintiff's "reasonable expectation of receiving [professional opportunities] in the future" was a "thing of value," and the sex act was commercial in nature because it was performed on account of such proffered future opportunities. *Id.* at 519-20. *David, Geiss, Eckhart, Ardolf*, and *Acevedo* allege the same fact pattern, *i.e.*, the occurrence of the sex act on account of a false promise of a future professional opportunity by the defendant to the victim at the time of the assault.

Here, the Government's theory is distinctly different. As the "thing of value," the Government alleges that Tal, Oren and Alon Alexander provided their victims "luxury experiences, travel, and accommodations." Ind. ¶ 1. However, the Government alleges only, as in *Ramsbottom*, that a thing of value was given antecedently to the victims. The Government does *not* allege an *exchange* of sex for a thing of value as required for a *commercial* sex act. And, unlike the civil cases on which the Government relies, the Indictment does not allege or even imply that the victims submitted to sex "on account of" something given or offered in exchange.[2]

[2] The Government also states that the causal connection between the thing of value and commercial sex act was "direct and explicit." Opp. at 21. Its reliance on *Ardolf v. Weber*, 332 F.R.D. 467, 477-78 (S.D.N.Y. 2019), for this proposition exposes the hollowness of this assertion. In *Ardolf*, the plaintiffs alleged that the defendant, during the act of sexually molesting the plaintiffs, "made comments clearly insinuating that, if Plaintiff allowed him to molest them, he would use his power and influence in the fashion industry to help their modeling careers." 322 F.R.D. at 472. There, the connection between the sex act and the thing of value is unquestionably direct and explicit: the defendant explicitly linked the plaintiffs' submission to sexual molestation to his promises of career advancement. *Id.* at 478. The Government alleges nothing of the kind.

Nor does *Raniere* aid the Government. *Raniere* recognizes that the "thing of value" can encompass non-monetary forms of compensation. But *Raniere* nowhere severs or attenuates the separate requirement that the sex act be "on account of" the thing of value, which is absent here, just as it is absent in the hypothetical posed at the outset of this brief.

### B. Even The Second Circuit Questioned Whether The Government's "Commercial Sex Act" Theory Is Appropriate Under 18 U.S.C. § 1591

On June 10, 2025, during arguments on an appeal of this Court's detention order, the Second Circuit panel recognized the disconnect between § 1591 and the Government's theory. U.S. Circuit Judges Gerard E. Lynch and Steven J. Menashi opened the Government's portion of the argument with several questions probing its theory of "commercial sex act":

> THE COURT: I don't think this has that much to do with the issue before us but I'm just a little puzzled by it. That woman who was held down and screaming is engaging in a commercial sex act?
>
> GOVERNMENT: Yes, Your Honor.
>
> THE COURT: But how? I mean, it just puzzles me. I understand the theory that if a defendant offers another person a luxury vacation rather than $50 to engage in sex, and that sex happens, that's a commercial transaction but it's not a rape. But in these instances, it sounds like the defendants offered all of these inducements to get someone in a position to rape them. That's horrible, but it doesn't sound like anyone is engaging in prostitution in that setting. Can you just help me with that, just so I understand what the theory is?
>
> GOVERNMENT: So we should focus on section 1591, and specifically the definition of a commercial sex act in 1591(e)(3). The Government's theory of conspiracy and substantial sex trafficking charges fall directly within the established precedent what a thing of value is within this circumstance.
>
> THE COURT: ***It's what a thing of value is, but doesn't the thing of value have to be in exchange for a sex act?***

2d Cir. Tr. at 29:4-30:7 (emphasis added).

These questions highlight the requirement that the "thing of value" being given or received "on account of" a sex act presumes some form of transaction. While in *Raniere*, the Second Circuit

embraced a broad reading of "thing of value," it did not eliminate the requirement of a commercial "exchange"—whether with the victim or a third party integral to the sex act. *Id*. at 30:8-20; 32:18-22 ("[In *Raniere*], somebody was profiting from engaging in the sex trafficking, right, because there were payments to people who facilitated the transportation of women.").

