

250 Vesey Street  
27th Floor  
New York, NY 10281

wmhwlaw.com  
T: 212-335-2030  
F: 212-335-2040

August 12, 2025

**VIA ECF**

Hon. Valerie E. Caproni  
United States District Court  
Southern District of New York  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, New York 10007

         **Re:**    *United States v. Alexander*, **Docket No. 24-CR-00676 (VEC)**

Dear Judge Caproni:

      On behalf of Defendant Tal Alexander ("Tal"), we respectfully submit this letter to supplement Tal's motion to suppress evidence (ECF 81, the "Motion") to address newly learned information. On August 7, 2025, less than an hour after Tal filed his reply memorandum in support of the Motion (ECF 136), the Government produced *Brady* material concerning the photo books that the FBI showed to certain accusers (the "August 7 Production"). In particular, the August 7 Production indicated that two accusers—███████████████████████[1]—misidentified Oren and Alon Alexander when viewing the photo books (each identifying Oren for Alon's photo, and vice versa). And, three accusers—███████████████████████████████████ ██████████████████████—initially misidentified Alon or Oren, and at some point later in the identification procedure changed her response to the other brother. Finally, ████████ was uncertain when she viewed Oren's photo, as the notetaker wrote, "Oren?"

      As described below, this information, which the Government knew, or should have known, when it obtained the search warrants,[2] bears directly on Tal's motion to suppress evidence from the warrants. Indeed, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ thus rendering the applications even more stale and less supportive of the incredibly broad searches than were authorized.

---

[1] The alleged victims defined in the search warrants differ from those defined in the indictment (i.e. Victim-1 in the search warrants is not the same woman as Victim-1 in the indictment). This letter refers to alleged victims in the indictment as "Ind.-Victim" and those in the search warrants as "SW-Victim."

[2] The notes in the August 7 Production are not dated, but the photo books likely would have been shown to each alleged victim when the FBI interviewed them, which occurred before their accounts were included in the Warrant Applications.

### A. Background

On April 10, 2025, the Government produced a set of 14 FBI photo books. *See* ECF 83, Exs. 2-12 and 16-18. The following day, on April 11, 2025, we emailed the Government, requesting (i) "context around the photobooks including whether they were used in identification procedures," and (ii) that "the correlating 3500 materials be provided as early as possible." We noted that it was a time-sensitive request because the deadline for Tal's pretrial suppression motion was in less than a month.

On April 24, 2025, the Government responded that it showed the photo books to a number of witnesses, but "did not rely upon the photobooks to identify the defendants" and "do not intend to introduce any testimony or evidence relating to the use of the photobooks at trial or in any other proceeding at this time." On April 29, 2025, we asked the Government (i) to produce any FBI reports describing the administration of the photo book identification procedures; (ii) whether Tal was identified in any of the photo books (and if so, which ones); and (iii) whether the Government intended to elicit an in-court identification of Tal from any of the witnesses that were shown any of the photo books. On May 6, 2025, the Government responded by email (as quoted in the Declaration of Milton Williams, ECF 83 ¶ 6, filed in conjunction with the Motion):

> Prior to being shown the photobook, each witness that described an assault had identified their attacker(s) by name. The photobook was updated over time to add individuals or replacement representative photos. When a photobook was used in an interview, all of the photos in the set were shown to a witness, one at a time, in order, and a witness was asked if they knew who was depicted in each photo, as it was viewed. Occasionally, if a witness asked to go back, we could return to a prior photo. The witnesses were not told the sources of the photographs. Witnesses were not told whether they correctly or incorrectly identified someone in a photograph.
>
> Your client was identified by multiple witnesses and in multiple versions of the photobooks. We expect that many witnesses, including some who viewed a photobook during an interview, will identify the defendants, including your client, in court via photo or live identification. I would expect all witnesses who describe being assaulted by your client to identify him one of those two ways.

The Government did not respond to our request for the production of relevant 3500 material.

On June 9, 2025, Tal filed the Motion, which argued, in part, that the Government's search warrant applications omitted material information and that the Government's use of the photo books was unduly suggestive.

On July 8, we again asked the Government for information concerning the photo books, asking whether each statutory victim (Ind.-Victims 1-7) was shown a photo book, and if so, which photo book each woman was shown. On July 18, the Government responded by identifying the particular photo book that each statutory victim viewed. The response included no information regarding who they identified, if anyone. Later that day, we informed the Government that, in addition to statutory victims, we consider all accusers referenced in the Warrant Applications to be covered under *Brady* and *Giglio*.

On August 6, 2025, prior to filing, we advanced the Government a copy of Tal's reply memorandum with proposed redactions, indicating that we intended to file the reply on August 7. The Government reviewed the reply and agreed with the proposed redactions. As planned, we filed the reply brief on August 7. Less than an hour after the filing, the Government made the August 7 Production.

