

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 31, 2025

**BY ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

>  Re: *United States v. Alon Alexander, Oren Alexander, and Tal Alexander,*
>  S3 24 Cr. 676 (VEC)

Dear Judge Caproni:

      Enclosed with this letter are declarations that the Government is submitting in response to the Court's October 17, 2025 Sealed Opinion and Order ("Order") and in further opposition to the defendants' motions for an evidentiary hearing concerning alleged violations of the attorney-client privilege, (Order at 42-43; Dkt. 121 ("Gov. Opp,") at 103-108),[1] and in further opposition to the defendants' motions for a *Wade* hearing, (Order at 38-40; Gov. Opp. at 88-93). For the reasons described in the Government's prior opposition brief, this letter, and the attached declarations, the defendants' motions should be denied.

Motion Regarding Alleged Violation of Attorney-Client Privilege

      The defendants have asked the Court to hold a hearing to address what they assert is a violation of the attorney-client privilege that happened when the Government seized and reviewed certain materials saved by Alon Alexander in a folder named "The Case." (*See* Order at 43 n. 27). In its opposition brief, the Government described the steps taken to filter potentially privileged materials from the defendants' accounts, the limited number of files from "The Case" folder that were reviewed by the Case Team, and non-privileged nature of the files that were seen. (Gov. Opp. at 99-108).

      The Court has directed the Government to provide additional factual information about the review process, specifically "one or more affidavits by individuals with personal knowledge: (1) detailing the procedures employed to filter privileged materials; and (2) stating whether any materials from 'The Case' folder, other than the 'Screenshots and Photographs,' were passed from

---

[1] Page number references to the Government's opposition brief are to the page numbers on the brief, not to the ECF page numbers.

the Filter Team to the Case Team," (Order at 43). In response to that order, the Government is submitting declarations from Assistant United States Attorneys Molly Canick and Elizabeth Espinosa. AUSA Canick is the privilege review coordinator for this case, and AUSA Espinosa is a prosecutor on the Case Team. These declarations provide the information requested by the Court.[2]

As described in the declarations, AUSA Espinosa accessed only a limited number of photographs and screenshots that were saved to "The Case" folder, which did not contain attorney-client communications or work product protected materials. (Espinosa Decl. ¶¶ 9-10). No other attorney or agent on the Case Team accessed materials from "The Case" folder, and the Filter Team has removed "The Case" folder from updated copies of accounts that have been given to the Case Team. (Espinosa Decl. ¶ 10; Canick Decl. ¶¶ 9-10). This summer an analyst with the FBI saw materials in "The Case" folder during a review of the iCloud account, and when this was identified by the Case Team, the analyst was directed to stop her review, not to discuss her review with anyone on the Case Team, and was then removed from the investigative team. (Espinosa Decl. ¶ 16).[3]

These declarations further support the Government's opposition to the defendants' motion for an evidentiary hearing. As the Court wrote in the Order, "the defense has barely made a showing that materials in 'The Case' file might be privileged." (Order at 43). Nevertheless, the Government has segregated the files saved in that folder from those passed to the Case Team—including photographs and screenshots that are almost certainly non-privileged—and reassigned an analyst who accessed the materials inadvertently. As the Court described in the Order, "the procedures the Government employed to mitigate the likelihood of viewing privileged information suggest that any alleged intrusion of the attorney-client privilege was unintentional and not 'manifestly and avowedly corrupt.'" (Order at 43 (quoting *United States v. Tournant*, No. 22-CR-276-LTS, 2023 WL 5276776, at *13 (S.D.N.Y. Aug. 15, 2023)). The declarations submitted today only reinforce the Court's prior statement. Because there was no corrupt intrusion of the attorney-client relationship, and because the defendants have not identified any prejudice in any event, the motion for a hearing should be denied. *See United States v. Schwimmer*, 924 F.2d 443, 447 (2d Cir. 1991).

## Motion for a *Wade* Hearing

The defendants have asked the Court to suppress the in-court identification of the defendants by witnesses who were shown photobooks that had the defendants' photos in them during investigative interviews, or to alternatively hold a *Wade* hearing. (*See* Order at 38-40). The

---

[2] As directed by the Court, the Filter Team has submitted directly to the Court and the defendants, without giving access to the Case Team, an overinclusive set of materials from "The Case" folder that were potentially accessed by a member of the Case Team. (*See* Canick Decl. ¶¶ 17-18).

[3] As described in the attached declarations, on or about July 30, 2025, the Government learned that the analyst was reviewing a copy of the iCloud account that still had some of the contents of "The Case" folder in it and promptly paused review, conducted a taint analysis, and removed the analyst from the team. (Canick Decl. ¶¶ 11-14). Nevertheless, the Government regrets not identifying the issue and notifying the Court and parties sooner.

defendants' argument in support of their motion was that the photobooks contained too few photographs overall or too few "filler" photographs. (*See* Dkt. 82 at 27-30). The Court has denied the motion as to these arguments, but in doing so identified an issue the defendants had not raised, namely the presence of a group photograph of the defendants at the end of some of the photobooks, which the Court found was unduly suggestive. (Order at 39). As to the issue of the group photograph, the Court has directed the Government to submit a declaration describing "which witnesses who are expected to make an in-court identification of a Defendant were shown any of the Suggestive Photobooks …. [and for] each such witness: his or her opportunity to observe the person at the time of the crime; his or her degree of attention at the time of the crime; his or her certainty of identification; and the length of time between the crime and the identification," (Order at 40). In response to that order, the Government is submitting a declaration from FBI Special Agent Justine Atwood. Agent Atwood is one of the law enforcement agents principally responsible for this case and participated in the relevant interviews with witnesses.

