UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------X
UNITED STATES OF AMERICA,                     :
                                              :
          -against-                           :
                                              :
ALON ALEXANDER, OREN ALEXANDER, and :              24-CR-676 (VEC)
TAL ALEXANDER,                                :
                                              :   OPINION AND ORDER[1]
                              Defendants.     :
                                              :
-------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

      The Government alleges that, for more than a decade, Alon Alexander, Oren Alexander, and Tal Alexander ("Defendants") conspired to drug, sexually assault, and rape women.  *See* S3 Superseding Indictment, Dkt. 86 ("Indictment"), ¶ 1.  The Indictment charges Defendants with conspiracy to commit sex trafficking, sex trafficking, inducement to travel to engage in unlawful sexual activity, and aggravated sexual abuse.  Defendants moved to dismiss the Indictment and to suppress evidence obtained from search warrants.  Defendants also requested various other forms of relief, including a bill of particulars and to compel the Government to produce *Brady* material.  For the following reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part.  Defendants' motions to suppress are DENIED.  Defendants' remaining motions are DENIED, except that the Government must produce the contested privileged material for *in camera* review and provide additional information regarding certain out-of-court identifications.

---

[1]     Because this Opinion and Order cites portions of the relevant warrants that were redacted in public filings, it will be filed entirely under seal and provided to the parties via email, pursuant to the Court's sealing procedures. By October 31, 2025, the Government must show cause why this Opinion and Order should remain sealed and propose redactions that are permissible given the presumption of public access.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).

# BACKGROUND

## I.    The Indictment

Count One of the Indictment charges Defendants with conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c).  *Id.* ¶¶ 1–7.  According to the allegations in the Indictment, from 2009 through 2021, Defendants worked together and with unnamed other parties to drug, sexually assault, and rape dozens of victims.  *Id.* ¶¶ 1, 7.  Defendants offered material benefits, including domestic and international travel, luxury hotel accommodations, and access to events, to cause victims to travel with them or to meet them in various locations.  *Id.* ¶¶ 1, 4–5.  In some instances, victims were transported across State and international lines.  *Id.* ¶ 5.f. On several occasions, during those trips, Defendants or others drugged the victims, rendering them mentally or physically incapacitated.  *Id.* ¶ 5.g.  Defendants also physically restrained victims before raping or sexually assaulting them.  *Id.* ¶ 5.h.

Counts Two, Three, and Five through Eight of the Indictment charge Defendants with sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591 (with Count One, the "Sex Trafficking Counts").  *Id.* ¶¶ 8–9, 11–14.  In pertinent part, Section 1591 makes it unlawful, "in or affecting interstate or foreign commerce," to recruit, entice, or transport a person, knowing or "in reckless disregard of the fact": (1) that "means of force, threats of force, fraud, coercion[,]" or any combination thereof, "will be used to cause the person to engage in a commercial sex act;" or (2) that the person is a minor and "will be caused to engage in a commercial sex act."  18 U.S.C. § 1591(a).  The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."  *Id.* § 1591(e)(3).[2]

---

[2]        Section 1591 carries two distinct minimum penalties: (1) fifteen years' imprisonment for an offense "effected by means of force, threats of force, fraud, or coercion" or if the victim was less than fourteen years old;

Counts Four and Nine charge Defendants with inducing victims to travel to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(a). Indictment ¶¶ 10, 15. In pertinent part, Section 2422(a) prohibits knowingly persuading, inducing, enticing, or coercing a person to travel in interstate or foreign commerce to engage in sexual activity "for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(a).

Finally, Count Ten alleges that Alon and Oren Alexander committed aggravated sexual abuse on a cruise ship in violation of 18 U.S.C. §§ 2241(a)(1), (b)(2). Indictment ¶ 16.

Defendants were first arrested in Florida in December 2024 in connection with the S1 Superseding Indictment, which charged one count of sex trafficking conspiracy and two counts of sex trafficking. *See* S1 Superseding Indictment, Dkt. 3; Rule 5(c)(3) Documents, Dkts. 11, 22–23. On May 8, 2025, a grand jury returned both the S2 and the S3 Superseding Indictments. Gov't Mem., Dkt. 121, at 40–41. Only the former was immediately unsealed. *See* Dkt. 63. The S2 and S3 Superseding Indictments are identical, except that the S3 Superseding Indictment charges Count Ten. *Id.* at 41. The parties jointly agreed to schedule Defendants' arraignment on the S2 Superseding Indictment on June 10, 2025; the Court advised that the arraignment would have to proceed before a Magistrate Judge on that date. *See* Order, Dkt. 66. On June 6, 2025, Defendants moved to waive their personal appearances at the arraignment. *See* Dkt. 68. The Government opposed the request, citing the Court's previous notice to the parties that it does not typically allow criminal defendants to waive their appearances. *See* Dkt. 78. On June 9, Judge Netburn denied Defendants' request. Order, Dkt. 79. On June 10, 2025, after Defendants arrived at the courthouse for their arraignment on the S2 Superseding Indictment, they were arrested in connection with the S3 Superseding Indictment. Gov't Mem. at 41.

---

and (2) ten years' imprisonment if no force, threats of force, fraud, or coercion was used and the victim was between fourteen and eighteen years old. 18 U.S.C. § 1591(b).

## II.    The Warrants

As part of its investigation of the Defendants, the Government obtained search warrants to search records and property belonging to Defendants.  In August 2024, the Honorable Sarah L. Cave and the Honorable Stewart D. Aaron, United States Magistrate Judges for the Southern District of New York, signed warrants authorizing the Government to search Defendants' Apple iCloud and Meta platform accounts, respectively.  *See* Williams Decl., Dkt. 83, Exs. 30 (the "iCloud Warrant") and 31 (the "Meta Warrant").[3]

## DISCUSSION

## I.    Defendants' Motions to Dismiss

Rule 7 of the Federal Rules of Criminal Procedure requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "[T]o satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (citation and internal quotation marks omitted).  An indictment must: "(1) contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and (2) enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Runner*, 143 F.4th 146, 156 (2d Cir. 2025) (citation and internal quotation marks omitted).  It is "very rare" for "an indictment that track[s] the statutory language and furnishe[s] the pertinent dates" to be "held insufficient." *Stringer*, 730 F.3d at 125.

---

[3]    Those warrants formed the basis for subsequent warrants to search a Raya account used by Alon and Oren, Klugh Decl., Dkt. 120, Ex. A (the "Raya Warrant"), for a cell site location warrant, Klugh Decl. Ex. B (the "Cellphone Location Warrant"), and for searches of Defendants' residences, Williams Decl. Ex. 32 (the "Park Avenue Warrant"), Klugh Decl. Exs. C (the "Lake Avenue Warrant") and D (the "Meridian Avenue Warrant").

### A. Alleged Defects in the Indictment

Defendants move to dismiss the Indictment asserting a variety of arguments.

#### 1. *Failure to State an Offense*

##### a. Inducement to Travel (Counts Four and Nine)

Defendants move to dismiss Counts Four and Nine of the Indictment for failure to state an offense. *See* Def. Mem., Dkt. 72, at 1–9; Gov't Mem. at 1–6, 25–27. Those counts charge Defendants with violating 18 U.S.C. § 2422(a).[4] Count Four alleges that Defendants persuaded, induced, enticed, and coerced Victim-2 to travel in interstate commerce "*so*" that Defendants "*could engage* and attempt to engage in unlawful sexual activity" in violation of various New York statutes that criminalize rape and forcible touching, Indictment ¶ 10 (emphasis added); Count Nine alleges Tal induced Victim-6 to travel from Nevada to New York "*so*" that Tal "*could engage* and attempt to engage in unlawful sexual activity with" her, *id.* ¶ 15 (emphasis added). Defendants seize on the verbiage "so" and "could engage" to argue that, by including such language, the Indictment fails to track the statutory language and fails to state an offense under Section 2422. *See* Fed. R. Crim. P. 12(b)(3)(B)(v).

Defendants claim that to prove a violation of Section 2422 the Government must prove that Defendants induced their victims to travel so that the victim could "commit criminal sexual activity." Def. Mem., Dkt. 72, at 1–9. In support of their interpretation that Section 2422 is only violated if the person who is induced to travel interstate herself engages in sexual activity for which she can be criminally charged, Defendants note that Congress used "with intent" in other provisions of the Mann Act, *see* 18 U.S.C. §§ 2421(a), 2423(a), and the absence of such

---

[4]     Section 2422(a) of Title 18 makes it unlawful to "knowingly persuade[], induce[], entice[], or coerce[] any individual to travel in interstate or foreign commerce . . . to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense" or to attempt to do so. 18 U.S.C. § 2422(a).

language in Section 2422 should be read as a conscious choice by Congress to exclude reading a "with intent" requirement into the statute, *see King v. Burwell*, 576 U.S. 473, 486 (2015) ("[W]hen deciding whether the language is plain, we must read words in their context and with a view to their place in the overall statutory scheme." (citation and internal quotation marks omitted)). Def. Mem., Dkt. 72, at 3–6.

The Government disputes Defendants' interpretation of the statute, relying chiefly on *United States v. Kelly* for the proposition that "[t]o determine whether the defendant had the requisite intent under § 2422(a) . . . the jury need only consider whether the defendant 'intended to induce, persuade, and/or entice' the victim to travel to engage in illegal sexual conduct with him." 128 F.4th 387, 413 (2d Cir. 2025) (citation omitted). In *Kelly*, the Court stressed that the focus of the statute is on the defendant's intent, not the victim's. *Id.* at 414. Because there was sufficient evidence from which a jury could conclude that Mr. Kelly coerced his victims "to travel to engage in sexual activity for which [the defendant] could be charged with a criminal offense," there was adequate evidence to sustain his conviction for violating 18 U.S.C. § 2422(a). *Id.*

With that precedent in mind, the Indictment tracks the language of Section 2422. *See Stringer*, 730 F.3d at 124. The statute prohibits a defendant from knowingly persuading, inducing, or enticing an individual to travel to engage in any sexual activity for which any person, including the defendant, can be charged with a criminal offense. 18 U.S.C. § 2422(a). Counts Four and Nine allege that one or more Defendants did precisely that by persuading, inducing, and enticing Victim-2 and Victim-6 to travel to New York from out of state so that Defendants could engage and attempt to engage in unlawful sexual activity with them. Indictment ¶¶ 10, 15. The slight variation in language in the to wit clauses (the victim was

induced to travel so that Defendants could engage in unlawful sexual activity with the victim) is simply not material and does not warrant dismissal. An indictment "need not be perfect, and common sense and reason are more important than technicalities." *United States v. Benjamin*, 95 F.4th 60, 66 (2d Cir. 2024) (citation omitted).[5] The motions to dismiss Counts Four and Nine for failure to state an offense are denied.

