

250 Vesey Street
27th Floor
New York, NY 10281

wmhwlaw.com
T: 212-335-2030
F: 212-335-2040

November 7, 2025

**VIA ECF**

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 20C
New York, New York 10007

      Re:    *United States v. Alexander et al.*, Docket No. 24-CR-00676 (VEC)

Dear Judge Caproni:

      On behalf of Tal, Alon, and Oren Alexander (together, the "Defendants"), we submit this supplemental request, pursuant to the Court's Opinion and Order, dated October 17, 2025 (the "Order"), to suppress in-court identifications by certain Government witnesses, or in the alternative, for a *Wade* hearing to determine whether the in-court identifications are independently reliable. For the reasons discussed below, the Court should preclude Victims -1, -4, -5, -9, and -23 from making in-court identifications.

      Having found the photobooks containing a photo of all three Defendants together to be unduly suggestive[1] (the "Suggestive Photobooks") (Order, at 40), the Court need only consider whether the in-court identifications by witnesses who viewed those photobooks are nevertheless independently reliable. *See United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022). Here, the factors courts consider in determining independent reliability decidedly weigh in favor of exclusion. In short, (i) a significant amount of time has lapsed between the alleged crimes and the identifications (up to 15 years); (ii) all of the witnesses claim they were drugged and/or significantly impaired at the time of the alleged offense and therefore had severely diminished ability to observe any perpetrator or maintain a high degree of attention; and (iii) all of the witnesses describe being under significant stress during the alleged crimes. Together, these factors plainly demonstrate that identifications by these witnesses lack reliability, the "linchpin for admissibility of identification testimony." *United States v. Maldonado–Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). Moreover, the risk of misidentification in certain instances is particularly acute here, as Oren and Alon are twins.

      **A. The Court Should Consider the *Biggers* Factors**

      As a threshold matter, none of the identifying witnesses had a preexisting relationship or sufficient ongoing contact with any of the Defendants for the photobook identifications to be merely confirmatory. *See United States v. Brown*, No. 20-CR-293 (WFK), 2022 WL 5189661, at *2 (E.D.N.Y. Oct. 5, 2022) (identification independently reliable and confirmatory where it "was made by someone who was previously familiar with Defendants—as opposed to a victim

---

[1] The Government falsely claims that the defense never raised the issue that the photograph of all three defendants together was unduly suggestive (ECF 169, at 3), but that argument is belied by the record. *See* ECF 151, at 29; ECF 152, ¶ 2.

identifying a perpetrator, for example"). The absence of any meaningful preexisting relationship necessitates consideration of the *Biggers* factors. Indeed, nearly all of the accusers here encountered one or more of the Defendants on just one occasion, nearly a decade ago or longer—a far cry from the preexisting relationships that courts have found do not require analysis under *Biggers*. *See, e.g., United States v. Small*, No. 24-CR-208 (VEC), 2025 WL 2793638, at *2 (S.D.N.Y. Oct. 1, 2025) (inherent reliability where witnesses had ongoing business relationship with defendant). The identifying witnesses here should not be considered inherently reliable without more substantial and numerous interactions with the Defendants.

In addition, the Government has emphasized the accusers' knowledge of the Defendants' names in an attempt to establish their familiarity with the Defendants. But knowing their names is meaningless in a case that has garnered such extensive media attention, which the relevant accusers here admit to seeing. *See, e.g.,* Ex. 1, at 4 (Victim-1 interacting with reporters); Ex. 2, at 3 (Victim-5 reading blog post); Ex. 3, at 2 (Victim-9 reading media coverage); Ex. 4, at 2 (Victim-23, same); Ex. 7, at 2 (Victim-4 stating "Oren worked with [Tal] in real estate" in 2009 whereas Tal did not do so until years later). The Declaration of Special Agent Justine Atwood ("Atwood Declaration") (ECF 169-3) does not provide a basis for the accusers' knowledge of the Defendants' names or appearances—whether from personal interactions or later learning their names from others or the media. To illustrate this point, Victim-1 identified Alon, Victim-9 identified Tal, and Victim-23 identified Tal and Alon in the Suggestive Photobooks, despite *never having met them*. *See* Decl., at ¶ 6, 19; Ex. 4 (Victim-23 "had never met" Tal and Alon). Evidently, they made these identifications from sources beyond their personal knowledge. The accusers' knowledge of the Defendants' names here does not indicate reliability.

