UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v- | 24-CR-676 |
| | *Oral argument requested* |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER | |

# VICTIM 1 MEMORANDUM IN SUPPORT OF MOTION TO QUASH OR MODIFY RULE 17(C) SUBPOENA BY ALEXANDER DEFENDANTS

Non-party Victim 1 brings this motion to quash or modify the Alexander Defendants' Rule 17(c) subpoenas for electronic data.[1] Defense counsel avers that the Court already approved these subpoenas. Victim 1 nevertheless seeks to object to the requests to produce as they are a fishing expedition intended solely to harass Victim 1 and punish her for serving as a witness in the government's case against the Alexander Defendants.

## BACKGROUND

Victim 1 was sexually assaulted by Oren Alexander in New York City and was then lured to the Hamptons to be drugged and raped by Tal Alexander and an unknown third party in 2011. She is identified in the indictments against the Alexander Defendants for conspiracy to commit sex trafficking as Victim 1. Victim 1 is not otherwise a party to this matter but was served a subpoena for documents under Rule 17(c).

---

[1] The subpoenas referenced herein are not included as exhibits because they contain Victim 1's name and other victim-identifying information.

1

Since Victim 1 was identified by the government to the Defendants, Defendants have engaged in a campaign of harassment against her, largely through third parties. An "investigator" who pretended to work on behalf of the victims contacted at least three of Victim 1's friends. The investigator initially asked personal questions about Victim 1 and then moved on to suggesting information to Victim 1's friends, including that Victim 1 often blacked out, that she was promiscuous, and that she often went home with different men at the end of a night out. In other words, the investigator had called Victim 1's friends to paint her as a "willing" victim. At the end of the conversation, the investigator identified himself as working for the Alexander Defendants rather than the victims. Because the Defense had hired someone to smear Victim 1 to her friends and feed misinformation to potential witnesses, undersigned counsel contacted defense counsel and informed them that their investigator was misrepresenting his role to potential witnesses.

Next, the Alexanders hired some form of publicist to attempt to clean up their public profile by attacking victims in "the press." Various articles were published under the guise of opinion pieces trying to point out "inconsistencies" between the quotes selected by a reporter who had interviewed Victim 1 and the fuller story filed by Victim 1 in a civil suit. The articles claimed that Victim 1 had "changed" her story because quotes in a New York Times article stated that Victim 1 had been drugged and could not remember what happened to her during her rape by Tal Alexander but the civil suit included information about the rape. According to the "article" the difference in the level of detail between the account reported by the New York Times and the one in the civil suit proved Victim 1 was lying. The article omitted that the civil suit explicitly stated that Victim 1 had only fragments of intermittent memories of the rape as a result of being drugged—*i.e.*, that both accounts are completely consistent with each other. Victim 1 reacted to these articles through

Instagram posts on her private profile, mocking the paid-for content. These Instagram posts are the subject of Subpoena 1, Request to Produce 1.

The Defense then picked up where their investigator left off, calling another three of Victim 1's friends and pretending to be a reporter to get additional information from them to try to smear Victim 1. They have also pressured friends of Victim 1's friends' into sharing contact information for Victim 1's friends. Another salvo in the campaign of harassment was a subpoena improperly issued to Victim 1's friend without notice to Victim 1. The Defense went so far as to contact Victim 1's college boyfriend—from years before the Alexander brothers raped Victim 1—who lives in Tasmania. None of these tactics sought any relevant information and instead sought to convince people close to or acquainted with Victim 1 that Victim 1 had a propensity to get drunk and sleep around—the standard rapist defense from which the legal system is supposed to protect victims. In short, the Defense has done everything possible to create a maelstrom of unwanted attention on Victim' 1's friends in order to drive a wedge between them, to victim blame, and to create misinformation rather than to seek evidence.

