UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TAL ALEXANDER, ALON ALEXANDER,<br>and OREN ALEXANDER,<br><br>Defendants. | Case No. 24-CR-00676 (VEC) |

**MEMORANDUM OF LAW IN OPPOSITION TO
ALLEGED VICTIM 1'S MOTION TO QUASH SUBPOENA**

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     APPLICATION OF *NIXON* ...............................................................................................2

II.    THE SUBPOENAS ............................................................................................................3

       A.     The December 3, 2025 Subpoena ............................................................................3

       B.     The December 19, 2025 Subpoena ..........................................................................6

CONCLUSION ..............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Pages**

### **Cases**

*United States v. Akhavan*,
 2021 WL 1251893 (S.D.N.Y. 2021) ................................................................................ 2

*United States v. Caruso*,
 948 F. Supp. 382 (D.N.J. 1996) ....................................................................................... 2

*United States v. Maldonado-Rivera*,
 922 F.2d 934 (2d Cir. 1990) ........................................................................................... 13

*United States v. Nixon*,
 418 U.S. 683 (1974) ............................................................................................. 1, 2, 11

*United States v. Skelos*,
 2018 WL 2254538 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) ............ 2

*United States v. Stein*,
 488 F. Supp. 2d 350 (S.D.N.Y. 2007) .............................................................................. 2

*United States v. Tucker*,
 249 F.R.D. 58 (S.D.N.Y. 2008) ................................................................................... 2, 8

### **Rules**

Fed. R. Evid. 106 ...................................................................................................................... 13

Fed. R. Evid. 401 ........................................................................................................................ 3

Fed. R. Evid. 607 ........................................................................................................................ 3

Fed. R. Evid. 608 ........................................................................................................................ 3

Fed. R. Evid. 613 ...................................................................................................................... 13

**PRELIMINARY STATEMENT**

Alleged Victim 1's motion to quash is a polemic—laden with inflammatory, unsupported accusations and extraneous narrative—that bears little resemblance to the legal standard governing subpoenas or the limited, targeted requests at issue. Rather than engaging with the requirements of *United States v. Nixon*, 418 U.S. 683, 700 (1974), Alleged Victim 1 devotes pages to asserting wholly irrelevant and, in several instances, demonstrably false claims about the conduct of defense counsel, the press, and investigators; the motives of the subpoena; and some supposed "harassment." But none of this is tethered to the document requests before the Court—none of those allegations (which, again, are not just wild but false) has any bearing on whether the subpoenas are tailored to seek materials that are relevant, admissible, and specific.

The subpoenas request a narrow category of electronic communications and social media content. The narrowly-targeted requests directly bear on Alleged Victim 1's credibility, motive, and bias—subjects that are central to trial and well within the scope of permissible impeachment. Alleged Victim 1 does not meaningfully dispute that she made public statements (including statements that change her story significantly), engaged in online interactions, or communicated with others about this case and her anticipated testimony. Nor does she contend that the requests are vague or unlimited. Instead of grappling with the issue at hand, she characterizes routine Rule 17(c) subpoenas as a campaign of intimidation by reciting grievances that are neither supported by the record nor relevant to the subpoenas' validity.

Courts do not evaluate motions to quash by weighing accusations or characterizations of counsel's conduct. They apply *Nixon*. Because the subpoenas here satisfy that standard, the motion should be denied.

**ARGUMENT**

**I.    APPLICATION OF *NIXON***

Assuming *Nixon* applies here, the Defendants' subpoenas meet *Nixon*'s requirements, as the requested information is relevant, admissible, and specific.[1]

First, the Defendants' subpoenas seek evidence that is relevant to establishing a potential defense. In *Nixon*, the Supreme Court warned that Rule 17(c) subpoenas should not be used for "fishing expedition[s]." *Nixon*, 418 U.S. at 699-700. The subpoenas "are targeted at uncovering specific documents, or types of documents, which are relevant to establishing" a potential defense. *United States v. Caruso*, 948 F. Supp. 382, 399 (D.N.J. 1996). Here, the subpoenas are targeted at specific types of communications directly relevant to establishing a defense: Upon joining the criminal case, Alleged Victim 1 posted content to deflect scrutiny and reflect on her expected testimony. Evidence of this content calls her credibility, claims, and motives into question.

