UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

UNITED STATES OF AMERICA,       :
                               :

    -v-                          :
                               :

ALON ALEXANDER, OREN      :
ALEXANDER,                      :     Case No. 24-CR-676-VEC
and TAL ALEXANDER,         :

           Defendants.         :
                               :

------------------------------------------------------- X

## VICTIM-6'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO QUASH RULE 17(c) SUBPOENA BY DEFENDANT TAL ALEXANDER

Non-party Victim-6 brings this motion to quash Requests 2 and 4 (the "Requests") of Defendant Tal Alexander's Rule 17(c) subpoena (the "Subpoena") for electronic data on the grounds that the Requests are overbroad, non-specific, and principally serve as an impermissible fishing expedition.[1]    Moreover, the Subpoena seeks materials that are neither relevant nor admissible to the defense.    Accordingly, the Court should quash Requests 2 and 4 of the Subpoena.

### I.    Background

Defendants Alon Alexander, Oren Alexander, and Tal Alexander (collectively, "the Alexander brothers") are charged in an eleven-count indictment with, among other things, sex trafficking and inducement to travel to engage in unlawful sexual activity.    Dkt. No. 207.    As alleged, Defendants "worked together and with others known and unknown, to repeatedly and violently drug, sexually assault, and rape dozens of female victims."    *Id*. ¶ 1.    Victim-6 is one such victim.    Counts 8 and 9 of the indictment charge Defendant Tal Alexander with sex trafficking and

---

[1] On January 12, 2026, counsel for Victim-6 informed counsel for Defendant Tal Alexander that Victim-6 provided to the Government a post responsive to Request 1, which was produced by the Government during discovery. Victim-6 does not otherwise challenge Requests 1 and 3 at this time because she does not have other responsive information in her possession, custody, or control.

inducement to travel to engage in unlawful sexual activity, respectively, in connection with an incident in August 2014. *Id.* ¶¶ 14, 15. Trial is scheduled to commence on January 20, 2026. Dkt. No. 241.

Since Defendants' arrest, discovery in this case has been extensive. *See, e.g.*, Dkt. No. 159 at 1 (defense letter stating "the government is . . . producing substantial discovery" including "5.6 TB in material"); Dkt. No. 162 at 2 (noting government's disclosure of § 3500 material). Notwithstanding the voluminous discovery, including evidence regarding Victim-6, on December 4, 2025, just over one month before trial is set to begin, Defendant Tal Alexander served Victim-6 with a subpoena for several broad categories of information from Victim-6's Instagram account.[2] *See* Ex. A. The Subpoena requests, among other things, the following documents and materials from Victim-6's account:

> *Request 2*: All content data edited or archived (including stories and archived stories, past and current bios and profiles, posts and archived posts, captions and comments), and all associated metadata, between December 11, 2024 and the date of this subpoena;

> *Request 4*: All content data sent, created, or stored (whether created, uploaded, or shared by or with the account), and all associated metadata, between December 11, 2024 and the date of this subpoena, that mentions or concerns Oren Alexander, Alon Alexander, Tal Alexander, the Alexander Brothers, or the Alexander Bros.

## II.     Legal Standard

Federal Rule of Criminal Procedure 17 provides that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

---

[2] Defendant Tal Alexander also provided notice of a subpoena to Meta seeking metadata in connection with Victim-6's Instagram account. During the parties' meet and confer on January 2, 2026, counsel stated that Defendant is not opposing Meta's objection to the subpoena. Accordingly, Victim-6 does not challenge the Meta subpoena but reserves her right to do so if circumstances change.

Rule 17 subpoenas are "*not* intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (emphasis added). Rather, they "should be used only as a mechanism for obtaining specific admissible evidence." *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (internal quotation marks and citation omitted). It is not enough that the materials "contain information which *could* be admissible." *Id.* (citation omitted) (emphasis added). A party seeking the production of documents pursuant to a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700. The party must show, among other requirements, that the materials "are not otherwise procurable reasonably in advance of trial by exercise of due diligence," "the party cannot properly prepare for trial without such production," and "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699–700. The Subpoena fails these requirements in every aspect.

## III.  Argument

Requests 2 and 4 of the Subpoena are deficient under *Nixon*. First, the Requests fail to reasonably specify admissible evidence, evincing Defendant's interest in an overbroad fishing expedition. Second, the Requests fail to identify relevant and admissible materials.