As the panel correctly commented, the Government's theory here is "even further removed from the ordinary understanding of what a commercial sex act would be" and "counterintuitive just in terms of the ordinary meaning of the defined term." *Id.* at 31:21-33:2. As the hypothetical posed at the outset of this brief shows, a determined prosecutor can identify a "thing of value" in the background of virtually every sexual assault. That is not enough to transform every such assault into a *commercial* sex act, and thereby federalize sexual assault in a manner Congress plainly did not intend.[3]

## II. THE GOVERNMENT FAILS TO ADDRESS FATAL DEFICIENCIES IN THE INDUCEMENT COUNTS

As Tal's motion showed, the Indictment lists four sections of the New York Penal Law—P.L. §§ 130.35, 130.30, 130.25, and 130.52, each of which has multiple subsections that criminalize materially different conduct.[4] The scope of possible conduct encompassed in these

---

[3]A principal catalyst for enacting the Trafficking Victims Protection Act ("TVPA") was the absence of federal laws that adequately punished perpetrators of large-scale trafficking enterprises. *See* 146 CONG. REC. S10164–02 (daily ed. Oct. 11, 2000). At the time Congress enacted the TVPA, other statutes already criminalized purchasing or obtaining sex from adults (or from minors) by force. *See e.g.*, 18 U.S.C. § 2241 (knowingly causing person to engage in sexual act by using force or threatening death, serious bodily injury, or kidnapping); *id.* § 2242 (knowingly persuading, inducing, enticing, or coercing someone to travel in interstate or foreign commerce to engage in prostitution or sexual activity); *see also Fierro v. Taylor*, No. 11-CV-8573, 2012 WL 13042630, at *3 (S.D.N.Y. July 2, 2012).

[4] *See* Br. at 23-24 ("As just one example, Rape in the First Degree, Penal Law § 130.35, alone has 12 total subsections covering a range of criminal conduct, including: rape by forcible compulsion (P.L. § 130.35(1)(a)), sexual contact with a person who is unconscious (P.L. § 130.35(1)(b)), sexual contact of a person less than eleven years old (P.L. § 130.35(1)(c)).").

counts is so broad that it amounts to pleading *any* illegal sexual activity, which warrants dismissal of the Inducement Counts.

Although the Government discusses Oren and Alon Alexander's arguments concerning the Inducement Counts, its opposition does not address the Government's failure to specify the *particular* illegal sexual activity alleged in Counts Four and Nine. Opp. at 25. Neither the Indictment nor the Government's brief attempts to identify which subsections are applicable. As such, the Inducement Counts are deficient and must be dismissed. *United States v. Thompson*, 141 F. Supp. 3d 188, 197 (E.D.N.Y. 2015), *aff'd*, 896 F.3d 155 (2d Cir. 2018) (dismissing charges).

Moreover, although the Indictment describes sex trafficking offenses, it does not establish that the grand jury was presented with evidence of sexual activity *in which Tal personally engaged,* let alone specific acts. *Id.* at 197. While a bill of particulars may cure a lack of notice and protect against double jeopardy, it would not ensure that evidence of specific crimes (for example, statutory rape) committed by Tal was presented to the grand jury. Therefore, the Inducement Counts against Tal are facially defective. *See United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury, or that the grand jury acted properly in indicting him.").

## III. THE COURT SHOULD DISMISS COUNTS THREE AND FOUR—WHICH RELATE TO VICTIM 2—AS A MATTER OF LAW

Tal's motion demonstrated that the specific and undisputed facts proffered about him and Victim 2 do not establish a violation of 18 U.S.C. § 1591 or 18 U.S.C. § 2422. For that reason, as a matter of law, the Court must dismiss Counts Three and Four as to Tal.

The Government dismisses this as a mere factual dispute or issue of evidentiary sufficiency. That argument fails. The Indictment does not charge *personal* wrongdoing by Tal,

and the Government's proffers confirm that the charged offense does not encompass a statutory violation by Tal personally with respect to Counts Three and Four. *See*, *e.g.*, ECF 4, at 4-5; ECF 77-17, at 10:14-17; 11:3-8; ECF 77-18, at 10:2-11:2; 13:18-23.

Section 2422 requires the Government to prove that Tal *personally* induced Victim 2 to travel from Illinois to the Hamptons. *See United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 169-70 (E.D.N.Y. 2014) (citing *United States v. Todd*, 627 F.3d 329, 334-6, n2 (9th Cir. 2010) (Smith, M., concurring) (noting that § 2422 "requires the defendant to have personally coerced the victim," unlike § 1591, which requires only that a defendant have knowledge, or reckless disregard to the fact, that the victim will be coerced to engage in a commercial sex act). For 18 U.S.C. § 1591, the Government similarly must prove that Tal recruited Victim 2 to the Hamptons, knowing that force, fraud, or coercion would be used to cause her to engage in a commercial sex act. This knowledge must have existed at the initial recruitment stage. *Noble*, 335 F. Supp. 3d at 518; *David*, 431 F. Supp. 3d at 301 (quoting *Todd*, 627 F.3d at 334) ("In other words, Plaintiff must allege that [Defendant] had an awareness or understanding that 'if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction.'").