In the August 7 Production, the Government (i) identified which photo books each of the Indictment victims and search warrant victims were shown, and (ii) provided excerpts of handwritten notes indicating each witness's response after viewing each photo in the respective photo books. As explained above, the notes indicated that two accusers (███████ ███████) misidentified Oren and Alon—meaning, they identified Oren when the photo depicted Alon and vice versa. In addition, ████████████████████████████████████████ initially misidentified either Alon or Oren (identifying Oren when it was Alon, and vice versa), and, at some point during the identification procedure, changed her response to the other brother. Finally, ████████ could not identify Oren with certainty, as the notes indicate, "Oren?"

Notwithstanding the apparent *Brady* material contained in these documents, the Government noted in its production cover letter that it was providing this information as a "courtesy" and the "production of this material should not be taken to indicate that the Government believes it has an obligation to provide these materials at this time."

## B. Supplemental Argument

In the Motion, Tal sought to suppress evidence obtained from the warrants to search his iCloud account, Meta accounts, and his home because, in part, the affiant, with at least a reckless disregard for the truth, omitted material information from the applications. *See* Motion at 9-17. As we now know, none of the warrants disclose any of the misidentifications, adding to the list of critical information that the Government should have disclosed to the reviewing judges.

Specifically, all of the warrants include the account of ████████████████████████████████████████████████████. However, as we now know, the Government omitted from the warrants that ████████ had misidentified Oren's photo in the photo book, instead identifying Oren's photo as Alon. In addition to ████████, the Meta and Premises Warrants also include the accounts of ███████████████████████████████████████████, and who each demonstrated uncertainty in the identifications of Oren and Alon. They, too, initially identified the other brother's photo, but then went back to change it. Even if they ultimately made an accurate identification of the photos, the uncertainty pervading the alleged victims' ability to identify the defendants is material, undercuts their credibility, and impacts the probable cause analysis.

A witness's misidentification in a pretrial identification procedure is exculpatory and constitutes *Brady* information. *See, e.g.*, *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992) (misidentification in a pretrial lineup procedure was "clearly *Brady* material"); *Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir. 1974) (vacating conviction where Government failed to

---

[3] The August 7 Production also revealed that ████████████████████████████████████████████████████████████████, had similarly misidentified Oren and Alon, but her account is not included in the warrant applications. ████████ not only swapped Oren and Alon when viewing their individual photos, but also misidentified Oren and Alon in a photo depicting all three defendants.

3

disclose that eyewitness identified a photo other than the defendant's in a photo array as resembling the perpetrator of a bank robbery); *McDowell v. Dixon*, 858 F.2d 945, 951 (4th Cir. 1988) (reversing conviction for failure to turn over prior misidentifications). Where the misidentification is made by the only eyewitness to the crime, as we have here, the materiality of the misidentification is even clearer. *McDowell*, 858 F.2d at 951-52 (failure to disclose misidentification of only eyewitness was sufficient to reverse conviction because the "only direct evidence presented by the prosecution is the eyewitness identification" and it was "not cumulative"). Additionally, even hesitancy in making an identification may fall within the scope of *Brady*. *See United States v. Sheehan*, 442 F. Supp. 1003, 1006 (D. Mass. 1977) (granting new trial after Government failed to disclose eyewitness's inconsistency and hesitancy in making pretrial identifications). The Government not only failed to include the *Brady* information in the Warrant Applications, thus misleading the reviewing judges, but also, and equally troubling, did not produce it until minutes after Tal completed the briefing on relevant issues, despite numerous requests since April for the information.

The materiality of these omissions from the Warrant Applications is acutely apparent in light of the Government's heavy reliance on the length of the conspiracy. In its Opposition, the Government repeatedly leaned on their assertion that the Warrant Applications presented evidence of a conspiracy "until at least 2021" in an effort to overcome staleness and overbreadth issues. Opp. at 57. In each of the warrants, however, the only facts that could extend the alleged conspiracy through 2021[4] come from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The inclusion of the misidentification in the Warrant Applications significantly undermines ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Without it, the conspiracy, as alleged in the warrants, ended in 2017, the date of the next most recent sexual assault detailed in the warrants (and 7 years before the warrants' issuance). Even the Government recognizes the importance of ▮▮▮▮▮▮ for purposes of extending the purported conspiracy: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and certainly any finding by Judge Cave that the conspiracy continued until at least 2021 was based on 'reasonable inferences from the facts presented based on common sense and experience.'" Opp. at 80.

If the magistrate judge cannot credit ▮▮▮▮▮▮ allegations, which it should not given the misidentification, the alleged facts presented in the warrant become even more stale. And the support for conducting incredibly broad searches without any date limitation becomes even more attenuated. The Government should have included this evidence, as it is "the kind of thing the judge would wish to know" in determining whether probable cause exists. *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). For this additional reason, the evidence obtained from the warrants should be suppressed, or in the alternative, a *Franks* hearing should be ordered.

---

[4] Tal continues to assert that the allegations presented in the Warrant Applications allege no racketeering or sex trafficking conspiracy, nor Tal's involvement in one.

                                      Respectfully submitted,

                                      */s/ Milton L. Williams*

                                        Milton L. Williams
                                        Deanna M. Paul
                                        Alexander Kahn
                                        *Attorneys for Defendant Tal Alexander*

cc:     All counsel via ECF