The Government may call at trial up to five victims who saw the group photograph during a photobook identification procedure. Agent Atwood's declaration describes each of those victim's observations of the defendants, experience with the defendants, and identification of the defendants in the photobook. As is clear from the descriptions in Agent Atwood's declaration, there is no reason for the Court to conclude that the victims' identifications of the defendants who assaulted and raped them was tainted by viewing a group photograph of the defendants during interviews with law enforcement.

The circumstances where suppression of an identification may be warranted are "scarce" and apply "only if [the identification] was *both* produced through an unnecessarily suggestive procedure *and* unreliable." *United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022) (emphases in original); *see also Jarrett v. Headley*, 802 F.2d 34, 40-41 (2d Cir. 1986) (pretrial photographic identification procedures violate due process only if the procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."). At the first step in this analysis, the Government recognizes that the Court has found the group photograph of the defendants to be unduly suggestive. However, because the defendants did not raise this argument in their own motions, the Government has not had reason to address the issue previously. Even if conceding that the group photograph is potentially suggestive under certain circumstances, it does not follow that its specific placement and use in the photobooks at issue here rendered identifications of the defendants unduly suggestive overall. *See Gershman*, 31 F.4th at 92 (evaluation must be based on "the facts of [the] case and the totality of the surrounding circumstances.") (cleaned up). Viewed in totality, the group photograph did not unduly suggest to any of the five victims whose potential in-court identifications are at issue that they should identify the defendants in the photobook or influence any victim's identification. This point is most obviously made by the fact that each of the victims who viewed the group photograph did so only after already identifying the defendants in individual photographs that the Court found were appropriately included and displayed to the victims.

As is clear from Agent Atwood's declaration, the group photograph did not unduly influence any victim to identify the defendants. Procedurally, the group photograph was at the end of more than a dozen other photos and was shown to victims only after they had already viewed and identified (or not identified) the people in the individual photographs, including the

defendants. (Atwood Decl. ¶ 4). In practice, the group photograph did nothing to influence the victims' earlier identifications in the individual photographs. Victims-1 and -9 identified all three defendants in the individual photographs and in the group photograph. (Atwood Decl.¶¶ 7, 19). Victims-4 and -23 identified Tal Alexander in his individual photograph and in the group photograph, but these victims incorrectly identified photographs of Oren Alexander and Alon Alexander as of one another in both the individual and group photographs. (Atwood Decl. ¶ 11, 23) And Victim-5 identified all three defendants in their individual photographs but did not identify any of the defendants in the group photograph. (Atwood Decl. ¶ 15). In no instance did viewing the group photograph cause a victim to make an identification of a defendant that had not already been made when the victim viewed the individual photographs that the Court has found were not suggestive. Because the group photograph did not have any impact on the victims' identifications of the defendants, there is no factual basis to conclude that, in any of the five instances relevant here, the use of the group photograph unduly suggested that a victim should identify the defendants in the photobook.

But even if moving to the second step of the analysis and assessing the reliability of the victims' identifications, the Court still should not suppress any of the identifications or hold a *Wade* hearing. As is clear from Agent Atwood's declaration, each of the relevant victims spent hours or more with the defendants and had ample opportunity to perceive them around the times of the attacks. *See United States v. Stanley*, No. 09 Cr. 141 (NGG), 2009 WL 5066864, at *7 (E.D.N.Y. Dec. 22, 2009) ("[E]ven brief glimpses and short conversations may support a finding of independent reliability . . . ."). The victims knew who they were interacting with and identified their attackers by name before they were ever shown their photos. And other evidence corroborates the victims, including Victim-4 and -5 being present for many of the same events, and messages Oren Alexander sent to Victims-9 and -23 after he assaulted them.

Given the interactions the victims had with their attackers, the opportunities they had to observe them, the victims' certain and unwavering identification of their attackers by name, other corroborating evidence, and the victims' identification of the defendants in the individual photographs before ever seeing the group photo, the Court should conclude that the victims' identifications are independently reliable. The only potential argument the defendants can make about the reliability of the victims' identification is that because two of the defendants have a close resemblance that the identification is unreliable. But this argument is the exact type of argument that can "be elicited through the time-honored process of cross-examination," and there is no reason for the Court to suppress the victims' identifications. *Gershman*, 31 F. 4th at 93; *see also United States v. Brewer*, 36 F.3d 266, 269 (2d Cir. 1994) ("[I]n the absence of a very substantial likelihood of irreparable misidentification, identification evidence is for the jury to weigh." (quotations and alterations omitted)).

<u>Proposed Redactions to the Order and Agent Atwood's Declaration</u>

Finally, the Government is submitting to the Court proposed redactions of the Court's Sealed Order. (*See* Order at 47). Consistent with the Court's order on July 22, 2025 that permitted the Government to redact certain victim and witness information from its opposition brief, (Dkt. 123), the Government requests the same information be redacted from the publicly filed version of the order and has proposed redactions to that effect. For the same reasons, the Government also asks that the Court permit the Government to file Agent Atwood's declaration with certain

information provided by victims redacted. The Government believes that the proposed redactions, which are needed for "protecting the privacy of alleged victims and witnesses," protect significant privacy interests of non-parties and continue to outweigh the "moderate" presumption of public access to those portions of the Court's order. (Dkt. 123 at 4 (citing *United States v. Akhavan*, 532 F. Supp. 3d 181, 185 (S.D.N.Y. 2021)).

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By: \_\_\_/s_____
        Kaiya Arroyo
        Elizabeth A. Espinosa
        Andrew Jones
        Madison Reddick Smyser
        Assistant United States Attorneys
        (212) 637-2226/-2216/-2249/-2381

cc: All defense counsel