> b. Sex Trafficking (Counts One through Three and Five through Eight)

Defendants move to dismiss the Sex Trafficking Counts arguing that they fail to state an offense and lack specificity because they do not allege that Defendants committed a commercial sex act. Def. Mem., Dkt. 76, at 11–18; Def. Mem., Dkt. 97, at 9–14;[6] Gov't Mem. at 19–22.

A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). The Second Circuit has interpreted the phrase "on account of" to "require a causal connection between the sexual act and the giving or receiving of anything of value." *United States v. Raniere*, 55 F.4th 354, 365 (2d Cir. 2022). A causal connection does not require "an explicit *quid pro quo*." *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at *9 (S.D.N.Y. Sept. 9, 2021), *on*

---

[5]    To be clear, the Government will have to prove that, at the time a Defendant induced a victim to travel, he did so with the intent of committing unlawful sexual activity. If the Government proves only that a Defendant induced a victim to travel with the intent of engaging in consensual sexual activity, and it was only after the victim arrived in New York that the Defendant decided to commit a sex offense, the Government will not have satisfied its burden of proof. *Cf. United States v. Miller*, 148 F.3d 207, 211–13 (2d Cir. 1998) (finding no error in jury instructions that it must have been defendant's conscious purpose to induce travel to have victims engage criminal sexual conduct but that need not have been his only purpose). The "so . . . could engage" construction used in the to wit clause describes the former scenario, which is the activity punished by the statute. *Cf. Kelly*, 128 F.4th at 414 ("With a proper focus on Kelly's intent in his interactions with Jane and Faith, we conclude that there was sufficient evidence for a jury to find that he coerced and enticed them both to travel to engage in sexual activity for which Kelly could be charged with a criminal offense.").

[6]    In what can be described only as a throwaway argument, Defendants also claim that the failure to allege a commercial sex act "also creates substantial interstate nexus problems independently warranting dismissal." Def. Mem., Dkt. 97, at 14. The Indictment tracks the language of the statute by alleging that the conduct took place "in and affecting interstate and foreign commerce" and is, therefore, sufficient. *See, e.g.*, Indictment ¶ 10; 28 U.S.C. § 1591(a)(1). Furthermore, the "commercial sex act" and interstate commerce elements are separate; conceivably, the Government could fail to ultimately convince the jury of a causal connection between the material benefits and the alleged sex acts, but the provision of those material benefits may still affect interstate commerce.

*reconsideration in part,* No. 20-CV-5593 (RA), 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022).

The Second Circuit, in declining to interpret "anything of value" to mean "economic benefit,"

afforded "an expansive understanding" to the phrase "anything of value." *Raniere*, 55 F.4th at

360–61. The "thing of value" may be "intangible" and has been construed to include, *inter alia*,

"amusement" and "[s]exual intercourse, or the promise of sexual intercourse." *Id.* at 361

(citation omitted). The linchpin of determining whether a given "thing" has "value" is the

recipient's subjective attachment "to what is sought to be received." *Id.* at 362 (citation omitted).

The "thing of value" can be given to or received by anyone, "including the victim." *Ardolf v.*

*Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019) (quoting 18 U.S.C. § 1591(e)(3)).

   To the extent Defendants argue that "there is no cash for sex" alleged, Def Mem., Dkt.

97, at 13, their argument is irrelevant. Under the broad definition of "anything of value," the

material benefits the Government alleges Defendants provided to the victims are undoubtedly

things of value. *See Raniere*, 55 F.4th at 361–62. Defendants argue correctly that there must be

a "causal connection between the sexual act and the giving or receiving of anything of value."

*Id.* at 365. Defendants' challenge to whether any or all of the victims received material benefits

"on account of" the sex acts is, however, premature. Unless the Government has made "a full

proffer of the evidence it intends to present at trial to satisfy" that element of the offense, "the

sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an

indictment." *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998).[7] Whether the

---

[7]     Defendants mount such a sufficiency challenge to Counts Three and Four of the Indictment, arguing that
the Government's proffers regarding Victim-2 at Defendants' detention hearings and in its detention letter amount to
a full proffer of the Government's evidence on those Counts. Def. Mem., Dkt. 76, at 24–27. The Government
denies that it has made a full proffer of the evidence. Gov't Mem. at 27–28. The Court agrees. The exception to
the general rule that the Court may not test the sufficiency of the Government's evidence on a motion to dismiss is
"narrow." *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018). Moreover, the Second Circuit has expressed
skepticism "on the continued viability of even this narrow exception" in light of the Supreme Court's decision in
*Kaley v. United States*, 571 U.S. 320 (2014). *Sampson*, 898 F.3d at 282 n.10. Although the Government has
proffered more than a "brief statement" on the allegations pertaining to Victim-2, *Alfonso*, 143 F.3d at 777, the

victims received, for example, luxury accommodations because of the sex acts "is a factual question not appropriate for resolution on a pre-trial motion to dismiss." *United States v. Raniere*, 384 F. Supp. 3d 282, 319 (E.D.N.Y. 2019). A jury is required to make that determination.

Defendants also argue that the Sex Trafficking Counts should be dismissed because they conflate the "commercial sex act" element with the "force, fraud, or coercion" and "recruitment/enticement" elements. Def. Mem., Dkt. 97, at 15–16; Gov't Mem. at 13–14. According to Defendants, the Indictment alleges that rape is both the sex act and the means of force Defendants used to cause the victims to engage in the commercial sex acts. Def. Mem., Dkt. 97, at 15. Defendants' argument is not persuasive.

Defendants mischaracterize the allegations of the Indictment, inviting the Court to assess not the Indictment on its face but the evidence they believe the Government intends to introduce to prove the allegations. *See Alfonso*, 143 F.3d at 777 ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."). Contrary to the position of Defendants, the Indictment does not allege that rape was a method of force used to cause the victims to engage in commercial sex acts. The Indictment alleges: that Defendants recruited and enticed women by giving them things of value knowing (or acting with reckless disregard) that force or threats of force would be used to cause the victims to engage in sex acts (which were "commercial sex acts" because they occurred on account of the things of value given). Indictment ¶¶ 7–9, 11–14; *see also id.* ¶ 5 (alleging use of "deception, fraud, and coercion"). To the extent the Indictment points to any specific conduct satisfying those elements, Defendants

_____

evidence it has revealed does not amount to "a point-by-point outline of how" it intends to establish each element of Counts Three and Four, *Sampson*, 898 F.3d at 283 n.11. Accordingly, Defendants' motion to dismiss Counts Three and Four for insufficient evidence is denied.

allegedly drugged or physically restrained victims in order to have sex with them. *Id.* ¶¶ 5.g–h. That conduct falls squarely within the definition of force, fraud, or coercion under the statute and, therefore, adequately alleges that aspect of the offense. *See* 18 U.S.C. §§ 1591(a), (e)(2).

Next, under Defendants' theory, rape could *never* constitute the sexual activity for purposes of Section 1591 absent some additional use of force, fraud, or coercion. That interpretation flies in the face of the statute's text. Even construing Defendants' argument generously, they appear to seize on the overlap between the force or coercion element of the statute and the force or coercion inherent in any rape that renders a victim unable to consent. But, the "commercial sex act" required under Section 1591 is "any" sex act, *id.* § 1591(e)(3); as explained by the Second Circuit in *Raniere*, 55 F.4th at 360–62, the definition of "any" is to be interpreted expansively. Nothing in the plain language of the statute suggests that the sexual activity itself must be consensual. For example, when a victim is raped, the sexual intercourse satisfies the plain language of the statute that there be a "sex act," while the force compelling the victim to submit to intercourse satisfies the "force or coercion" element. *See* 18 U.S.C. §§ 1591(a), (e)(2). Contrary to Defendants' argument, rape involves two discrete elements, each of which can satisfy each element they argue the Government has conflated.

For some of the same reasons, Defendants' argument that the commerce involved in the commercial sex act must be separate from the commerce involved in enticing the victims fares no better. Def. Mem., Dkt. 97, at 15–16. Their position, unsupported by any authority, assumes the evidence the Government will put forth and finds no support in the text of the statute. The statute defines "commercial sex act" as "any sex act, on account of which anything of value is

given to or received by any person." 18 U.S.C. § 1591(e)(3). The statute does not further clarify

that the thing of value "must be *independently* commercial." Def. Mem., Dkt. 97, at 16.[8]

### 2. Insufficient Notice

Defendants move to dismiss the Indictment for providing insufficient notice of the

charged offenses. Def. Mem., Dkt. 72, at 10–11; Def. Mem., Dkt. 76, at 23–24; Def. Mem., Dkt.

97, at 16–20; Def. Mem., Dkt. 106, at 3–6.

As discussed above, the Indictment must contain the elements of the charged offenses

and be sufficiently specific to allow Defendants to plead an acquittal or conviction to bar future

prosecutions of the same offenses, *see Runner*, 143 F.4th at 156; to meet those requirements, in

general, an indictment "need do little more than to track the language of the statute charged and

state the time and place (in approximate terms) of the alleged crime," *Stringer*, 730 F.3d at 124

(citation and internal quotation marks omitted). One exception is "where the definition of an

offence . . . includes generic terms." *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000)

(quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)). In that circumstance, it is not

sufficient for the indictment to "charge the offence in the same generic terms as in the

definition;" it must "state the species" and "descend to particulars." *Id.* (quoting *Russell*, 369

U.S. at 765). An indictment may describe the offense generally using the statutory language as

long as it also includes "a statement of the facts and circumstances as will inform the accused of

the specific offense, coming under the general description, with which he is charged." *Id.*

(quoting *Russell*, 369 U.S. at 765).