### B. The *Biggers* Factors Decidedly Demonstrate the Witnesses' Lack of Reliability

To determine independent reliability, courts consider the following factors: (1) "the opportunity of the witness to view the criminal at the time of the crime;" (2) "the witness' degree of attention;" (3) "the accuracy of the witness' prior description of the criminal;" (4) "the level of certainty demonstrated by the witness at the confrontation;" and (5) "the length of time between the crime and the confrontation." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973–74 (2d Cir. 1990) (quoting *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). The Second Circuit has also expanded, based on "[a] growing body of scientific research[,] . . . what factors a court should examine in determining whether to exclude eyewitness identification testimony." *United States v. Nolan*, 956 F.3d 71, 80 (2d Cir. 2020). Relevant here, "the stress of the situation" may also "impair the ability of a witness . . . to accurately process what she observed." *Id*.

As discussed below, the applicable factors here almost universally demonstrate a lack of reliability.[2]

#### 1. *Victim-1's Identification of Tal Alexander*

Victim-1 alleges that Tal and another man drugged and sexually assaulted her during Memorial Day Weekend in 2011[3]—*over 13 years* before she viewed the Suggestive Photobook.

---

[2] The Atwood Declaration neither indicates the "level of certainty" of the identifying witnesses nor provides any physical description they gave to law enforcement. Accordingly, these factors do not support the notion that these witnesses are independently reliable.

[3] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
These allegations against Oren are not charged, nor did the Government include them in its Rule

As with all of the accusers discussed here, this lapse in time counsels heavily in favor of a lack of reliability. Courts have reached this conclusion with significantly less gaps in time. *See, e.g., Biggers*, 409 U.S. at 202 (seven-month lapse between the crime and the identification "would be a seriously negative factor in most cases"); *United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994) (ten-month period between the crime and a lineup militated against reliability); *United States v. Rundell*, 858 F.2d 425, 427 (8th Cir. 1988) (eight months negatively affected reliability); *Massillon v. Conway*, 574 F. Supp. 2d 381, 405 (S.D.N.Y. 2008) (eleven months "weighs against independent reliability").

In addition, Victim-1's opportunity to observe the perpetrators and her degree of attention during the alleged crime significantly undercuts her reliability. Before the alleged incidents in 2011, Victim-1 had never met Tal. Ex. 1, at 2. She claims that she took a train to the Hamptons where two men picked her up at the train station, one of which introduced himself as "Tal Alexander." *Id.* Shortly after arriving at the house where they were staying, the men allegedly gave her a drink, she drank half of it, and the men sexually assaulted her in various locations in the house. *Id.* She left the next morning. *Id.*

Critically, Victim-1 claims she was drugged and significantly impaired at the time of the incident and during much of her interaction with the perpetrators, which undermines her reliability as an identifying witness. *See United States v. Willis*, No. 13-CR-6013G, 2014 WL 6791386, at *25 (W.D.N.Y. Nov. 5, 2014), *report and recommendation adopted*, No. 13-CR-6013-FPG, 2015 WL 1915123 (W.D.N.Y. Apr. 27, 2015) ("credibility may be properly challenged" where accuser "was frequently under the influence of various drugs and was sometimes intoxicated to the point of blacking out and losing her memory," but permitting in-court identification because accuser lived with defendant for five days within about a month of the identification); *cf. Jiang v. Corpuz*, No. 19-CV-05664 (RPK), 2022 WL 4539425, at *5 (E.D.N.Y. Sept. 28, 2022) ("circumstances raise doubt as to the person's veracity" where "witness's cognitive abilities were so severely impaired as to render his account unreliable") (internal quotation marks omitted).