Finally, having apparently failed to generate any material to attack Victim 1's credibility in Court, the Defense contacted a reporter to again place an article suggesting that Victim 1's "story" had changed based on misrepresenting confidential information disclosed to law enforcement (and later to the Defense in discovery). The Defense revealed their plan to use an identical tactic in Court in their Rule 412 filing. While the use of the 412 material has yet to be litigated, the use of a reporter to make this information public demonstrates that the Alexanders' only defense is to publicly smear Victim 1 and harass her for serving as a witness.

The Alexander's 17(c) subpoenas represent the next phase of harassment by the Alexander brothers against Victim 1.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 17(c)(2) provides that "on motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive" *United States v. Nixon* requires that a party seeking document production must demonstrate: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition' 418 U.S. 683 (1974)

**ARGUMENT**

<u>S<small>UBPOENA</small> 1</u>

The first subpoena requests irrelevant information from 2024 onward about Instagram interactions by Victim 1 *thirteen years* after her sexual assaults by Tal and Oren Alexander. The metadata requested is available via the already-issued subpoena to Meta and the content requests are overly broad and unduly burdensome.

*RTP 1 (a)*: This request is for **all** Victim 1's Instagram interactions of any type for two days. According to the Defense, Victim 1 posted a "reaction' to an article about Victim 1 in July 2024. The post, and any subsequent interactions based on it, is plainly irrelevant as to whether or not Victim 1 was raped in 2011. Defense counsel states that the content of the post reveals motive or bias in her testimony even though she is reacting to a paid article that suggests she is a liar. How

4

that would reveal her motives and bias is a mystery and the information sought is therefore irrelevant.

More importantly, even if Victim 1's *reaction* to that article were relevant, all of her other Instagram interactions on that day would not be. At the very least this request should be modified to only include information related to article in question.

*RTP 1 (b)*: This request asks for all associated metadata. All associated metadata is available through the subpoena issued to Meta. Defense counsel avers that Meta will not provide content. However, there is no reason they will not provide metadata.

*RTP 2*: This request is a fishing expedition seeking <u>all</u> Instagram content and interactions from a 13-month period commencing on the date of the Alexander brothers' arrest. This is plainly not a targeted request and is overly broad.

*RTP 3*: This request seeks <u>all</u> deleted content in a 13-month timeframe and without limiting it by time or subject, which is, again, a fishing expedition.

*RTP 4*: This request seeks all Instagram content and data regarding the Alexander brothers during a 13-month timeframe beginning on the date of the Alexander brothers' arrest. It is unduly burdensome as there is no way to search an Instagram profile for content by subject matter or search terms and requires Victim 1 to search every post, interaction, and communication from the previous 13 months for anything that "concerns" the Alexander brothers.

To the extent the Court deems this to be a request for relevant, admissible evidence, the request should be modified to only include "mentions" of the Alexander brothers (as opposed to "concerning" them) and the Court should require the Defense to pay the cost of an electronic discovery company to conduct a search on otherwise unsearchable Instagram data.

5

<u>SUBPOENA 2</u>

The second subpoena requests communications across **eleven** or more digital platforms with indefinite time periods and non-targeted content, which requires that Victim 1 hire an electronic discovery firm to extract responsive documents and pay an attorney to review the content for compliance. Victim 1 does not have the skills to respond to this request and the volume of electronic data she would have to sift through is outlandish. Given the enormous burden of this electronic fishing expedition, if the Court finds any of the requested information relevant or sufficiently targeted, the Defense should be required to pay for professional services to comply.

*RTP 2:* This request seeks electronic communications between Victim 1 and the Defendants. To the extent that any responsive documents exist, the Defendants would have access to them and they, unlike Victim 1, are a party to the ongoing matter. There is no reason that Victim 1 should be required to conduct a search through eleven communications platforms across the past two decades to hunt for communications *with the party seeking the information*.