Second, documents responsive to the subpoenas would likely be admissible at trial. *Nixon* cautions that subpoenas should not be used as a "discovery device" under Rule 17, but instead should be used only as "a mechanism for obtaining specific admissible evidence." *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (citation omitted). To that end, Rule 17 does not permit subpoenas to obtain documents that would be excluded on hearsay grounds or would otherwise be "inadmissible as evidence at trial." *Id.* As detailed further below, the Defendants' subpoenas target

---

[1] Though some courts have extended the application of *Nixon* to subpoenas a criminal defendant issues to a non-party, other courts have expressed doubt about whether the *Nixon* standard should apply in this context. *See, e.g.*, *United States v. Akhavan*, No. 20-CR-188-2 (JSR), 2021 WL 1251893, at *1 (S.D.N.Y. 2021) ("This Court joins those who have expressed doubt about the imbalance created by the *Nixon* standard."); *United States v. Tucker*, 249 F.R.D. 58, 64-66 (S.D.N.Y. 2008); *United States v. Stein*, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007). For purposes of this opposition, we assume the *Nixon* standard applies, and show why it is met.

2

communications and social media content that bear directly on Alleged Victim 1's credibility, motive, bias, and state of mind—issues that are always relevant and permissible subjects of cross-examination.  *See* Fed. R. Evid. 401, 607, and 608.  Statements made by Alleged Victim 1 concerning the allegations, her testimony, or public reaction to her claims are admissible as non-hearsay admissions or prior inconsistent statements, and contemporaneous posts reflecting narrative-shaping, coordination with others, or reactions to criticism are probative of bias and motive to testify in a particular manner.  Moreover, evidence reflecting deletion, alteration, or selective presentation of social media content is admissible to show consciousness of credibility issues and to rebut anticipated bolstering by the Government.  Because the subpoenas seek evidence that would be admissible for these well-established purposes and do not rely on impermissible character attacks, it satisfies Rule 17's admissibility requirement and should not be quashed.

      Finally, the documents and communications requested are targeted to ensure the production of material evidence.  None of the requests seek broad categories of communications simply to rummage through Alleged Victim 1's communications to find something helpful to the defense.  Rather, the categories are narrowly circumscribed to target only that information which directly relates to material issues.

**II.**    **THE SUBPOENAS**

    **A.**    <u>**The December 3, 2025 Subpoena**</u>

      This subpoena, attached hereto as Exhibit 1, sought specific data associated with Alleged Victim 1's Instagram accounts (███████), including known attempts to delete, alter, or archive evidence relating to this case.  Alleged Victim 1's objections to this subpoena rest on an artificially narrow view of relevance and an incorrect premise about burden.  The defense does not seek social media evidence to relitigate whether an assault occurred in 2011 in the abstract; it seeks

3

evidence bearing on Alleged Victim 1's credibility, motive, bias, and efforts to shape the public narrative in advance of trial—core issues the jury will be required to assess.

> i. **Request 1(a).** All content data, records, and other information relating to all interactions between the account and other Instagram users between July 14, 2025 and July 15, 2025, including but not limited to: Interactions by other Instagram users with the account or its content, including posts, comments, likes, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

Alleged Victim 1's July 2024 Instagram reaction to an article about her allegations and inconsistencies in her accounts is plainly relevant. Public responses to media coverage, particularly where a witness reacts to criticism or accusations of dishonesty, may reflect motive, bias, and consciousness of narrative control. While the defense does not contend that *every* interaction on that day is independently relevant, it is reasonable to seek interactions connected to that post. To eliminate any conceivable overbreadth, the Defendants are amenable to limiting Request 1(a) to Instagram interactions, during the 24-hour period that her Instagram stories were publicly available, that reference or respond to the article or Alleged Victim 1's allegations against the Alexanders.

> ii. **Request 1(b).** All content data, records, and other information relating to all interactions between the account and other Instagram users between July 14, 2025 and July 15, 2025, including but not limited to: All associated metadata.

Alleged Victim 1's assertion that all associated metadata is available through a subpoena to Meta is incorrect as a practical and legal matter. Meta has advised the defense that it will not provide content in response to the subpoena, and non-content metadata alone is insufficient where the relevance turns on what Alleged Victim 1 herself wrote, deleted, archived, or altered. Alleged Victim 1 cannot rely on a third-party subpoena to a global corporation as a substitute for producing her own communications.