### a.  The Subpoena requests are not specific.

A Rule 17(c) subpoena "must be able to reasonably specify the information contained or believed to be contained in the documents sought." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). Importantly, "[s]ubpoenas seeking any and all materials, without mention of specific admissible evidence, justify the inference that the defense is engaging in the type of fishing expedition prohibited by *Nixon*." *Id*. at 513 (internal quotation marks and citation omitted).

While "the words 'any' and 'all' do not automatically render a document request so broad

that it must be quashed," *United States v. Cole*, No. 19-CR-869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021) (citation omitted), courts in this district routinely quash subpoena requests that seek "any" or "all" materials—even if the request is confined to a specific topic or date range—where such requests fail to identify specific admissible evidence. *See, e.g., United States v. Avenatti*, No. (S1) 19-CR-373 (PGG), 2020 WL 508682, at *5–6 (S.D.N.Y. Jan. 31, 2020) (quashing subpoena for all text messages and emails referencing defendant over a nine-month period as "not sufficiently specific"); *United States v. Xu*, No. 23-CR-133-5 (JMF), 2024 WL 4504352, at *2 (S.D.N.Y. Oct. 16, 2024) (finding defendant's subpoenas asking for "all documents and communications exchanged between [the subpoena recipient] and the government" that "relat[e] to" defendant and others to be "virtually limitless in scope"); *Mendinueta-Ibarro*, 956 F. Supp. 2d at 512, 515 (S.D.N.Y. 2013) (granting motion to quash subpoena asking for "any and all writings and records" relating to NYPD's contact with a witness because it "lacks the requisite specificity"); *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (upholding order to quash subpoenas requesting "all e-mails or other communications" authored or received relating to "almost thirty paragraphs from the indictment" because the request is "overly broad" and a "fishing expedition"); *United States v. Percoco*, No. 16-CR-776 (VEC), 2018 WL 9539131, at *2 (S.D.N.Y. June 14, 2018) (Caproni, J.) (quashing subpoena for having "generalized" requests with "all" language).

Subpoena Requests 2 and 4 fail to meet *Nixon*'s specificity requirement. Neither seeks any "specific admissible evidence." *Skelos*, 2018 WL 2254538, at *2; *see Nixon*, 418 U.S. at 700. Rather, both are overbroad requests for "[a]ll content data" sent, created, stored or archived in Victim-6's Instagram account between December 11, 2024 and the date of the Subpoena. Requests of this nature are consistently rejected by courts in this district. *See, e.g., United States v.*

*Shestakov*, No. 23-CR-16 (JHR), 2025 WL 507523, at *2–3 (S.D.N.Y. Feb. 14, 2025) (quashing requests for "any 'communications' between certain individuals" within five-month period for failing to comply with *Nixon's* specificity requirement); *United States v. Menendez*, No. (S4) 23-CR-490, 2024 WL 2801960, at *2 (S.D.N.Y. May 31, 2024) (quashing requests for "any and all documents and communications" with law enforcement because defendant "has not provided any specificity about the information he believes is contained in the documents or why he is entitled to it."). And Defendant simply cannot meet his specificity burden, particularly where, as here, the alleged incident occurred more than *11 years ago*. Defendant is instead seeking sweeping categories of documents in hopes of uncovering helpful—but not relevant or admissible—information. Indeed, "merely hop[ing] something useful will turn up" is insufficient under *Nixon*. *United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) (citation omitted). And even if Defendant was able to identify specific material sought by the Requests, the Requests would still be overbroad and unduly burdensome, particularly for a non-party victim, as they seek data that is not readily attainable or may not even exist, such as archived or edited data and metadata.

Request 4 nearly mirrors a request in *Avenatti* that was quashed by the court. There, the court held that a request for "all communications that reference [defendant] over a nine-month period following [defendant's] arrest . . . sweeps too broadly" and "has the earmarks of a fishing expedition." *Avenatti*, 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020) (internal quotation marks and citation omitted). The court found that the defendant's "speculation" as to what the third-party's text messages and emails might have said about the defendant in the nine-month period was inadequate. *Id*. Request 4 should be rejected for the same reasons. Defendant seeks "all" content concerning Defendants over a 12-month time period, without any mention of what might exist in Victim-6's account. And Request 2 fares no better. Defendant seeks all edited or archived

content over a 12-month period, without any regard for subject matter. Just like the rejected request in *Avenatti*, Requests 2 and 4 have the hallmarks of a fishing expedition. The Subpoena should be quashed on this ground alone.