The Government's multiple proffers show that Tal was involved in no such plan. Br. at 26-26, n. 11-14. Tal never met or communicated with Victim 2 (or Individual 1) prior to her arrival in New York. And by the time Tal purportedly discussed with Oren and Alon Alexander airfare payment or any attempt to orgy, Victim 2 and Individual 1 had already agreed to travel to the Hamptons (*i.e.*, been persuaded or induced). For these reasons, Tal is simply not a proper defendant with respect to Counts Three and Four, regardless of what evidence the Government presents at trial.

The Government concedes as much when it tries to hide behind the Bail Reform Act to brush aside these fatal flaws. The Government claims that it described the conduct underlying Counts Three and Four "only insofar it related to the question of the defendants' dangerousness or his risk of flight." Opp. at 27. The Court should see through this thinly veiled effort. The Bail Reform Act requires an *individualized* determination of each defendant's present risk of dangerousness or flight. *See United States v. Paulino*, 335 F. Supp. 3d 600, 609 (S.D.N.Y. 2018). And so, even by its own lights, the Government was required to show *individualized* evidence of Tal's personal involvement in the charged crimes. The Government's submissions confirm that the undisputed facts establish no crime by Tal (let alone a finding of Tal's present risk of danger or flight), just as it alleges no such facts in the Indictment.

*United States v. Risk*, 843 F.2d 1059 (7th Cir. 1988) fits this case hand in glove. There, the Court held:

> [T]he district court found that the government's characterization of the undisputed facts did not constitute a violation of any statute. In other words, the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment. The district court found no violation and correctly dismissed the indictment, not because the government could not prove its case, but because there was no case to prove.

*Id.* at 1061. So too, here: given Tal's lack of personal involvement in either the alleged "inducement" or the alleged sex act based on the undisputed facts proffered by the Government, there is "no case to prove" against him with respect to Victim 2. Accordingly, the Court should dismiss Counts Three and Four against him.

## IV. THE COURT SHOULD DISMISS THE SEX TRAFFICKING AND CONSPIRACY COUNTS FOR LACK OF SPECIFICITY. ALTERNATIVELY, THE COURT SHOULD GRANT A BILL OF PARTICULARS.

### A. The Conspiracy and Sex Trafficking Counts Lack Specificity

Tal is entitled to sufficient information to understand the charges against him, to prepare a defense, and to protect against double jeopardy. The Indictment alleges 15-year-old conduct that supposedly occurred on unspecified dates, in multiple locations, in different countries, and that involves numerous accusers.

The Government suggests that the Overview and Background sections of the Indictment sufficiently illuminate the allegations in the Conspiracy and Sex Trafficking Counts. Unfortunately, this is far from true—a fact that the Government is certainly aware of. Defense counsel has conferred with the Government and indicated that for the majority of the statutory counts, Tal does not know the identity of the accusers, what they are accusing him of doing, or when the alleged conduct occurred. The Overview and Background sections offer vague descriptions of myriad conduct, which do nothing to advance the Government's obligation to provide fair notice of the specific charges.

These generalizations, bereft of factual particularity, deprive Tal and the Court of the confidence that "the government's case at trial will reflect the evidence presented to the grand jury." *See United States v. Urso*, 369 F. Supp. 2d 254, 267 (E.D.N.Y. 2005). Notably, the third superseding indictment added six counts and five accusers, but no additional facts. It is illogical for the Government to now assert that the same preamble that applied to the initial 3-count Indictment would shed light on the new counts and new accusers.

### B. Alternatively, The Court Should Direct The Government To Provide Tal With A Bill Of Particulars, As Detailed Below

#### 1. Bill of Particulars

Alternatively, the Court should direct the Government to provide Tal with a Bill of Particulars and proper discovery. Rule 7(f) permits a defendant to seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby

enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987). The decision of whether to grant a bill of particulars is within the discretion of the Court. *See United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975); *United States v. Warme*, No. 09CR19A, 2009 WL 427111, at *2 (W.D.N.Y. Feb. 20, 2009) (ordering government to disclose identity of sex crime victim where "defendant's ability to adequately prepare a defense against this charge is significantly compromised without being advised of the identity of the alleged victim").

Sex trafficking cases traditionally involve a defendant who has an ongoing relationship with the accuser. Here, no such relationship existed. The Government has alleged a sex trafficking conspiracy from, what appear to be, singular sexual encounters that occurred more than a decade ago.[5] Each of the Sex Trafficking Counts includes a month and year, but this is insufficient to inform Tal of the charges against him.