---

[8]    Defendants raise a host of other challenges to Count One, which alleges an overarching conspiracy to
commit sex trafficking. At bottom, those challenges concern the methods the Government intends to use to prove
the offense and fail for the same reasons the challenges to the Sex Trafficking Counts fail more broadly. Def. Mem.,
Dkt. 97, at 2–9; Gov't Mem. at 7–14. Count One tracks the statutory language and therefore complies with Rule 7.
Defendants' claim that Count One alleges multiple conspiracies raises a question of fact that the jury will have to
decide.

a.  Inducement to Travel (Counts Four and Nine)

Defendants argue that the Indictment fails to describe the illegal sexual activity charged in Counts Four and Nine.  Def. Mem., Dkt. 72, at 10–11; Def. Mem., Dkt. 76, at 23–24.[9]  Where, as here, "an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense."  *Pirro*, 212 F.3d at 93.  The Indictment specifies the provisions of the New York Penal Law that Defendants allegedly violated: Sections 130.35 (rape in the first degree) (Counts 4 and 9), 130.30 (rape in the second degree) (Count 4), 130.25 (rape in the third degree) (Counts 4 and 9), 130.52 (forcible touching) (Counts 4 and 9), and 130.20 (sexual misconduct) (Count 9).  Indictment ¶¶ 10, 15.

Although on its face, each of the State statutes charged as predicate offenses contains between two and twelve statutory alternatives, *see* N.Y. PENAL LAW §§ 130.20, 130.25, 130.30, 130.35, 130.52, that presents a misleading view of the notice that has been provided through those citations.  The victims of Counts Four and Nine were not minors when victimized. *Compare* Indictment ¶¶ 7, 10, 15 *with id.* ¶¶ 11 (specifying which victims are minors).  Thus, the aspects of the relevant State statutes that criminalize sexual activity with victims incapable of consent by reason of being minors are simply not implicated.  That leaves as the potential criminal sexual activity conduct that is readily understood.  Specifically, the relevant statutory provisions give rise to allegations that Defendants engaged in vaginal, oral, or anal sexual contact with the victims either by forcible compulsion or through lack of consent due to physical helplessness, N.Y. PENAL LAW § 130.35, incapacity to consent by reason of mental disability or incapacity, *id.* § 130.30, or some other reason for incapacity to consent not including being younger than seventeen years old (or lack of consent by some reason besides incapacity), *id.* §

---

[9]      The Government did not respond to Defendants' arguments on this point.

130.25.  Forcible touching requires only contact with the sexual or intimate parts of the victims for the purpose of degrading or abusing them or for the gratification of Defendants' sexual desire.  *Id.* § 130.52.  Sexual misconduct prohibits vaginal, oral, or anal sexual contact with another person without consent.  *Id.* § 130.20.[10]

Counts Four and Nine list the State statutes Defendants allegedly violated and provide additional detail regarding the nature of the offense conduct.  That gives Defendants sufficient notice of the accusations against them.  The Indictment need only "state some fact specific enough to describe a particular criminal act, rather than a type of crime."  *Pirro*, 212 F.3d at 93.  The Indictment's references to the New York Penal Law satisfy that standard.  The "particular criminal act" is rape in the first degree, *i.e.*, sexual contact with victims through forcible compulsion or lack of consent due to physical helplessness, and its lesser included offenses.  The Indictment therefore "fairly informs" Defendants of the charges in Counts Four and Nine.  *Stringer*, 730 F.3d at 124 (citation omitted).

### b.  Sex Trafficking (Counts One through Three and Five through Eight)

Across several motions, Defendants challenge the Sex Trafficking Counts, alleging they provide insufficient notice of the charged offenses.  Def. Mem., Dkt. 76, at 18–23; Def. Mem., Dkt. 97, at 16–20; Def. Mem., Dkt. 106, at 3–6; Gov't Mem. at 14–19.  Relying principally on *Russell*, 369 U.S. at 765, Defendants claim that the Sex Trafficking Counts lack certain information — the location of the offense; the individuals involved; which statutory element is alleged; how force, fraud, or coercion were used; the thing of value given or received; where in the Southern District of New York the offense took place — necessary to provide them adequate notice.  *See* Def. Mem., Dkt. 97, at 16–17, Def. Mem., Dkt. 106, at 5–6.  Defendants likewise

---

[10]    The speaking portions of the Indictment reveal that Section 130.20(4), criminalizing sexual contact with an animal or a dead human body, is not relevant.  N.Y. PENAL LAW § 130.20(4).

argue that Count One fails to identify the date and location of the unlawful agreement underlying the alleged conspiracy and the unnamed members of the conspiracy. Def. Mem., Dkt. 76, at 22–23.

*Russell*, on which Defendants rely, "is one of the very rare" exceptions to the normal rule that adequate notice is provided if the statutory language is tracked in the indictment. *Stringer*, 730 F.3d at 125. An indictment must specify "how a particular element of a criminal charge will be met" when that element "is of such importance to the fairness of the proceeding that it must be spelled out." *Id.* at 127. In *Russell*, a case "arising out of congressional investigations," the Supreme Court "recognized that the relevant hearing's subject was frequently uncertain but invariably central to every prosecution under the statute." *Id.* at 126 (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007)). Defendants' position appears to be that every element of Section 1591 is so important as to require disclosure in the Indictment. Yet they offer no explanation why, for instance, a victim's name or the precise thing of value exchanged is "invariably central to every prosecution" brought pursuant to Section 1591. *Id.* (quoting *Resendiz-Ponce*, 549 U.S. at 109).

As discussed at length above, the Indictment tracks the language of Section 1591 and states the approximate time and place of the alleged offenses. Accordingly, it provides sufficient notice for Defendants to prepare for trial and to plead double jeopardy if they are again charged with these crimes. *Stringer*, 730 F.3d at 124. Defendants' motion to dismiss the Sex Trafficking Counts is denied.[11]

---

[11]    For the same reasons, Alon and Oren Alexander's challenge to Count Ten fails, *see* Def. Mem., Dkt. 97, at 20, as the allegations in the Indictment track the language of the aggravated sexual abuse statute. *See* 18 U.S.C. §§ 2241(a)(1), (b)(2).

### 3. Statute of Limitations

Defendants move to dismiss certain Sex Trafficking Counts as barred by the statute of limitations. Def. Mem., Dkt. 97, at 20–21; Gov't Mem. at 22–25. Although violations of Section 1591 are not subject to a statute of limitations, *see* 18 U.S.C. § 3299, Defendants argue that Count One, which charges Defendants with sex trafficking conspiracy in violation of 18 U.S.C § 1594(c), and Count Seven, which, in part, charges Defendants with attempted sex trafficking in violation of 18 U.S.C. § 1594(a), are subject to the general five-year statute of limitations for federal non-capital offenses. *See* 18 U.S.C. § 3282(a).[12]

The parties agree that the five-year statute of limitations applies to Count One. The sex trafficking conspiracy charged in Count One does not require proof of an overt act. *United States v. Ray*, No. 20-CR-110 (LJL), 2021 WL 3168250, at *11 (S.D.N.Y. July 27, 2021); *compare* 18 U.S.C. § 371 (including an overt act requirement) *with* 18 U.S.C. § 1594(c) (including no such requirement). For a conspiracy that does not require proof of an overt act, the statute of limitations does not begin to run until the conspiracy's "objectives have either been accomplished or abandoned, not when its last overt act was committed." *United States v. Mangano*, 128 F.4th 442, 478 (2d Cir. 2025) (citation omitted). The Government is not required, as Defendants claim, to disclose in the Indictment the specific overt act that satisfies the statute of limitations, as no overt act is required. The Indictment details the conspiracy and alleges that the conspiracy ended in 2021. Indictment ¶ 7. Because Defendants were indicted in 2024 for the conspiracy, the five-year statute of limitations is satisfied. *See United States v. Davis*, 122 F.4th 71, 76 (2d Cir. 2024) ("Davis was indicted in 2017 for conspiracies running from 2008 to 2017,

---

[12]    Defendants also raise the conclusory argument that the Government cannot proceed under a *Pinkerton* theory on any of the Sex Trafficking Counts because such liability is time-barred. Def. Mem., Dkt. 97, at 21. Defendants are free to renew this argument, in a way that includes some legal reasoning, if the Government actually proceeds under a *Pinkerton* theory.

and the applicable statute of limitations was five years. . . .  His conspiracy charges were therefore not time barred.").

Defendants also claim that Count Seven, to the extent it alleges attempted sex trafficking, falls outside the statute of limitations.  The Court agrees.  Whether the five-year statute of limitations found in Section 3282(a) applies to attempted sex trafficking appears to be a question of first impression.[13]  Because the statute of limitations was "designed principally to protect individuals from having to defend themselves against charges supported by facts that are remote in time," the limitations period is "liberally interpreted in favor of repose."  *United States v. Williams*, 733 F.3d 448, 453 (2d Cir. 2013) (citation omitted).  Congress repealed the statute of limitations for Section 1591.  18 U.S.C. § 3299.  It could have also exempted Section 1594(a) or the entirety of chapter 77 from the limitations period, as it did for other offenses.  *See id.* Congress chose not to do so.

The Government's opposition is not wholly illogical.  It argues that Section 1594(a) provides an alternative theory of liability for Section 1591(c) and is, therefore, subject to the same limitations period; an individual who attempts to violate Section 1591 is punished "in the same manner as a completed violation."  18 U.S.C. § 1594(a).  But the Government's argument relies entirely on dicta in *Davis v. United States*, a district court case that did not involve a statute of limitations challenge, for the proposition that "attempt and aiding and abetting are not distinct substantive crimes but rather theories of liability which put the defendant on the hook for the underlying offense."  No. 09-CR-390 (NAM), 2021 WL 8533103, at *6 n.1 (N.D.N.Y. Sept. 29, 2021), *aff'd,* No. 21-2471-PR, 2024 WL 980637 (2d Cir. Mar. 7, 2024).  Interpreting *Davis* to

---

[13]     Defendants' reliance on *United States v. Gibbs* is not particularly helpful, as the Government voluntarily dismissed the claims before the court could reach the statute of limitations issue.  No. CR 23-00035 (MN), 2024 WL 1198055, at *2 (D. Del. Mar. 20, 2024).

mean that section 1594(a) is subject to the statute of limitations of the underlying substantive

offense does not, however, square with the Second Circuit precedent the Government cites that

addresses directly the application of a statute of limitations to aiding and abetting liability.   In

*Campbell*, the Second Circuit held that aiding and abetting, in violation of 18 U.S.C. § 2, is

subject to the statute of limitations applicable to the underlying offense because "[t]here can be

no violation of 18 U.S.C. § 2 alone; an indictment under that section must be accompanied by an

indictment for a substantive offense."  *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir.

1970).  In contrast, a violation of Section 1594(a) can be charged as a standalone offense.