While the Atwood Declaration notes that Victim-1 had "flashes of memory" (Decl., ¶ 6(c)), Victim-1 has described her impairment in various levels of severity. [redacted] In any of these versions, Victim-1's observation of the perpetrators and degree of attention during the alleged crime is exceedingly unreliable. Even if she had some opportunity to view Tal at other points during the weekend, her ability to observe her alleged attackers and her attention to detail *during the alleged assault* is almost nonexistent.

---

413 or Rule 404(b) disclosures. This submission therefore focuses on Victim-1's reliability as to an identification of Tal. If the Government later seeks to have Victim-1 identify Oren, she lacks reliability for the same reasons: the alleged crime was over 13 years ago; she apparently had no other interactions with Oren; and she was allegedly under significant stress during the encounter.

4 [redacted]

Furthermore, as with all of the accusers discussed here, Victim-1's allegations clearly involve a situation where, if true, she was under significant "stress," which the Second Circuit has acknowledged may lead to inaccurate identifications. *Nolan*, 956 F.3d at 80 ("[R]esearch has shown that an eyewitness under high stress is less likely to make a reliable identification of the perpetrator."); *see also Young v. Conway*, 698 F.3d 69, 81 (2d Cir. 2012) ("[H]igh levels of stress have been shown to induce a defensive mental state that can result in a diminished ability accurately to process and recall events, leading to inaccurate identifications."); *id.* (citing scientific studies, including "a review of 16 studies involving 1727 participants [finding] that accurate identifications decreased 22.2% under high stress conditions").

### 2. *Victim-4 and Victim-5's Identification of the Defendants*

The reliability of Victim-4 and Victim-5 not only suffers from the same shortcomings as Victim-1 but also is evident from their recent actions. These accusers have shown that they either cannot tell the Defendants apart or view them as interchangeable with themselves and others. Indeed, Victim-4 misidentified Oren and Alon in the photobooks *twice*—when viewing their individual photos and again when viewing the suggestive photo of the three Defendants together. Decl., ¶ 11. More troubling, Victim-5 filed a civil lawsuit asserting drastically different allegations and accusing different Defendants. In her complaint, she alleges that *all three Defendants* raped her in the Hamptons and then again raped her in Manhattan. ███████████████████████████████████████████████████████. But as she stated to the Government, she cannot even recount being sexually assaulted by anyone in the Hamptons, and in Manhattan an entirely different person sexually assaulted her in a bathroom (Tal was not even present).

An analysis of the *Biggers* factors also demonstrates their unreliability. First, the lapse in time between the alleged crimes and the identification procedure is exceptionally long—*over 15 years*. For the same reasons described above, this cuts heavily against reliability.

Also like Victim-1, Victim-4 and Victim-5 had no prior contact with any of the Defendants before the night of their allegations. According to these accusers, they met the Defendants for the first time in June 2009 at a Hamptons nightclub, after which they went to the Defendants' rental house. Victim-4 claims that Alon sexually assaulted her in a hot tub and describes minimal to no interaction with Oren and Tal. Ex. 5. Victim-5 does not recall being assaulted. Ex. 2. The accusers left the house the next morning. Victim-4 never saw the Defendants again, and Victim-5 never saw Tal again, while she claims she saw Oren and Alon on one other occasion that summer.[6]

As Victims-4 and -5 allege, they were significantly impaired during their brief time with the Defendants in the Hamptons. Victim-4 drank alcohol that night and had "gaps in her memory." Decl., ¶ 10(a). In an interview with the Government, she stated that at the house, "things went black," she "blacked out," and after one point "does not remember anything." Ex. 5, at 2-3. Victim-5 likewise drank alcohol throughout the night, described the night as a "blur," and reported gaps in her memory. Decl., ¶ 14(a); Ex. 2, at 2. Witnesses who admittedly were blacked out during the commission of the alleged crime and much of their interaction with the Defendants simply cannot have had a sufficient opportunity to observe or maintain a high degree of attention. Moreover, the same "stress of the situation" applies equally here as it does to the other identifying

---

[6] Victim-5 claims that later that summer she met Oren and Alon at a club and agreed to come to their apartment afterwards, where she was assaulted by a different male individual. Decl., ¶ 10(a). The Atwood Declaration fails to mention that she "blacked out" that night as well. Ex. 6, at 5.

accusers. All of these circumstances present "a substantial likelihood of irreparable misidentification." *Maldonado–Rivera*, 922 F.2d at 973.