Regardless of why the Defense believes this burden should fall on Victim 1 rather than on themselves, the request is a complete fishing expedition. There is no indication that any such communication exists or how it could be relevant to the matter of motive or bias of the witness. An initial review found one Facebook "friend request," without additional content, from Oren Alexander to Victim 1 in 2011 prior to him luring Victim 1 to his home from a club under the pretext of a party and then trapping her there to sexually assault her.

Finally, if the Defendants seek Victim 1's communications with themselves, they should at least be required to provide phone numbers, email addresses, and social media handles to enable Victim 1 to search for responsive documents.

6

*RTP 3*: This request seeks communication between Victim 1 and the third party, a former friend, who invited Victim 1 to the Hamptons under the pretext of a weekend getaway where Victim 1 was then raped by Tal Alexander. This request is not targeted because it does not specify a timeframe for the request and, prior to Victim 1's realization that the third-party had set her up to be raped, Victim 1 was in frequent communication with her.

To the extent the Court believes that this request seeks relevant information about Victim 1's testimony, it should limit the search to the dates around the rape in 2011. It should also requite the Defense to pay for the e-discovery company to conduct this search across eleven platforms and for an attorney to review it.

*RTP* 6: This request seeks communication between Victim 1 and another one of the Alexander Defendants' victims from 13 years after they were raped by the Alexander Defendants. The request seeks information across 18 months (since July 2024) and 11 platforms and is again a fishing expedition. To the extent that the Court finds that this request could yield relevant information, Victim 1 requests that Defendants be required to provide phone numbers, email addresses, and social media handles to enable Victim 1 to search for responsive documents.

*RTP 7*: This request seeks communication between Victim 1 and another one of the Alexander Defendants' victims. It provides no timeframe and therefore is overly broad.

To the extent the Court believes that this non-targeted request could produce relevant information, Victim 1 asks that the Court require the defense to pay for the cost of searching decades worth of electronically stored communication. Defendants should also be required to provide phone numbers, email addresses, and social media handles to enable Victim 1 to search for responsive documents

*RTP 8*: This request seeks Instagram and Facebook communication between Victim 1 and an unknown third party. Because Victim 1 does not recognize the name or Instagram handle, she cannot identify why any Instagram contact with her would be relevant. That said, the information sought includes posts that were "liked" or commented on by an Instagram handle Is_be during an 18-month time period beginning July 2024. What information could possibly be obtained from the a "like" by anyone is a mystery but more importantly searching for this information would require Victim 1 going through every post and story in an 18-month period. Given the format that Meta provides its users' data, it is not even clear that there would be a way to determine who liked which story.

*RTPs 1, 4, and 9:* These requests are narrowly targeted and relate to evidence provided to the government. However, the format of information sought requires a professional service to re-format the documents to comply with the Defendants' instructions. This service should be paid for by the Defendants.

## Costs

Defendants should be made to bear the cost of their smear campaign against Victim 1. The documents sought are entirely irrelevant and not narrowly tailored. If a victim (and non party) are made to dig for old, unrelated emails, the Defendants should bear the cost of the excavation. If the Court is inclined to compel Victim 1's compliance with any of the requests, Victim 1 requests that she be allowed to seek reimbursement for the costs of an e-discovery firm and attorney time to ensure compliance.

## CONCLUSION

8

Victim 1 seeks to quash the subpoenas as they are largely a fishing expedition seeking *any* information about *anything* at all just to force her to bear the expense and effort of complying. Those few requests that are narrowly tailored nonetheless seek irrelevant information.

Nothing in the subpoenaed materials will have any impact on the veracity of Victim 1's allegations or on her credibility—Victim 1 has nothing to hide. But the impact of allowing Defendants to use the Court to continue to harass Victim 1 will be to further burden her with the cost of the defendants' crimes against her. Victims of violent sexual assaults will be deterred from coming forward if they know their well-heeled assailants will use charges brought by the government to come after their victims.

Dated: January 2, 2026  
      New York, New York

Respectfully submitted,

_____  
Lilian Timmermann  
Lili M. Timmermann PA  
68 Jay Street,  
Brooklyn, NY 11201