4

    iii.  **Requests 2–4.**

    **Request 2**: All content data edited or archived (including stories and archived stories, past and current bios and profiles, posts and archived posts, captions and comments), and all associated metadata, between December 11, 2024, and the date of this subpoena.

    **Request 3**. If content data was deleted between December 11, 2024, and the date of this subpoena, the date of deletion and a description of the type of content deleted.

    **Request 4**. All content data sent, created, or stored (whether created, uploaded, or shared by or with the account), and all associated metadata, between December 11, 2024 and the date of this subpoena, that mentions or concerns Oren Alexander, Alon Alexander, Tal Alexander, the Alexander Brothers, or the Alexander Bros.

These requests are not fishing expeditions. Prior to issuing the subpoena, defense counsel informed the Government that it was aware of at least two accusers who had removed social media content directly relating to their allegations against the Alexanders and requested that the Government instruct witnesses to preserve social media evidence, including by refraining from deleting, archiving, unsending, or otherwise altering posts. The Government declined, advising that it is not its practice to do so. Instead, it said, "[t]o the extent defense counsel wishes to preserve any particular posts, you are welcome to take steps to do so." Given that position, the subpoena is necessary to preserve and obtain evidence that the Government has declined to safeguard.

Defense counsel has learned of several Instagram story posts by Alleged Victim 1, including at least one deleted post, that concern her upcoming testimony. For example, between July 14, 2025 and July 15, 2025, Alleged Victim 1's public posts ridiculed a reporter for pointing out inconsistencies in her accounts and included a countdown to her testimony at the criminal trial with references to being a "lying, gold digging whore." These posts are directly probative of credibility and bias.

To address Alleged Victim 1's concerns about burden, Defendants are willing to narrow Request 4 to posts that mention (as opposed to "concern") Oren Alexander, Alon Alexander, Tal

Alexander, the Alexander Brothers, or the Alexander Bros. But the suggestion that compliance would require a paid electronic discovery vendor is unfounded. Searching one's own Instagram account for mentions of specified names within a defined time period is a routine, user-level task. Indeed, there is a search bar at the top of Instagram messages that enables such searches. The Court should not permit Alleged Victim 1 to condition production on speculative cost-shifting. The materials sought are highly relevant, narrowly tailored, and unavailable from any other source.

B. **The December 19, 2025 Subpoena**

This subpoena, attached hereto as Exhibit 2, included requests for two types of materials from Alleged Victim 1: (i) metadata and/or the native form of three documents that Alleged Victim 1 provided to the Government, and (ii) narrowly tailored communications between Alleged Victim 1 and specific individuals detailed below.

The Government alleges that Alleged Victim 1 was sexually assaulted by Tal and another male during Memorial Day Weekend 2011 (i.e., between May 27, 2011 and May 30, 2011), while she was an overnight guest in Tal's Hamptons house. To date, the Government has produced limited discovery relating to Count Two. It includes (i) two undated photographs that were taken not in the Hamptons, but in Manhattan, and an undated photograph of ████████; (ii) a purported email chain between Alleged Victim 1 and her mother from June 2011; (iii) screenshots of a contact card for Oren and a redacted contact card for ████████; and (iv) an undated resume of ████████.

i. **Metadata and Native Documents**

The Government opted to collect materials from witnesses in a mostly non-native form

(i.e., screenshots or screen recordings).[2] This includes the three undated photographs referenced above, which Alleged Victim 1 produced to the Government as PDFs without metadata. Without this data, the defense cannot confirm when the photos were taken, which is crucial to establishing the timeline of events. The defense seeks the native-file versions of just three photos—which counsel for Alleged Victim 1 emailed to the Government on November 18, 2024—and the related metadata.

Separately, the defense seeks the native version of a full email chain that Alleged Victim 1 produced to the Government, referenced above in (ii). Since the inception of this case, the Government consistently represented that the acts underpinning Count Two occurred in the Hamptons in July 2011.[3] The defense spent months conducting an investigation in reliance on that representation and only learned of a possible change in the date of occurrence while reviewing 3500 materials that were produced in October 2025. Unbeknownst to the defense, in May 2025, counsel for Alleged Victim 1 informed the Government that Alleged Victim 1 had discovered an email sent to her mother that "pins [the incident] to Memorial Day weekend 2011," as opposed to July 2011.