      **b.   The Subpoena requests irrelevant and inadmissible information.**

The Subpoena also fails to identify relevant and admissible material, which are further grounds to quash.

A party seeking to enforce a subpoena issued under Rule 17(c) must demonstrate "a sufficient likelihood" that the documents or information sought are "relevant to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. Further, a party seeking production pursuant to Rule 17(c) must demonstrate that the requested materials are admissible as evidence at trial. *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (explaining that under *Nixon*, "a party must make a reasonably specific request for information that would be both relevant and admissible at trial."). Accordingly, courts in this district "preclude [the] production of materials whose evidentiary use is limited to impeachment." *United States v. Cherry,* 876 F. Supp. 547, 553 (S.D.N.Y.1995) (collecting cases); *Nixon,* 418 U.S. at 701.

As a threshold matter, because the Requests seek vast swaths of documents and information, there is "no meaningful way to evaluate the relevance or admissibility of the unspecified evidence that would theoretically be responsive." *Xu*, 2024 WL 4504352, at *2; *Skelos*, 2018 WL 2254538, at *3 ("Because Defendants do not know the universe of documents they are requesting, they cannot meet their burden of showing that these documents would be admissible at trial."). That is grounds alone to quash the Requests. It is not enough that the information sought may be relevant at some later, unidentified time. "Rule 17(c) requires a showing that the materials sought are currently admissible in evidence." *Cherry*, 876 F. Supp. at 552 (quoting *United States v. Rich*, No. 83-CR-579 (SWK), 1984 WL 845, at *3 (Sept. 7, 1984));

*see also United States v. Jenkins*, No. 02-CR-1384 (RCC), 2003 WL 1461477 at *5 (S.D.N.Y. Mar. 21, 2003) ("To satisfy [the specificity] prong, the documents must meet the test of relevancy and admissibility when they are sought; a showing of potential relevance or admissibility is not sufficient.").

Defendant makes no effort to identify specific documents that are relevant and admissible. Nor could he, as it is clear that the Requests sweep in irrelevant and inadmissible materials. Requests 2 and 4 seek content data between December 11, 2024 and December 3, 2025. But the alleged incident occurred over 11 years ago. Thus, the Requests inevitably capture content that is wholly irrelevant to this case. For instance, Request 2 asks for all edited or archived content data over nearly one year that would include Victim-6's posts and stories of routine events in daily life that are shared with friends and family and have nothing to do with this case. And the reference to the Alexander brothers in Request 4 does not remedy this defect—all data that mentions the Alexander brothers within a one-year period is still likely to include information that, at best, is inadmissible hearsay.

At bottom, the Requests are an attempt to gather impeachment evidence. But this is not allowed under Rule 17. "Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach." *United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016); *see Nixon*, 418 U.S. at 701–02; *Cherry*, 876 F. Supp. at 553; *Skelos*, 2018 WL 2254538, at *2 (collecting cases). For instance, in *United States v. Constantine*, the court quashed a Rule 17(c) subpoena because, among other things, the subpoena "would only be relevant for purposes of impeaching [the subpoena recipient's] testimony" and held that "documents sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena." 2023 WL 3045408, at *2 (citing *United States v. Nektalov*, No. (S2) 03-CR-828

(PKL), 2004 WL 1574721, at *2 (S.D.N.Y. July 14, 2004)); *see also Cherry*, 876 F. Supp. at 553

("While [documents requested] may undoubtedly be used to impeach witnesses who testify at trial,

admissibility for that narrow purpose does not qualify them as evidentiary.").  Accordingly, the

Requests are improper under Rule 17(c).

**IV.    Conclusion**

For the reasons set forth above, the Court should quash Requests 2 and 4 of the Subpoena.


Dated: January 12, 2026
     New York, New York


By:    /s/ Lauren Schorr Potter
     Lauren Schorr Potter
     PATTERSON BELKNAP WEBB &
     TYLER LLP
     1133 Avenue of the Americas
     New York, NY 10036
     Telephone: (212) 336-2117
     lspotter@pbwt.com

     Jessica-Wind Abolafia
     SANCTUARY FOR FAMILIES
     30 Wall Street
     New York, NY 10005
     Telephone: 212-349-6009
     jabolafia@sffny.org


     *Attorneys for "Victim-6"*