The Court's decision in *United States v. Pierre-Louis*, a 16-year sex trafficking conspiracy prosecution, is instructive. No. 16-CR-541 (CM), 2018 WL 4043140 (S.D.N.Y. Aug. 9, 2018). There, the Court concluded that a bill of particulars was not warranted because "the Indictment and the search warrant affidavit provide considerable detail about the defendant's activities, and the extensive discovery provided by the Government fleshes out the rest." *Id*. at *7 (noting that the Court expected the Government to work "cooperatively with defense counsel to identify the portions of the discovery that are relevant to the actual dates, times, places and victims who will be the subject of evidence at the trial"); *see also United States v. Paduch*, No. 23-CR-181 (RA),

[5] And despite charging Tal with a 13-year conspiracy, three of the six alleged victims accuse him of crimes that occurred within a two-month span at the very outset of the purported conspiracy. That fact alone underscores the very need for a bill of particulars.

2024 WL 778938, at *5 (S.D.N.Y. Feb. 26, 2024) (denying bill of particulars to defendant, who was a urologist accused of sexually assaulting patients, where he received significant discovery including "medical records documenting the dates of [defendant's] appointments with victims"—records the government said "constitute 'a legend' to the charged conduct"); *United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 3168250, at *11 (S.D.N.Y. July 27, 2021) (concluding that an eight-year timespan for a sex trafficking conspiracy was "so long" that the defense was entitled to "more particulars" to enable it to "mount an independent pretrial investigation").

Notably, in the instant case, not one of the 11 women whose allegations are detailed in the first (and subsequent) warrant affidavits appears in any indictment. ECF 82, at 2. Similarly, the Government cannot in good faith point to the "extensive discovery" and pretrial filings as evidence of satisfying its obligations under Rule 7. The Government offered to point defense counsel to discovery relating to specific counts. While the gesture was appreciated, the Government's responses offer no help. For example:

- In response to Tal's request to be pointed to any discovery concerning Counts Six and Seven (Victims 4 and 5), **the Government pointed to no discovery at all**. Instead, it said, "it is our understanding that the acts underpinning Counts Six and Seven occurred on the same weekend in or about June 2009"—sometime "after Memorial Day weekend and before July 4 weekend."

- In response to Tal's request to be pointed to discovery concerning Count Two (Victim 1), the Government stated, "it is our understanding that the acts underpinning Count Two occurred in the Hamptons in June 2011,"[6] and pointed to four pages of discovery. These included: (i) two undated photographs that were taken not in the Hamptons, but in

[6] In a subsequent email responding to a defense inquiry, the Government confirmed that the correct date was July 2011, not June 2011. To highlight the challenge faced by the defense: the difference between June 2011 and July 2011 is considerable. It creates an entirely different span of four weeks with four different locations and dozens of different individuals to attempt to investigate.

Manhattan[7]; a screenshot of contact information for Oren Alexander (not Tal, who is the only named defendant in Count Two); and an undated photograph of an unknown male.

Certainly, unlike *Pierre-Louis*, the instant Indictment, read in conjunction with the search warrant affidavits and the discovery, do not provide Tal with "enough information to apprise him of the charges with enough precision to enable him to prepare a defense, avoid unfair surprise at trial, and preclude a second prosecution for the same offense[s]." *Pierre-Louis*, 2018 WL 4043140, at *7.

To be clear, this is not an attempt to force the Government to "spell out in precise detail how [it] will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145-46 (2d Cir. 1986). It is, however, a plea to the Court to put Tal in a position to defend himself at trial. The Government, on one hand, proffers that there is "strong evidence" and corroboration, yet on the other hand, states that the above constitutes the full universe of discovery related to Counts Two, Six, and Seven. Both cannot be true.

**CONCLUSION**

For the reasons set forth in Tal's opening and reply memoranda, as well as for the reasons set forth in Oren and Alon Alexander's memoranda, in which he joins, Tal's motions should be granted. The Court should dismiss the Indictment, or at a minimum, order the requested bill of particulars.

---

[7] The Government opted to collect materials from witnesses in a mostly non-native form (*i.e.*, screenshots or screen recordings). We have asked the Government to either provide metadata or, for non-native materials, the date it believes each photo or video was created (*i.e.*, taken or recorded). Notwithstanding repeated requests, we have not yet received this.

Dated: New York, New York
August 7, 2025

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By: ______________________________

Milton L. Williams
Deanna M. Paul
Alexander Kahn
250 Vesey Street, 27th Floor
New York, New York 10281
Tel: (212) 335-2963
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com
akahn@wmhwlaw.com

*Attorneys for Defendant Tal Alexander*