Although this may create an anomalous result, as the substantive sex trafficking charge

will go forward but the attempt to commit sex trafficking as to the same victim will not, the

portion of Count Seven that charges Defendants with attempted sex trafficking is dismissed as

barred by the statute of limitations.

### 4.  Duplicity

Defendants move to dismiss Counts One and Five on the grounds of duplicity.  Def.

Mem., Dkt. 97, at 4–5; Def. Mem., Dkt. 106, at 1–3, 6–8; Gov't Mem. at 10–11, 28–30.

There is a two-part test for determining whether an indictment is impermissibly

duplicitous.  First, the indictment must combine two or more distinct crimes into one count,

contravening Federal Rule of Criminal Procedure 8(a).  *United States v. Sturdivant*, 244 F.3d 71,

75 (2d Cir. 2001).  Second, the combination must prejudice the defendant.  *Id.*  A defendant is

prejudiced when, for example, a jury may not be unanimous as to which of the crimes charged

was proven, the defendant does not have adequate notice of the charges against him, or the

defendant lacks protection against double jeopardy.  *Id.*  Prejudice can frequently be avoided

through jury instructions and an appropriate verdict form.  *See United States v. Kandic*, 134 F.4th

92, 101 (2d Cir. 2025).  Whereas an indictment that "alleges several offenses in the same count"

is duplicitous, "the allegation in a single count of the commission of a crime by several means . . . is not duplicitous." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992) (citation and internal quotation marks omitted).

For the reasons discussed at note 8 *supra*, Count One is not duplicitous; the Indictment charges a single conspiracy. Whether there was a single conspiracy or multiple conspiracies is a question of fact for the jury.

As to Count Five, the Indictment's reference to both Sections 1591(b)(1) and 1591(b)(2) is not duplicitous and protects Alon and Tal Alexander from double jeopardy in a later prosecution. Section 1591(b) establishes two penalties for a violation of Section 1591(a). As relevant here, the crime carries a penalty of fifteen years to life if the offense was effected by means of force, threats of force, fraud, or coercion, or if the victim was younger than fourteen years of age, and a penalty of ten years to life if no force, threats of force or coercion was used and the victim was between fourteen and eighteen years old. 18 U.S.C. §§ 1591(b)(1)-(2). The Government is permitted to charge Alon and Tal with violating Section 1591(a) by multiple means articulated under the statute: causing a commercial sex act through the use of "force, threats of force, fraud, coercion," or causing a person between the age of fourteen and eighteen to engage in a commercial sex act. 18 U.S.C. § 1591(a); *see Aracri*, 968 F.2d at 1518. To the extent that Defendants could be prejudiced by the allegations of multiple means, that prejudice will be obviated through jury instructions and a special verdict form that ensures the jury is unanimous under either theory. *Kandic*, 134 F.4th at 101.

## B. Tenth Amendment

Defendants move to dismiss the Indictment arguing that it charges conduct that is purely a local crime. Def. Mem., Dkt. 95, at 8–11; Gov't Mem. at 30–32. Defendants' motion is based on *Bond v. United States*, 572 U.S. 844 (2014). In that case, the Supreme Court held that federal

criminal statutes should not be interpreted to reach wholly local conduct unless there is a clear indication from Congress that the law should have such reach. *Bond*, 572 U.S. at 854–66. Defendants argue that the sex trafficking charges involve wholly local conduct and there is no clear indication that Congress intended for 18 U.S.C. § 1591[14] to reach "sexual assault in the course of a dating or partying interaction." Def. Mem., Dkt. 95, at 9.

Although Defendant relies almost exclusively on *Bond* for this argument, its lack of merit is obvious when the Court considers the cases on which *Bond* relied to make its point that federal statutes must be construed to respect the traditional division of labor between federal and state crimes, *United States v. Bass*, 404 U.S. 336 (1971), and *Jones v. United States*, 529 U.S. 848 (2000). In *Bass*, the Court interpreted a firearm possession statute that made it unlawful for a felon to possess a firearm "in commerce or affecting commerce" to require proof of an interstate nexus for each prosecution for that crime. *Bass*, 404 U.S. at 347–50. Although mere unlawful gun possession by a felon is a state crime, the Court held, it does no damage to federalism concerns to make it a federal crime for a felon to possess a firearm that has travelled in interstate commerce. *Id.* at 350–51. Similarly, while arson is a "paradigmatic common-law state crime," *Jones*, 529 U.S. at 858, the Court limited the federal arson statute to arson of property used in, or used in an activity affecting, interstate commerce, *id.* at 854–55. That statute simply did not reach the purely local crime committed by Mr. Jones: the arson of an owner-occupied private residence. *Id.* at 858.

---

[14]    Although not entirely clear, this challenge appears directed only at the Sex Trafficking Counts, and not Counts Four, Nine, or Ten, as Defendants' brief focuses on Section 1591 and makes only passing reference to Section 2422. Def. Mem., Dkt. 95, at 2–7, 10. To the extent Defendants intended to move to dismiss the entire Indictment on this basis, that motion would be denied for the same reason the motion directed at the Sex Trafficking Counts is denied.

Against that backdrop, Defendants' argument that this prosecution runs afoul of the Tenth Amendment does not require extended analysis. While Defendants assert that their alleged illegal conduct amounts to no more than an occasional local "date rape" (analogous in their view to the arson of an owner-occupied residence or possession of a gun that has not traveled in interstate commerce), that badly misrepresents the nature of the charges. The charges in the Indictment, which the Court must accept as true at this stage of the case, make clear that it is not charging sexual assaults that serendipitously occurred when "a group of 20- and 30-somethings [went] on vacation and one side of the romantic equation fund[ed] part of the vacation." Def. Mem., Dkt. 95, at 9–10. Nor does it charge "date and party sexual assault" as those terms are generally understood. *Id.* at 11. As much as Defendants want to characterize the charged conduct as just men behaving badly, that is not what the Indictment charges. The charges are that three grown men conspired to entice women and girls to travel in interstate and foreign commerce, to provide things of value to those women and girls, and to use force and drugs in order to have sexual contact with those victims. This is far from a "local" crime; it stretches from Martha's Vineyard to New York to Florida to Israel and involves the movement of women and girls from various Points A to various Points B where they would be, as planned by Defendants, sexually assaulted. Prosecuting this case federally simply does not run afoul of the balance between federal and state authority.[15]

Defendants' motion to dismiss based on the Tenth Amendment is denied.

---

[15] That said, several courts have found Section 1591 reaches purely local crimes, albeit in the context of the provisions pertaining to the trafficking of minors. *See United States v. Renteria*, 84 F.4th 591, 594–95 (5th Cir. 2023) ("Congress included a clear indication that § 1591 is meant to reach purely local crimes;" through using the phrase "affecting commerce," Congress expressed its intent "to regulate to the outer limits of its authority under the Commerce Clause." (citations and internal quotation marks omitted)); *United States v. Walls*, 784 F.3d 543, 547 (9th Cir. 2015) ("We therefore hold that when Congress used the language 'in or affecting interstate or foreign commerce' in the TVPA, it intended to exercise its full powers under the Commerce Clause."); *United States v. Gardner*, No. 8:23-CR-474-CEH-UAM, 2024 WL 3553557, at *3 (M.D. Fla. July 26, 2024) (collecting cases).

### C. Selective Prosecution

Defendants argue that some or all of the Indictment should be dismissed for selective prosecution. Def. Mem., Dkt. 95, at 11–14; Gov't Mem. at 32–40. Defendants also request discovery and a hearing. Def. Mem., Dkt. 95, at 2, 14; Def. Reply Mem., Dkt. 151, at 39–45. Defendants' argument boils down to the claim that the Government's pursuit of a novel theory of sex trafficking renders this prosecution discriminatory. That position does not meet the "deliberately 'rigorous standard'" to make out a claim of selective prosecution or warrant discovery or a hearing. *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (quoting *United States v. Armstrong*, 517 U.S. 456, 468 (1996)).

There is a well-established "presumption of regularity" supporting the Government's "prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008) (quoting *Armstrong*, 517 U.S. at 464). To demonstrate selective prosecution, Defendants must provide "clear evidence" that the decision to prosecute: (1) had "a discriminatory effect;" and (2) "was motivated by a discriminatory purpose." *Alameh*, 341 F.3d at 173 (quoting *Armstrong*, 517 U.S. at 465). Under the "correspondingly rigorous" standard for discovery, *id.* (quoting *Armstrong*, 517 U.S. at 468), Defendants must "produce 'some' evidence of discriminatory effect and intent," *id.* (quoting *United States v. Bass*, 536 U.S. 862, 863 (2002)).

"The discriminatory effect prong requires a showing that similarly situated individuals of a different [classification] were not prosecuted." *Id.* (quoting *Armstrong*, 517 U.S. at 465) (internal quotation marks omitted). The discriminatory purpose prong requires a showing that the prosecution was motivated "at least in part because of, not merely in spite of, its adverse

effects upon an identifiable group." *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)) (internal quotation marks omitted).

Defendants mischaracterize the Indictment as charging "social-context party and date rape," point to statistics demonstrating the prevalence of such crime, and infer discriminatory effect from the dearth of sex trafficking conspiracies prosecuted federally. Def. Mem., Dkt. 95, at 12. Discriminatory effect "requires showing that individuals outside the protected class committed roughly the same crime in roughly the same circumstances but were not prosecuted." *United States v. Williams*, 701 F. Supp. 3d 257, 266 (S.D.N.Y. 2023) (citation omitted). Defendants have not identified a "specific unprosecuted individual," let alone explained how the crime that the unspecified individual committed compares to the crimes they allegedly committed. *Id.*

Rather than attempt to identify an individual not charged with sex trafficking conspiracy who, for instance, lured victims across State lines or internationally with the promise of material benefits, Defendants instead rely on statistics of all reports of rape by an intimate partner or acquaintance. Def. Mem., Dkt. 95, at 12. Defendants' failure to make any showing that the "roughly 128,489 rapes" on which they rely occurred in "substantially the same manner" as Defendants' alleged misconduct is fatal to their selective prosecution claim. *United States v. Combs*, No. 24-CR-542 (AS), 2025 WL 1369734, at *2 (S.D.N.Y. May 9, 2025) ("[A] similarly situated person for selective prosecution purposes must have committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's

22

enforcement priorities and enforcement plan." (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (internal quotation marks omitted)).

Defendants' motion to dismiss for selective prosecution is denied.