### 3. Victim-9's Identification of Oren Alexander and Alon Alexander

The same factors described above apply equally to Victim-9, who claims Oren assaulted her seven years before she viewed a photobook. Victim-9 alleges she met Oren and Alon at a club in Aspen one night in 2017 around midnight. When the club closed (the Atwood Declaration does not specify when), Victim-9 and her friends allegedly went to Oren and Alon's hotel room, where she claims Oren assaulted her. Victim-9 states she had three drinks at the club and when she left, she "felt very intoxicated" (Decl., ¶ 18(a)), and was "lightheaded, stumbling, and blurred" (Ex. 3, at 1), which she attributed to drinking at altitude (*id.*). She did not remember the ride to the hotel. *Id.* Despite a very brief interaction with Oren years later, Victim-9, too, had minimal opportunity not under the heavy influence of alcohol to observe who she believes was Oren.

### 4. Victim-23's Identification of Oren Alexander

Victim-23's ability to observe Oren—nine years ago—is perhaps even more diminished than the other accusers. Victim-23 allegedly met Oren on one occasion in 2015—around 3:00 a.m. at a bar. Decl., ¶ 22(a). Twenty to thirty minutes after meeting Oren, she "began to lose control of her body" (*id.*) and "she only remembered bits and pieces moving forward" (Ex. 4, at 1). She alleges she went to his house where she "came in and out of awareness," Decl., ¶ 22(a), and remained in this state at his house for "multiple hours." *Id.* With minimal opportunity and awareness to adequately observe Oren, Victim-23 is also not independently reliable. Like Victim-5, Victim-23 also misidentified Oren and Alon twice, both in the individual photos and the group photo, demonstrating her unreliability. Decl. ¶ 23.

### 5. Influence of the Accusers' Civil Attorney on the Identification Procedure

It also cannot be ignored that the same civil plaintiff's attorney, Evan Torgan, represents Victims -4, -5, and -9. Mr. Torgan was present when each of these accusers viewed the Suggestive Photobooks (*see* Exs. 2-3, 5), in addition to interviews in which the Government showed his other clients the same photobooks.[7] Mr. Torgan even scheduled Victims -4 and -5 to be interviewed on the same day. The Government has not described any steps it took to ensure Mr. Torgan did not discuss the photobooks with his clients between interviews. Troublingly, the Government maintained the same ordering of photos within each photobook, which Mr. Torgan knew from having attended numerous identification procedures.

To the extent the Court considers it relevant that these alleged victims made accurate identifications in many instances or with certainty, that should hold little weight given Mr. Torgan's potential influence. For the same obvious reason the Government should avoid having two witnesses view a photobook together, the Government should not have permitted the same attorney to accompany separate witnesses to view identical photobooks.

\* \* \*

For the above-stated reasons, we respectfully request that the Court preclude Victims -1, -4, -5, -9, and -23 from making in-court identifications, and alternatively, order a *Wade* hearing.

---

[7] Mr. Torgan represents 14 of the 24 alleged victims that the Government seeks to call at trial.

5

Respectfully submitted,

*/s/ Milton L. Williams*
Milton L. Williams
Deanna M. Paul
Alexander Kahn
*Attorneys for Defendant Tal Alexander*


*/s/ Howard Srebnick*
Howard Srebnick
Jackie Perczek
*Attorneys for Defendant Alon Alexander*


*/s/ Marc Agnifilo*
Marc Agnifilo
Zach Intrater
Teny Geragos
*Attorneys for Defendant Oren Alexander*

cc:     All counsel via ECF