Rather than producing the email as maintained in the system of record—Gmail—the Government turned over a PDF generated by Apple Mail. The Gmail-native version of the email will reflect how the communications exist in the system of record, including native threading, timestamps, and message sequence, and is necessary to test the accuracy and authenticity of any secondary reproduction.

---

[2] Since April, the defense has asked the Government to either provide metadata or, for non-native materials, the date it believes each photo or video was created (i.e., taken or recorded). Notwithstanding repeated requests, we have not yet received this.

[3] Alleged Victim 1's civil lawsuit also reflects July 2011 as the date of occurrence.

Accordingly, the defense seeks the following:

**Request 1.** The Gmail-native version of a full email chain between Alleged Victim 1 and ███████████████, ███████████████, sent in June 2011, which was produced to the Government in November. (This subpoena seeks the email as maintained in the system of record—Gmail—and not what the Government turned over (a PDF generated by Apple Mail)); and

**Request 9.** Metadata associated with three photographs produced by Alleged Victim 1 to the Government. For reference, counsel for Alleged Victim 1 emailed the Government these photos on November 18, 2024.

Alleged Victim 1 concedes that Requests 1 and 9 are "narrowly targeted and relate to evidence provided to the government." Mot. at 8. However, her assertion that compliance with these requests requires the engagement of a "professional service" at Defendants' expense is baseless. A criminal defendant "need only show that the request is (1) reasonable, construed as "material to the defense," and (2) not unduly oppressive for the producing party to respond." *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), *as amended* (Feb. 20, 2008). Requests 4 and 9 seek only (1) the native Gmail version of an email chain that Alleged Victim 1 has already produced to the Government, and (2) basic metadata associated with three photographs she likewise produced. Exporting an email chain in native format and preserving associated metadata are routine, user-level functions of Gmail and ordinary smartphones; they do not require forensic analysis, specialized technical expertise, or third-party vendors. Alleged Victim 1 identifies no technical obstacle, burden, or complexity—only a preference to shift ordinary compliance costs to the defense.

Nor is there any equitable basis to impose such costs here. Alleged Victim 1 has parallel civil litigation arising from the same nucleus of facts and would, in the ordinary course, be required to preserve and produce these same materials in native form. The subpoena merely seeks to test the accuracy and completeness of evidence she affirmatively provided to the Government—evidence on which the prosecution intends to rely.

8

### ii.  Communications Between Alleged Victim 1 and Other Individuals

The Defendants also seek six categories of communications from Alleged Victim 1.

    a. **Request 2.** Communications between [Alleged Victim 1] and Oren Alexander, Alon Alexander, or Tal Alexander, including but not limited to text messages, Google chat messages, WhatsApp messages, emails, and messaging on social media platforms such as Facebook and Instagram.

Request 2 seeks communications between Alleged Victim 1 and any of the Alexanders, with whom she says she communicated, particularly by Google chat.[4] Alleged Victim 1's characterization of this request as a burdensome "fishing expedition" is misplaced. The request seeks only electronic communications between Alleged Victim 1 and any of the Alexanders—individuals with whom she affirmatively claims she communicated, including via Google Chat.

Moreover, Alleged Victim 1 has repeatedly represented that she never communicated with the Defendants after her respective assault by Oren and Tal. Accepting her representation as true, the universe of potentially responsive material is necessarily limited and does not require a search across "eleven communications platforms" spanning decades. The request does not seek speculative third-party communications or broad categories of data; it seeks direct communications between the accuser and the accused—core evidence routinely discoverable and plainly relevant. Alleged Victim 1's acknowledgment that an initial review located a Facebook "friend request" from Oren in 2011 only underscores the appropriateness of the request and demonstrates that responsive material exists. Finally, the Defendants are not required to supply phone numbers, email addresses, or social media handles to obtain communications to which Alleged Victim 1 herself was a party.

    b. **Request 3.** Communications between Alleged Victim 1 and ▮▮▮▮▮▮▮▮. (As noted in the subpoena, this request seeks communications with the

---

[4] In an October 4, 2024, meeting with the Government, Alleged Victim 1 stated: "She remembered chatting with one or both of the brothers on Google Chat."