### D. Lack of Venue

Defendants move to dismiss the Indictment for improper venue and request production of the grand jury minutes regarding the return of the S3 Superseding Indictment, as well as a hearing. Def. Mem., Dkt. 99; Gov't Mem. at 40–47. Count Ten charges Alon and Oren Alexander with aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a)(1), (b)(2), 3238, 7, and 2. Indictment ¶ 16. Defendants argue that the Government manufactured venue as to Count Ten through abuse of the grand jury process.[16]

As relevant to the allegations in Count Ten, Section 2241 criminalizes sexual assault "in the special maritime and territorial jurisdiction of the United States." 18 U.S.C. §§ 2241(a)–(b). For such an offense committed "upon the high seas," venue vests "in the district in which the offender . . . is arrested or is first brought." 18 U.S.C. § 3238. "Courts consistently have interpreted 'arrested' in § 3238 to mean that 'venue is in that district . . . where the defendant is first restrained of his liberty *in connection with the offense charged.*'" *United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984) (citation omitted).

Defendants speculate about what the Government knew, when it knew it, and what information it presented to the grand jury that returned the S3 Superseding Indictment. Although some of that speculation borders on fanciful, the core of Defendants' complaint — that the Government kept the S3 Superseding Indictment sealed until it knew Defendants would be found

---

[16]     The Court assumes that Defendants understand that if the S3 Superseding Indictment were to be dismissed, the trial would proceed on the S2 Superseding Indictment, which is identical to the S3 Superseding Indictment with the exception of Count Ten. To the extent Defendants seek dismissal of all indictments against them due to their objection to how venue was established for Count Ten, that motion is meritless.

in this District — is accurate. *See* Gov't Mem. at 40–41. Defendants were arrested in connection with the S3 Superseding Indictment when they arrived at the Southern District Courthouse for their arraignment on the S2 Superseding Indictment. *Id.* at 41.

Because Alon and Oren were arrested in the Southern District of New York in connection with Count Ten, venue is proper here. "[T]he purpose of the venue statute is not to fix the place of arrest but simply to have the place of trial conform to the place of arrest." *Catino*, 735 F.2d at 724 (quoting *United States v. Provoo*, 215 F.2d 531, 538 (2d Cir. 1954)). In *Provoo*, the Second Circuit dealt with a soldier prosecuted for treason committed overseas during World War II. 215 F.2d at 532.[17] The soldier was a military prisoner in Maryland awaiting disposition of court-martial charges of sodomy when, at the request of the Department of Justice, the military delayed his court-martial proceedings for four months while the Government investigated him for treason. *Id.* at 538. The military ultimately dropped its charges and brought Mr. Provoo to New York where he was arrested and indicted for treason. *Id.* The military had already agreed that the court-martial charges would be dropped but "continued to hold him in restraint solely in order to bring him to New York to be tried for treason;" there was "no military purpose for continuing his imprisonment." *Id.* The Second Circuit held that the soldier was apprehend in Maryland for purposes of the venue statute. *Id.*

Although there are some surface similarities between the circumstances in *Provoo* and this case, the differences between the two matter. As in *Provoo*, Alon and Oren were held in Government custody outside of the Southern District of New York while the Government investigated the aggravated sexual abuse that ultimately was charged in Count Ten. Likewise,

---

[17]    At the time, a prior version of Section 3238 placed venue for an offense committed "upon the high seas . . . in the district where the offender is *found*, or into which he is first brought." *Provoo*, 215 F.2d at 537 (quoting 18 U.S.C. § 3238) (emphasis added). Although the current version of the statute uses "arrested" rather than "found," *Provoo* remains instructive because the court's analysis involved the place of arrest.

the Government transported them into the Southern District of New York, where they were

arrested. But unlike Mr. Provoo, Alon and Oren were not held "in restraint solely in order to

bring" them to this District to face Count Ten. *Id.* Rather, Alon and Oren were in custody on a

wholly separate basis; they were detained pursuant to the Bail Reform Act on the underlying

indictment. *See* Order, Dkt. 35; Tr., Dkt. 37, at 118–22. Their imprisonment continued because

this Court held, affirmed by the Second Circuit, *see* Mandate, Dkt. 149, that they pose a danger

to the community and a risk of flight that cannot be reasonably mitigated by any condition or set

of conditions on their release. Tr., Dkt. 37, at 118–22. In *Provoo*, because the soldier was

detained in Maryland solely to effect his transfer to New York to face trial for treason, the

Second Circuit held that Maryland was the place of apprehension on the treason charges. 215

F.2d at 538. Alon and Oren were not detained in Brooklyn or Florida, where they were first

arrested, in connection with Count Ten. In short, in this case, the Southern District of New York

was the place of apprehension for Count Ten, rendering venue proper in this District. *See* 18

U.S.C. § 3238.

     The Court recognizes that the process pursued by the Government here could be so

outrageous in different fact patterns that it should not be permitted. *See, e.g.*, *United States v.*

*Archer*, 486 F.2d 670, 677–78, 683–86 (2d Cir. 1973) (federal jurisdiction cannot be created by

luring defendant into making an interstate call); *United States v. Myers*, 692 F.2d 823, 847 n.21

(2d Cir. 1982) (for a case "in which key events occur in one district," concerns may arise if "the

prosecution, preferring trial elsewhere, lures a defendant to a distant district for some minor

event simply to establish venue"). That possibility is not presented here because, by statute,

venue for Count Ten is tied not to the location of the offense but to the location of the

defendant's arrest.  The place of arrest "generally rests entirely within the executive's discretion."  *United States v. Adams*, 777 F. Supp. 3d 185, 205 (S.D.N.Y. 2025).

      To be sure, the Government could have deviated from its normal practice and informed Defendants of Count Ten to resolve questions of venue before they arose.  The Government could also have arrested Alon and Oren in Brooklyn and deferred to the able prosecutors of the Eastern District of New York to prosecute that crime (a tactic that would have subjected Alon and Oren to two trials and that would have been highly inefficient).  The Government instead chose to seal the indictment containing Count Ten for approximately one month until Defendants were otherwise slated to appear in the Southern District of New York.  The process followed by the Government resulted in Defendants learning of Count Ten on the eve of the deadline to file pretrial motions.  Any prejudice arising from the timing of the arrest, however, could have been obviated by requesting additional time to make motions addressed to Count Ten; Defendants made no such request.

      In short, Defendants' motion to dismiss Count Ten or the entire S3 Superseding Indictment for lack of venue is denied.

II.    **Defendants' Motions to Suppress**

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  Probable cause to issue a search warrant requires a two-part showing: (1) "that a crime was committed;" and (2) "probable cause to believe that evidence of such crime is located" at the place or in the device to be searched.  *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983); *see also United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (the information provided must establish "a sufficient nexus between the criminal activities alleged and" the place to be searched).

Probable cause exists if the information in the supporting affidavit supplies "a fair probability that contraband or evidence of a crime will be found in a particular place" or in the particular records to be searched.  *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quoting *Gates*, 462 U.S. at 238).  A magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (citation omitted).  A reviewing court gives "substantial deference to the finding of an issuing judicial officer that probable cause exists," addressing only whether there was "a substantial basis" for the magistrate judge's determination.  *Id.* (citation omitted).  Even so, a warrant is invalid if the magistrate judge improperly analyzes the totality of the circumstances supporting the probable-cause determination.  *See id.*; *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("[T]he task of a

reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." (quoting *Gates*, 462 U.S. at 238)).

### A. Warrant Omissions

Defendants argue that the applications for the iCloud, Meta, and Park Avenue Warrants omitted material information, requiring suppression of the evidence seized or, at minimum, a *Franks* hearing.  Def. Mem., Dkt. 113-1, at 9–19; Def. Mem., Dkt. 118, at 14–19; Gov't Mem. at 52–72.[18]

As a general rule, "a search or seizure pursuant to a warrant is presumed valid."  *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003).  A defendant may challenge a search warrant arguing that the warrant "contain[s] deliberately or recklessly false or misleading information."  *Canfield*, 212 F.3d at 717.  Suppression is appropriate if omissions from the warrant applications: (1) result from "the affiant's deliberate falsehood or reckless disregard for the truth;" and (2) "were necessary to the [issuing] judge's probable cause finding," *i.e.*, they were material.  *Id.* at 717–18 (citation omitted).  A defendant is entitled to a *Franks* hearing if he makes a "substantial preliminary showing" as to each prong.  *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (citation omitted).  An affiant omits information in reckless disregard of the truth if "the affiant in fact entertained serious doubts as to the truth of his allegations," and

---

[18]    The Court focuses chiefly on the propriety of the iCloud Warrant, as the application for the Meta Warrant relied on the same victim accounts, in addition to allegations pertaining to three more victims, and the Park Avenue Warrant Application relied in part on text messages obtained from the search of Tal's iCloud account authorized by the iCloud Warrant.  *See* Def. Mem., Dkt. 113-1, at 7–8.  Furthermore, the affidavit submitted in support of the Meta Warrant Application was subsequently appended to the applications for the Park Avenue, Raya, Cellphone Location, Lake Avenue, and Meridian Avenue Warrants.  Finally, Defendants' chief concerns lie with the iCloud Warrant.  Tal dedicates most of his motion to alleged infirmities with that Warrant and roots his objection to the Park Avenue Warrant on tainted evidence the Government procured from the iCloud Warrant.  Def. Mem., Dkt. 113-1, at 26–27.  Alon and Oren filed a lengthy brief seeking suppression of evidence seized from the iCloud Warrant, *see* Def. Mem., Dkt. 118, but address the remaining Warrants applicable to them across two pages in a four-page "omnibus" motion, *see* Def. Mem., Dkt. 119 at 2–4.

may be inferred "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (citation omitted). In an omission situation, the Court must consider whether, adding to the application the information purportedly wrongfully omitted, there would nonetheless be "independent and lawful information sufficient to support probable cause." *Awadallah*, 349 F.3d at 65 (citation omitted).

Much of the omitted information about which Defendants complaint is clearly not material. The application for the iCloud Warrant omitted that at least two of the three sexual assaults Tal is accused of committing predated his creation of the iCloud account in March 2012. Def. Mem., Dkt. 113-1, at 10–11. Although that is true, the affidavit detailed conduct that post-dated creation of the account in 2012 and continuing into 2021, and noted that the Government was investigating a conspiracy involving all three Defendants. iCloud Warrant at 3 ¶ 3, 30 ¶ 20(e), 19–28 ¶¶ 15–19, 42.[19] Furthermore, because iCloud is a cloud storage platform, it was entirely plausible that information stored in the cloud could have predated its creation in 2012. *Id.* at 4 ¶ 3.