9

individual referred to as "███████" in the contact card produced to the Government by Alleged Victim 1.)

Request 3 seeks communications with ███████, Alleged Victim 1's friend who she claims invited her to the Hamptons in 2011. Alleged Victim 1 objects to this request because it does not specify a timeframe for the request. Based on Alleged Victim 1's interviews with the Government, the defense incorrectly believed that Alleged Victim 1 only knew ███████ for a limited period of time. In light of Alleged Victim 1's representation, the Defendants propose to limit this request to May 1, 2011 through June 4, 2011, and for communications that concern the trip to the Hamptons for Memorial Day Weekend. The start date is May 1, 2011, because Alleged Victim 1 has accused ███████ of working with Oren and Tal to facilitate her sex trafficking on Memorial Day weekend, after Oren allegedly raped Alleged Victim 1 earlier in May 2011. The end date of June 4, 2011 aligns with the responsive periods of previous subpoenas issued by the Court.

    c. **Request 4**. Communications sent or received by Alleged Victim 1 between May 22, 2011 and June 4, 2011, that mention or concern her trip to the Hamptons for Memorial Day Weekend 2011.

Alleged Victim 1's objection to Request 4 fails for the same reason as her objections to Requests 1 and 9. Request 4 is narrowly confined to a two-week period and to communications concerning a single, discrete Memorial Day Weekend 2011 trip. That compliance may require searching across phones, email accounts, or messaging platforms does not transform a routine, targeted production into a burdensome one; multiple devices and platforms are a feature of modern communication, not a basis to quash a subpoena or shift costs. This is not a fishing expedition. Indeed, this request would have produced the very email discussed in Request 1, in which Victim 1 states that the guys were "total assholes. It was a good time though." Such communications are

10

admissible as contemporaneous posts reflecting present sense impressions and/or prior inconsistent statements.

    d. **Request 5.** Communications sent or received by Alleged Victim 1 between July 24, 2024 and the date of this subpoena, that mention or concern Oren Alexander, Alon Alexander, Tal Alexander, the Alexander Brothers, the Alexander Bros.

A subpoena for documents may be quashed if their production would be "unreasonable or oppressive," but not otherwise. *Nixon*, 418 U.S. at 698. Like the previous 17(c) subpoena issued by this Court for Instagram data related to the allegations against the Alexanders, the fifth request is reasonably calculated to gather highly relevant and probative evidence of motive, credibility, and bias—all central issues in this case. It seeks communications sent or received by Alleged Victim 1 that mention or concern Oren Alexander, Alon Alexander, Tal Alexander, the Alexander Brothers, or the Alexander Bros, between July 24, 2024 and the date of this subpoena. The request begins on July 24, 2024, which is the date Alleged Victim 1 publicized her allegations against the Defendants in an article published by the New York Times. These are not hypothetical communications. Alleged Victim 1 has told the Government that after she was quoted in the New York Times, on July 24, 2024, numerous people reached out regarding the Alexanders (including ▮▮▮▮▮▮▮▮, who is the subject of Request 6, and ▮▮▮▮▮▮, who is the subject of Request 7), making it reasonable to seek contemporaneous communications reflecting those contacts. This request has a defined temporal window and a finite set of search terms. It mirrors prior subpoenas already granted by the Court, and it is not unduly burdensome. Conducting a targeted electronic search using specified names or phrases is a routine task that does not require professional services, forensic processing, or cost-shifting to Defendants. Rule 17(c) does not permit a witness to avoid production of relevant, term-limited materials by invoking generalized burden arguments.

e. **Requests 6, 7, and 8.**

The sixth, seventh and eighth requests seek communications with three accusers with whom Alleged Victim 1 discussed her allegations against the Alexanders.

- **Request 6 (Kate Whiteman):** Kate Whiteman, the first civil plaintiff to sue Oren and Alon Alexander, contacted Alleged Victim 1, including by email and WhatsApp, and during their communications, provided Alleged Victim 1 with a photograph of a male individual. According to Alleged Victim 1, this photo allowed her to subsequently identify one of the men who assaulted her in the Hamptons. During an October 2024 interview with the Government, Alleged Victim 1 was shown a series of photographs and identified one individual as "the guy from the weekend in the Hamptons."