Defendants also argue that the Government omitted certain information about Victim-1 and Victim-2 that would have undermined the credibility of accusations from them that the Government included in the iCloud, Meta, and Park Avenue Warrant applications. Information pertaining to Victim-2's civil litigation history[20] or the involvement of victims' attorneys was unnecessary to include and would not have undercut the probable cause determination. *Canfield*,

---

[19]    Pagination of the Warrants refers to the ECF page numbers.

[20]    Specifically, Defendants claim that in 2011 Victim-2 sued a famous boxer, and, in 2023, she sued a wealthy individual for sexual misconduct. Def. Mem., Dkt. 113-1, at 12–13. The 2011 suit was dismissed, but the 2023 suit remains pending. *Id.* Victim-2 also previously sued Defendants; that suit was dismissed. *Id.* at 13.

212 F.3d at 717–18.  Although "information as to a confidential informant's credibility must be considered in a warrant application," the Second Circuit distinguishes between informants and witnesses; the latter "need *not* be shown to have been previously reliable before the authorities may rely on [their] statements."  *United States v. Combs*, No. 24-CR-542 (AS), 2025 WL 1361728, at *3 (S.D.N.Y. May 9, 2025) (quoting *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990)).  Even if the Court were to conclude that the omitted information regarding Victim-2's litigation history somewhat undermines her credibility, it would not have done so to the extent that it would have affected the probable cause determination by the Magistrate Judge.

Defendants also complain that the warrant affidavits omitted statements Victim-1 made in Facebook messages. ███████████████████████████████████████████ ███████████████████████████████████████████████ Def. Mem., Dkt. 113-1, at 14.  As reflected in the iCloud Warrant Application, Oren, Tal, and two other men were present at Oren's Manhattan apartment when Oren invited Victim-1 to come to the apartment. iCloud Warrant at 15 ¶ 13.a. ████████████████████████████████████████ ████████████████████████████████████████████ *Id.* at 16 ¶ 13.a. ████████████████████████████████████████████ ██████████ *Id.*  On another occasion, Victim-1 went to the same apartment with Tal.  *Id.* at 16 ¶ 13.b.  Oren and another man were present in the apartment.  *Id.* ██████████████████ ████████████████████████████████████. *Id.* ███████████████ ████████████████████████████████ *Id.* ██████████████████ ████████████████████████████████ *Id.* at 16 ¶ 13.c.████ ████████████████████████████ *Id.*  Victim-1 left the apartment and experienced hallucinations.  *Id.* at 17 ¶ 13.c–d.  Two days after the incident, Victim-1 went to the

hospital and spoke to the police; the officer was dismissive of her report. *Id.* at 17 ¶ 13.d. [redacted] *Id.* [redacted] *Id.* at 17 ¶ 13.e. As noted above, in one such message, [redacted] Def. Mem., Dkt. 113-1, at 14.

Even if the omitted messages about which Defendants complain had been included, there would still have been probable cause to sign the Warrants. *See United States v. Kone*, No. 19-CR-808 (VEC), 2022 WL 1498955, at *3 (S.D.N.Y. May 11, 2022) ("Where the defendant alleges that material information was omitted, a court should fill in the omitted information and then conduct the same analysis to determine whether the remaining portions of the affidavit support probable cause to issue the warrant." (citation modified)). The messages suggest that Victim-1 has a narrow understanding of what constitutes "rape;" they do not in any way undercut the conclusion the Magistrate Judge made that there was probable cause to believe Tal committed sexual assault and that Oren and Tal used force and threats of force to cause Victim-1 to engage in a sex act. The filming of Victim-1 without her consent, the presence of multiple men, and Tal pinning her down all support that conclusion.[21]

---

[21] For the same reasons, even if the messages were material, Defendants have not made a preliminary showing that the omission of the messages from the warrant application evince "reckless disregard for the truth." *Canfield*, 212 F.3d at 718 (citation omitted). The messages do not convey "*obvious* reasons to doubt the veracity of" Victim-1's allegations, *Rajaratnam*, 719 F.3d at 154 (citation omitted) (emphasis added); a victim in the aftermath of a traumatic sexual encounter may not understand digital penetration as rape. The handful of messages Defendants point to are contradicted by the messages [redacted] and the message she sent to Tal that she did not "know how someone could dislike [her] so much that they would do that to [her]." Gov't Mem. at 62. Accordingly, the failure to include those messages in the warrant applications does not rise to the level of recklessness.

The Court has considered the remaining omissions to which Defendants point and finds that they have not made a substantial preliminary showing justifying a *Franks* hearing for the same reasons discussed above.[22]

### B. Overbreadth

Defendants move to suppress the evidence seized pursuant to the iCloud, Meta, and Park Avenue Warrants because the warrants were overbroad.  Def. Mem., Dkt. 113-1, at 23–26; Def. Mem., Dkt. 118, at 19–27; Gov't Mem. at 72–76.

A warrant is overbroad "if it is broader than can be justified by the probable cause upon which the warrant is based."  *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (citation omitted).  Breadth alone does not establish that a warrant lacks particularity.  *United States v. Tompkins*, 118 F.4th 280, 289 (2d Cir. 2024).  The particularity requirement is satisfied if the warrant: (1) identifies "the specific offense for which the police have established probable cause;" (2) describes "the place to be searched;" and (3) specifies "the items to be seized by their relation to designated crimes."  *Id.* at 287 (citation and internal quotation marks omitted).  Defendants challenge the purported lack of scope and time limitations in the Warrants.

As to the scope challenges, the Warrants identify the offenses for which the Government established probable cause — specifically, violations of 18 U.S.C. §§ 2, 1512, 1591, 1594,

---

[22]    Specifically, Defendants raise the fact that many of the victims referenced in the Warrant applications were represented by lawyers and object to the inclusion of Minor Victim-1's account.  Def. Mem., Dkt. 113-1, at 15–16. Defendants also lodge a rambling broadside against the iCloud Warrant application, typically offering no more than a few sentences without any citation to legal authority for each point, arguing the following constituted omissions: (1) the agent did not explain her interpretation of "commercial sex act;" (2) the agent later testified she was unaware of messages from victims to Defendants; (3) the agent relied only on messages from the victim; (4) the agent failed to include a police report pertaining to the allegations of high school sexual assault; (5) the agent failed to include that Defendants were not interviewed in connection with the incident that occurred when they were in high school; (6) the agent's continued representations that the police report was not included because the FBI's investigation was ongoing; (7) the agent omitted the fact that Defendants are married, and some have children; and (8) the Warrant Application did not describe the suggestive photobook arrays (addressed further in Section III *infra*).  Def. Mem., Dkt. 118, at 14–19.

1962(d), 2421, 2422, and 2423 — and delineated clearly the information law enforcement was authorized to seize, including information to identify the user(s) of the account(s), communications among co-conspirators and victims, location information related to the commission of the offenses, and evidence of the acquisition of controlled substances. iCloud Warrant at 42–43; Meta Warrant at 54–55; Park Avenue Warrant at 38–41.[23]

As to the time limit, Defendants observe correctly that the failure to indicate the timeframe of materials subject to seizure may render a warrant overbroad. *See United States v. Levy*, 2013 WL 664712, at *11 n.7 (S.D.N.Y. Feb. 25, 2013); *United States v. Hernandez*, 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010). But courts have also recognized that "time frame is less relevant to a warrant's breadth where the criminal acts are complex and necessarily extend over a significant period of time." *United States v. Carrasco*, No. 22 CR 334 (CM), 2022 WL 17547431, at *4 (S.D.N.Y. Dec. 8, 2022) (quoting *Hernandez*, 2010 WL 26544, at *9). The Warrant applications detail a series of assaults that took place over a decade, several of which involved multiple Defendants and non-parties, and the procurement of drugs used to incapacitate the victims. It is reasonable to expect that an alleged conspiracy "of this scale could be expected to require extensive planning, communication, and coordination with others—the evidence of which could be expected to appear [in the iCloud accounts] over a substantial period." *Id.*

In sum, the Warrants were indeed broad, both in the volume of information they authorized law enforcement to seize and the time period covered by the Warrants. But given the

---

[23]    Defendants raise a related scope challenge to the iCloud Warrant, arguing that it should have contained content restrictions; otherwise, they argue, any time victims come forward with belated accusations, the Government would be permitted to conduct sweeping searches without corroboration. Def. Mem., Dkt. 118, at 19–24. Again, Defendants mischaracterize the nature of the Government's investigation. Given the expansive nature of the allegations, raised by women and girls across multiple jurisdictions over a period of nearly twenty years, evidence related to the offenses could have reasonably been located in several different kinds of records and files.

facts presented, the Warrants were not overbroad and did not violate the particularity requirement.

### C. Probable Cause

Defendants argue that the applications for the iCloud, Meta, and Park Avenue Warrants were not supported by probable cause. Def. Mem., Dkt. 113-1, at 19–23; Def. Mem., Dkt. 118, at 9–14; Gov't Mem. at 76–83. Reviewing the issuing Magistrate Judges' findings with "substantial deference," the Court concludes that there were "substantial bas[e]s" for their probable cause determinations in signing the Warrants, *Raymonda*, 780 F.3d at 113 (citation omitted), and the information authorized to be seized was sufficiently related to the crimes designated and activity described in the Warrant applications, *Galpin*, 720 F.3d at 446.

Defendants' argument that the information in the iCloud Warrant Application was not sufficiently related to the racketeering and sex trafficking conspiracy offenses is without merit. Def. Mem., Dkt. 118, at 10. The application details a history of sexual assaults and rapes committed by Defendants together, in circumstances suggesting a degree of coordination. The application was not required to demonstrate that each victim claimed she was trafficked. *Id.* at 10–11. Defendants' argument that there was no probable cause to establish violations of the travel offenses under Sections 2421, 2422, and 2423 because the application contained no allegations of travel is bizarre. *Id.* at 11. The argument consists of three sentences, two of which admit there were in fact allegations of travel. Otherwise, Defendants rehash many of the arguments raised in their motions to dismiss that the Court rejected above; namely, that probable cause was lacking because: (1) all but one of the alleged assaults occurred outside of the statute of limitations for conspiracy and (2) the allegations in this case do not fit into their view of paradigmatic sex trafficking. *Id.* at 11–14.