  Accordingly, in Request 6, the Defendants sought: All communications between Alleged Victim 1 and Kate Whiteman between July 24, 2024 and the date of this subpoena, that mention or concern Oren Alexander, Alon Alexander, Tal Alexander, the Alexander Brothers, the Alexander Bros, or ███████. (███████ is the individual who Victim 1 identified as the second perpetrator.)

- **Request 7 (███████):** Alleged Victim 1 identified ███████ as another alleged victim of one of the Alexander brothers who Alleged Victim 1 met in 2012 or 2013, and with whom she communicated about her allegations. ███████ reached back out to Alleged Victim 1 after the recent news cycle regarding the civil and criminal litigation.

  Accordingly, in Request 7, the Defendants sought: All communications between Alleged Victim 1 and ███████ that mention or concern Oren Alexander, Alon Alexander, Tal Alexander, the Alexander Brothers, the Alexander Brothers, or ███████.

- **Request 8** ███████

The Defendants will withdraw Request 7 and Request 8.

Request 6 seeks communications between Alleged Victim 1 and another individual—a conversation that Alleged Victim 1 has told the Government that she, in fact, had. Request 6 is time-limited to the period when Alleged Victim 1 acknowledges those communications occurred. Requests for known communications with identified individuals are not fishing expeditions,

particularly where Alleged Victim 1 has affirmatively told the Government such communication exists.

The most compelling argument for relevance is that the communications directly concern Alleged Victim 1's identification of the alleged perpetrators. The fact that ▋ provided a photograph that allowed Alleged Victim 1 to subsequently identify one of the men who allegedly assaulted her makes these communications highly relevant to the reliability and origin of Alleged Victim 1's identification. The Second Circuit consistently emphasizes the importance of reliable identification evidence in criminal cases. *See, e.g., United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990) (discussing the importance of identification evidence). Notably, months later, Alleged Victim 1 learned that she had misidentified ▋. Counsel for ▋ represented that ▋ was out of the country during the relevant time, which U.S. Government records have since confirmed. Accordingly, the sought communications also likely contain prior statements by Alleged Victim 1 that are inconsistent with her later statements to the Government, particularly regarding the identification process or the events themselves. *See* Fed. R. Evid. 613.[5]

Nor does compliance impose an undue burden. Alleged Victim 1 is uniquely positioned to identify and search for these communications. The Defendants cannot produce the contact information Alleged Victim 1 requests because they cannot produce materials they do not possess. And, that the Government did not previously obtain these communications from the witnesses is not a basis to quash the subpoena. Rule 17(c) does not permit a witness to avoid production of relevant, targeted communications by invoking generalized claims of burden or by demanding that

---

[5] Further, if the Government intends to introduce any portion of Alleged Victim 1's statements or identification process, including of Tal Alexander, the defense has a right to introduce the complete context, including these communications, under the rule of completeness. Fed. R. Evid. 106.

13

Defendants supply contact information for conversations in which Alleged Victim 1 herself participated.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court deny Alleged Victim 1's motion to quash.

Dated:   New York, NY
        January 8, 2026

Respectfully submitted,

/s/ *Milton L. Williams*
Milton L. Williams
Deanna M. Paul
Alexander Kahn
Walden Macht Haran & Williams LLP
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
mwilliams@wmhwlaw.com
dpaul@wmhwlaw.com
akahn@wmhwlaw.com

*Counsel for Tal Alexander*

/s/ *Marc Agnifilo*
Marc Agnifilo
Teny Geragos
Zach Intrater
Agnifilo Intrater LLP
140 Broadway, Ste. 2450
New York, NY 10005
Tel: (646) 205-4350
marc@agilawgroup.com
teny@agilawgroup.com
zach@agilawgroup.com

*Counsel for Oren Alexander*

/s/ *Howard Srebnick*

Howard Srebnick
Jackie Perczek
Black Srebnick
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
hsrebnick@royblack.com
jperczek@royblack.com

Jason Goldman
The Law Offices of Jason Goldman
275 Madison Avenue, 35th Floor
New York, NY 10016
Tel: 212-466-6617
jg@jasongoldmanlaw.com

*Counsel for Alon Alexander*

15