Defendants' argument that the facts supporting the conclusion that there was probable cause to believe that Tal had engaged in criminal conduct were stale by the time that the iCloud and Meta Warrants were issued requires more discussion. There is "no bright-line rule for staleness," which is evaluated on basis of "the age of the facts alleged and the nature of the conduct alleged to have violated the law." *Raymonda*, 780 F.3d at 114 (citations and internal quotation marks omitted). When the affidavit "establishes a pattern of continuing criminal activity," the passage of time is less significant, as "there is reason to believe that the cited activity was probably not a one-time occurrence." *Id.* (citation omitted). The Warrant applications describe unlawful sexual activity Tal allegedly committed that occurred in 2001, 2010, and 2012. *See, e.g.*, iCloud Warrant at 12–14 ¶ 11, 15–19 ¶¶ 13–14. The applications further detail: (1) his attendance at a dinner in 2016 following an alleged assault perpetrated by Alon, *id.* at 24–25 ¶ 17; (2) his presence on a boat in Sag Harbor in 2016, where the victim spent more time with him than others because he was trying to touch her less; the day after the boat ride, that victim was raped by Oren, and a different victim was gang raped by multiple men, Meta Warrant at 28–30 ¶ 19.

Although it is a close question, the totality of those circumstances supports a finding that Tal engaged in a pattern of criminal activity sufficient to justify the issuance of the Warrants in 2024. *Clark*, 638 F.3d at 93. Tal's presence on the boat is not so innocuous in light of the broader history of misconduct detailed in the Meta Warrant Application. He was present at rapes committed by his brothers and others, *id.* at 13–15 ¶ 11, 17–18 ¶ 14.a, in addition to the gang rapes in which he allegedly participated, *id.* at 15–16 ¶ 12.a, 18–21 ¶¶ 14.b–f, 15.b. Furthermore, Alon posted to his Facebook account a photo of the Sag Harbor victim with all of his brothers and tagged Tal's account. *Id.* at 38 ¶ 24.d. Given the allegations of conspiracy,

35

Tal's proximity to rapes committed by others, the rapes he participated in with others, and the photo of the victim posted to Facebook, there was a substantial basis to consider his presence at the 2016 Sag Harbor incident in finding a pattern of criminal activity that suggested evidence of such participation could be found by searching his Meta account. As to the iCloud Warrant, as discussed above, the Magistrate Judge could rely on common sense to conclude that Tal, like most people, does not regularly delete his iCloud account; even if he had ceased all participation in sexual assaults by 2024, in light of the long period of the conspiracy, there was probable cause to believe evidence of those older crimes would be found in the iCloud account. For those reasons, Tal's criminal conduct was not so stale that it did not support a finding of probable cause.

### D. Good Faith Exception

Suppression of evidence requires conduct "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). Under the good faith exception, "evidence seized pursuant to a defective warrant will not be suppressed if it was 'obtained in objectively reasonable reliance' on the invalid warrant." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The good faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Id.* at 179–80 (citation omitted).

Because the Court has held that there was adequate probable cause to support the issuance of the Warrants, it is not necessary to consider the good faith exception. But even if the

Court had agreed with Defendants that there was not probable cause to issue certain Warrants because the information regarding Tal was stale, the evidence seized pursuant to the Warrants issued for Tal's iCloud and Meta accounts and the Park Avenue residence would not be subject to suppression because of the good faith exception.

Tal argues the Warrants were so lacking in indicia of probable cause and so facially deficient as to render reliance on them unreasonable.  Def. Reply Mem., Dkt. 136, at 14.  They were not.  The Warrant affidavits relate several instances of criminal conduct involving Tal over a period of ten years that, even if insufficient for a judicial officer to infer a "fair probability that contraband or evidence of" the offenses would be found due to staleness, *Canfield*, 212 F.3d at 718 (quoting *Gates*, 462 U.S. at 238), provide some "indicia of probable cause" to believe that he was engaged in an on-going pattern of criminal conduct with his co-conspirator brothers.  *Purcell*, 967 F.3d at 180 (citation omitted).  The Warrants were not "so facially deficient that reliance upon [them would be] unreasonable" in light of the several instances of unlawful sexual activity involving Tal and his presence with his alleged co-conspirators when they were committing further sexual assaults.  *Id.* (citation omitted); Meta Warrant at 28–30 ¶ 19.

In short, even if the Warrants as to Tal lacked probable cause because the information was stale, the good faith exception to the exclusionary rule would apply.[24]

---

[24]    The Court therefore denies Defendants' motion to suppress the evidence seized based on any Warrants (specifically the Park Avenue, Meta, Raya Warrants, Lake Avenue, and Meridian Avenue Warrants) that relied on the iCloud Warrant, as their arguments are largely premised on the iCloud Warrant lacking probable cause.  Def. Mem., Dkt. 113-1, at 26–27; Def. Mem., Dkt. 119, at 2–4, Gov't Mem. at 83–86.

III.    **Defendants' Motion for a *Wade* Hearing**

Defendants argue that a *Wade* hearing is required to determine whether pretrial

identifications of Defendants were the result of unduly suggestive identification procedures such

that in-court identifications should be precluded.  Def. Mem., Dkt. 113-1, at 27–30; Def. Mem.,

Dkt. 119, at 1–2; Gov't Mem. at 88–93.

Due process rarely "prevent[s] a witness who identified a defendant before trial from

identifying the defendant at trial."  *United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022).

In order for a defendant to preclude an in-court identification, he must make a two-part showing:

(1) "the pretrial identification procedures were unduly suggestive of the suspect's guilt;" and (2)

the in-court identification will not be "independently reliable rather than the product of the

earlier suggestive procedures."  *Id.* (citations omitted).  At the second step, courts consider: (1)

"the opportunity of the witness to view the criminal at the time of the crime;" (2) "the witness'

degree of attention;" (3) "the accuracy of the witness' prior description of the criminal;" (4) "the

level of certainty demonstrated by the witness at the confrontation;" and (5) "the length of time

between the crime and the confrontation."  *United States v. Maldonado-Rivera*, 922 F.2d 934,

973–74 (2d Cir. 1990) (quoting *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).  To be entitled

to a *Wade* hearing, Defendants must "show[] disputed issues of definite, specific, and

nonconjectural material fact" regarding whether the pretrial identification resulted from

impermissibly suggestive procedures and was not independently reliable.  *Gershman*, 31 F.4th at

93.

The parties spill much ink over how many photos are required before an array is no

longer suggestive.  The size of the photo array used, however, is only one of several factors that

must be analyzed to determine the fairness of a photographic array.  *See Maldonado-Rivera*, 922

F.2d at 974; *compare Gershman*, 31 F.4th at 93–94 (six-photograph array not suggestive) *with*

*United States v. Fernandez*, 456 F.2d 638, 641 (2d Cir. 1972) (six-photograph array suggestive where only one photo resembled surveillance photographs of the suspect). The Second Circuit has found identification procedures unduly suggestive when: (1) the array uses "a very small number of photographs, which are in turn presented in a manner that suggests to the witness that a specific person may be the suspect;" (2) "a large number of photographs depicting the same person" are used; or (3) "the utterance of suggestive comments by interrogators to the witness to obtain an identification that is jointly constructed by supplying the witness with previously unknown facts about the suspect." *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 111–12 (2d Cir. 2020). Although the photobooks were not impermissibly small and included photographs of individuals who generally resemble Defendants,[25] seven of the photobooks included a professionally-staged photograph of the three Defendants together in a single photograph. That photograph, which appeared in Exhibits 8–12, 16, and 17 to the Williams Declaration ("Suggestive Photobooks"), was unduly suggestive. No other photographs in the photobooks were of a group of individuals. Defendants have made a preliminary showing that those photos "so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Rivera*, No. 19 CR. 131 (PAE), 2019 WL 6497504, at *3 (S.D.N.Y. Dec. 3, 2019) (quoting *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992)).

---

[25]     Some of the photographs did not resemble these Defendants, but the Court's understanding is that the books were used not just for purposes of obtaining identifications of these Defendants but also of other men who were implicated in these crimes. Thus, the fact that some of the photographs did not look like Defendants is not significant. What is significant is that there were several photographs of men who generally resemble Defendants. *See, e.g.*, Williams Decl. Ex. 2 at USAO_00099934–35, 99938, Ex. 3 at USAO_00099949–52, 99955 (photographs of ███████████████████████████████████████████████████████████ ███████████████████).

Determining that certain of the photobooks were unduly suggestive does not end the inquiry, however. In order to be entitled to a *Wade* hearing Defendants must also make a showing that any in-court identification would not be independently reliable.

Neither the Government's nor Defendants' briefs are helpful in making that evaluation. Accordingly, not later than October 31, 2025, the Government must provide a declaration indicating which witnesses who are expected to make an in-court identification of a Defendant were shown any of the Suggestive Photobooks. The Declaration must provide as to each such witness: his or her opportunity to observe the person at the time of the crime; his or her degree of attention at the time of the crime; his or her certainty of identification; and the length of time between the crime and the identification. Not later than November 7, 2025, Defendants may respond in a *joint* supplemental letter, not to exceed five single-spaced pages, discussing whether there is a basis for the Court to hold a *Wade* hearing as to some or all of the identifications made by witnesses who were shown a Suggestive Photobook.

## IV.    Defendants' Motion to Sever

Oren and Alon Alexander move for severance. Def. Mem., Dkt. 102; Gov't Mem. at 93–98. Rule 14(a) permits a court to sever defendants' trials if joinder prejudices a defendant. Fed. R. Crim. P. 14(a). The Supreme Court has instructed that severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A party seeking severance faces "a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (citation and internal quotation marks omitted). That is especially true when, as here, the Government alleges that Defendants "participated in a common plan or scheme." *United*

*States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). In such circumstances, the preference for joint trials is "particularly strong." *Id.*

The Government alleges that Defendants engaged in a decade-long conspiracy to traffic, rape, and sexually assault dozens of women and girls. Oren has not met his "heavy burden" to show that the single allegation of sex trafficking of a minor against Tal and Alon would unduly prejudice him. *Amato*, 15 F.3d at 237; *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) ("[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." (citation omitted)). The Court sees little logistical difficulty in conducting a joint trial of twins. In terms of identifications, Defendants are free to cross-examine witnesses on prior misidentification or on whether they are confident they have identified the correct twin. The jury will be instructed, as in all joint trials, that they must consider the guilt of each Defendant separately.

Finally, Alon and Oren argue that a joint trial will prejudice their ability to mount a misidentification defense. It is well established that severance on the basis of antagonistic defenses is available if "the conflict is so irreconcilable that acceptance of one defendant's defense requires that the testimony offered on behalf of a codefendant be disbelieved." *United States v. Tutino*, 883 F.2d 1125, 1130 (2d Cir. 1989). This is not such a case. First, much of the Government's evidence involves Alon and Oren acting in concert. To the extent Defendants want to mount a misidentification defense, it does not create an irreconcilable conflict. Instead, such a defense in this case would be more akin to cases in which each defendant points the finger at the other. "Finger pointing" defenses do not create irreconcilable conflicts entitling defendants to separate trials. *See United States v. Harwood*, 998 F.2d 91, 95–96 (2d Cir. 1993). Nor does the mere possibility that one twin could be confused with the other. *See United States*

41

*v. Mabry*, 3 F.3d 244, 251 (8th Cir. 1993), *abrogated on other grounds by Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

In short, none of Defendants' arguments in support of severance overcomes the strong preference for a joint trial of jointly indicted defendants. Defendants' motion for a severance is, therefore, denied.

## V. Defendants' Motion for an Evidentiary Hearing Based on Alleged Violations of Attorney-Client Privilege

Defendants request an evidentiary hearing to address purported violations of the attorney-client privilege through the Government's seizure of certain digital communications. Def. Mem., Dkt. 103; Gov't Mem. at 99–109. The Government describes a detailed procedure pursuant to which a Filter Team reviewed Defendants' iCloud accounts to remove potentially privileged material before the evidence was provided to the Case Team that is responsible for investigating, charging, and trying Defendants. Gov't Mem. at 99–101. Several screenshots and photographs of publicly available information pertaining to certain victims were passed from the Filter Team to the Case Team. *Id.* at 100. Subsequently, a member of the Case Team viewed the folder structure and saw that those files were saved within a folder entitled "The Case" in Alon's iCloud account. *Id.* at 100–01. The Government represents that it did not rely on the screenshots and photographs to obtain any legal process and did not show them to the Grand Jury; the Government did reference the files during Alon's detention hearing in the Southern District of Florida. *Id.* at 101.

The Court reserves decision on Defendants' motion except for their request to inspect (or to have the Court inspect) the Grand Jury minutes. As to the minutes of the Grand Jury, the Government has represented that the material the Case Team had from "The Case" folder was

not shown to the Grand Jury.  Accordingly, the Court sees no basis for intruding on the traditional secrecy of the Grand Jury.

More generally, the procedures the Government employed to mitigate the likelihood of viewing privileged information suggest that any alleged intrusion of the attorney-client privilege was unintentional and not "manifestly and avowedly corrupt."  *United States v. Tournant*, No. 22-CR-276-LTS, 2023 WL 5276776, at *13 (S.D.N.Y. Aug. 15, 2023) (quoting *United States v. Schwimmer*, 924 F.2d 443, 447 (2d Cir. 1991)).

Nevertheless, even though the defense has barely made a showing that materials in "The Case" file might be privileged,[26] the Court requires more information before it can resolve this motion fully.  Specifically, not later than October 31, 2025, the Government must file one or more affidavits by individuals with personal knowledge: (1) detailing the procedures employed to filter privileged materials; and (2) stating whether any materials from "The Case" folder,[27] other than the "Screenshots and Photographs," were passed from the Filter Team to the Case Team.  The Government must produce to Defendants and to the Court for *in camera* review any material accessed by the Case Team from "The Case" folder.

---

[26]     The explanation of the folder and how it exists is found only in the declaration of Richard Klugh, Dkt. 120, ¶ 10.  That explanation is entirely hearsay.

[27]     Consistent with much of Defendants' briefing on these motions, Alon's motion focused on the alleged intrusion into attorney-client-privileged materials is long on bombast and short on facts.  For example, Alon asserts: "The privileged material seized by the government and used here was principally in a folder in one of the defendant's iCloud accounts titled 'The Case.'  Additional attorney-client communications were found in adjacent or related file folders."  Def. Mem., Dkt. 103, at 1.  Nowhere in the balance of his opening brief or in his reply brief does Alon give a hint what such additional attorney-client communications were or the names of the purportedly "adjacent or related file folders."  Because the only thing that has been identified with any specificity is the material from the folder titled "The Case," the Court focuses only on that material.

## VI.  Defendants' Motion for a Bill of Particulars

By way of a sprawling, 95-item list with few citations to legal authority, Defendants move for a bill of particulars.  *See* Def. Mem., Dkt. 74; Gov't Mem. at 109–17.

The purpose of a bill of particulars is to provide the defendant with sufficient information about the charged conduct to prepare for trial, to avoid surprise, and to be able to interpose a claim of double jeopardy if he were again prosecuted for the same offense.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); Fed. R. Crim. P. 7(f).  "A bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial."  *United States v. Fruchter*, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *United States v. Ojeda*, 412 F. App'x 410, 411 (2d Cir. 2011) (unpublished) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)).

In evaluating whether a defendant has been adequately informed "of the specific acts of which he is accused," *id.* (quoting *Chen*, 378 F.3d at 163), courts look to the indictment and the materials disclosed in discovery, *see Bortnovsky*, 820 F.2d at 574 ("[I]f the information sought by [the] defendant seeks is provided in the indictment or in some acceptable alternate form, no bill of particulars is required.").  "The ultimate test is whether the information sought is necessary, not whether it is helpful."  *United States v. Morgan*, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010).  It is within the Court's discretion to make that determination and order a bill of particulars if appropriate.  *See Bortnovsky*, 820 F.2d at 574.

The Court has already addressed the sufficiency of the Indictment, and, for many of the same reasons that militated against dismissal, a bill of particulars is not necessary.  Namely, the Indictment provides Defendants with notice of the charges against them.  Defendants' position that the bill of particulars is necessary to provide such notice is belied by the breadth and depth

of their requests: Defendants request names, precise dates, and descriptions of the evidence the

Government intends to rely on to prove, for example, the commercial sex act elements of the Sex

Trafficking Counts, without explaining how such information is necessary.  Defendants' motion

is the quintessential example of attempting to use the bill of particulars as "an investigative tool

for the defense."  *United States v. Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).

      Against the backdrop of the substantial discovery the Government has provided, the

Court finds a bill of particulars is unnecessary.  Defendants' motion for a bill of particulars is

denied.

## VII.    Defendants' *Brady* Motion

      Defendants move to compel the Government to produce exculpatory material under

*Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  *See* Def. Mem., Dkt. 70; Gov't Mem.

at 117–20.  *Brady* material needs to be produced "in time for its effective use at trial."  *United

States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001).  Production is timely if produced "no later

than the point at which a reasonable probability will exist that the outcome would have been

different if an earlier disclosure had been made."  *United States v. Miller*, No. 12 CR 0368 PAC,

2012 WL 4791992, at *2 (S.D.N.Y. Oct. 9, 2012) (citation omitted).  Compliance with the

Jencks Act is no substitute for the Government's "independent obligation to timely produce

exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power

of 18 U.S.C. § 3500."  *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008).

      Defendants list nearly 40 categories of information that they contend is exculpatory and

that the Government is required to produce.  The Government's representation that it is aware of

its *Brady* obligations, *see* Gov't Mem. at 117, is sufficient to deny Defendants' requested relief.

*See United States v. Campo Flores*, No. S5 15 CR. 765 (PAC), 2016 WL 5946472, at *11

(S.D.N.Y. Oct. 12, 2016).  Furthermore, the Government has agreed to provide § 3500 material

and the victims' names to defense counsel on October 27, 2025, Order, Dkt. 163; although

Jencks Act compliance is not a substitute for *Brady* compliance, the substance of the disclosure

will overlap significantly with Defendants' requests, and the timing of the disclosure — more

than two months before trial — gives Defendants enough time for "its effective use." *Coppa*,

267 F.3d at 142.  Finally, the Court fails to understand how certain categories of information are

exculpatory.  Defendants do not explain how, for example, evidence of victims continuing to

contact or interact with Defendants, victims initiating contact with Defendants, or the victims'

identities are exculpatory.

Accordingly, Defendants' motion to compel production of *Brady* material is denied.

## VIII.    Defendants' Motion to Quash

Defendants move to quash pending grand jury subpoenas because they claim the

Government should have proceeded under Rule 17.  Def. Mem., Dkt. 134; Gov't Letter, Dkt.

143.  The grand jury is afforded a "presumption of regularity." *United States v. Calk*, 87 F.4th

164, 186 (2d Cir. 2023), *cert. denied,* 145 S. Ct. 144 (2024) (citation omitted).  Although it is

"improper for the Government to use the grand jury for the sole or dominant purpose of

preparing for trial under a pending indictment," if the grand jury investigation is not motivated

by that "improper purpose, evidence obtained pursuant to the investigation may be offered at the

trial on the initial charges." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994).

The Government states that it is continuing to investigate conduct that may result in

additional charges against Defendants or others.  The grand jury's issuance of additional

subpoenas following the return of the Indictment falls squarely within its core function: "a grand

jury investigation 'is not fully carried out until every available clue has been run down and all

witnesses examined in every proper way to find if a crime has been committed.'" *Calk*, 87 F.4th

at 186 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 701 (1972)).  The mere fact that the grand

jury subpoenas were issued after the return of an indictment does not qualify as "particularized proof of an improper purpose." *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) (citation omitted). Accordingly, Defendants' motion to quash the grand jury subpoenas is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part. Count Seven is dismissed with prejudice as time-barred only to the extent it alleges attempted sex trafficking. Defendants' suppression motions are DENIED.

By **Friday, October 31, 2025**, the Government must file affidavit(s) and provide the documents described in Sections III and V, *supra*. All remaining motions are DENIED.

As noted above, *supra* note 1, this Opinion and Order will be filed under seal. By **Friday, October 31, 2025**, the Government must show cause why any portion of this Opinion and Order should remain under seal and submit a version of this opinion with proposed redactions.

The Clerk of Court is respectfully directed to terminate the open motions at Docket Entries 69, 71, 73, 75, 81, 93, 94, 96, 98, 101, 105, 107, 109, and 134.

**SO ORDERED.**

Date:  October 17, 2025
      New York, New York

**VALERIE CAPRONI**
**United States District Judge**