UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

OREN ALEXANDER, ALON ALEXANDER,
and TAL ALEXANDER,

Defendants.

Case No. 24-CR-676 (VEC)

## DEFENDANTS' MOTIONS AS TO THE S-6 INDICTMENT

**BLACK SREBNICK**
Howard Srebnick
Jackie Perczek
201 South Biscayne Blvd.
Suite 1300
Miami, FL 33131
(305) 371-6421

*Counsel for Alon Alexander*

**WALDEN MACHT HARAN & WILLIAMS LLP**
Milton L. Williams
Deanna Paul
Alexander Kahn
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335-2381

*Counsel for Tal Alexander*

**AGNIFILO INTRATER LLP**
Marc Agnifilo
Teny Geragos
Zach Intrater
140 Broadway, Ste. 2450
New York, NY 10005
(646) 205-4350

*Counsel for Oren Alexander*

## Table of Contents

INTRODUCTION ............................................................................................................. 1

THE THREE RECENT SUPERSEDING INDICTMENTS ........................................ 2

1.   The Differences Between the S-3 and S-4 Indictments ................................... 2

2.   The Difference Between the S-4 and S-5 Indictments ...................................... 4

3.   The Difference Between the S-5 and S-6 Indictments ...................................... 4

4.   The Requirement of the Defense Moving on the Operative Indictment............................ 5

DEFENDANTS' PRETRIAL MOTIONS IN REGARD TO THE S-6 INDICTMENT ............... 6

1.   Counts One and Eleven Should Be Severed ..................................................... 7

2.   Count Twelve Should Be Severed .................................................................... 9

3.   The ██████████████████ Birth Certificate Is Not Authentic................................11

4.   The Counts Charging Sex Trafficking or Sex Trafficking Conspiracy Should Be Dismissed For Failure to State an Offense ............................................................ 12

5.   Counts 4 and 9, Charging Inducement to Travel, Should Be Dismissed for Failure to State an Offense. ............................................................................................ 15

6.   Counts Ten and Eleven Should Be Dismissed For Improper Venue................................ 16

7.   The Defendants Request A Ruling On Which Uncharged Acts Will Be Admitted.......... 16

## **INTRODUCTION**

Defendant Oren Alexander, joined by Tal and Alon Alexander, makes these pretrial motions regarding the Sixth Superseding Indictment (S-6) filed by the government on January 15, 2025,[1] two business days before jury selection.  In the last two months, the government has superseded the indictment three times. The S-4 Indictment was filed on November 20, 2025. The S-5 Indictment was filed on January 8, 2026.  The S-6 Indictment was filed on January 15, 2026.

On November 6, 2025, defense counsel explicitly asked the Court to sever any counts that the government added to what at the time was the S-3 Indictment, stating, "what I think the Court can do, I think, is, the Court can say 'we're trying the S-3 Indictment on January 5.  You guys investigate and have at it, but if you get something different, something new, you have to put it in a different charging instrument.'" Nov. 6, 2025 Tr. at 22.  (quotation marks added). Even in the face of this recorded prophesy, the government went on and charged not one, but three, more superseding indictments.

The S-4, S-5 and S-6 Indictments were not merely ministerial changes in dates or some other innocuous modification.  *See United States v. Rojas-Contreras*, 474 U.S. 231 (1985) (superseding indictment filed one day prior to trial changing only a single date did not necessitate a continuance).   For instance, the S-4 Indictment differs from the S-3 Indictment, filed on June 10, 2025, in at least nine different ways, including adding a fifteen-year mandatory count.  The S-5 Indictment differs from the S-4 Indictment by adding yet another serious count.   The S-6

---

[1] The United States Court of Appeals for the Second Circuit ruled in *United States v. Ng Chong Hwa*, 161 F.4th 127 (2d Cir. 2025) that where a defendant challenges an indictment that was later superseded, that defendant does not preserve for appellate review challenges made against the superseded indictment.  Accordingly, counsel must file pretrial motions as to the Sixth Superseding Indictment or otherwise be deemed to have waived challenges previously made to the earlier Superseding Indictment.

Indictment added the mens rea of knowingly to Count Eleven and, more significantly, eliminated five pages from the indictment, including all of the "speaking allegations" – that is, any descriptions of manner and means and other alleged acts giving contour and content to the conspiracy charged in Count One.

## THE THREE RECENT SUPERSEDING INDICTMENTS

### 1. The Differences Between the S-3 and S-4 Indictments

First, the S-4 Indictment adds a count of Sexual Exploitation of a Minor as Count 11, charging that on or about April 16, 2009, Oren Alexander "employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for purposes of producing a visual depiction of such conduct," in connection with a person who was allegedly seventeen years and ten months old, whom the government alleges was incapacitated.

Second, the S-4 Indictment also changes the starting date of the charged conspiracy in Count One from 2009 to 2008, but does not contain any additional facts, or any facts at all, tending to indicate that the conspiracy started in 2008, as opposed to 2009. [2]

Third, the S-4 Indictment charges a different statutory subsection than the S-3 Indictment. Specifically, the S-3 Indictment charged violations of Section 1591(a)(1) and (b)(1) whereas the S-4 Indictment charges violations of Sections 1591 (a)(1), (b)(1) as well as (b)(2). Section (b)(2), added to the S-4 Indictment, provides that "if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited

---

[2] Indeed, the Court Order, issued December 23, 2025, held that the government had failed to demonstrate in an *ex parte* submission that the defendants formed the conspiracy charged in Count One prior to April 2009 (*i.e.* the creation of the 2009 Video). ECF 269.

had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, (the punishment for such offense is) not less than 10 years or for life."[3]

Fourth, the S-4 Indictment eliminated from the conspiracy count the following language which was included in the S-3 Indictment: "to wit, Alon Alexander, Oren Alexander and Tal Alexander and others known and unknown agreed to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize and solicit female victims, including but not limited to Victim-1, Victim-2, Minor Victim 3, Victim 4, Victim 5 and Victim 6 as alleged in Counts Two, Three, Five, Seven and Nine of this Indictment…"  The government made this change to the S-3 Indictment after defense counsel argued that the conspiracy charged in Count One should be contained to alleged victims 1-6 and Counts 2, 3, 5, 7 and 9, as listed in Count One.

Fifth, whereas the S-3 Indictment alleged that the brothers procured and provided to women and girls cocaine, mushrooms and GHB, the S-4 Indictment added to this list Ambien, Xanax, Quaaludes and MDMA.

Sixth, the S-4 Indictment added the New York State offense of Penal Law Section 130.20 (charging the misdemeanor offense of sexual misconduct) to Count Four as one of five penal law sections allegedly violated in that count.

Seventh, as to Count Five, the S-4 Indictment changed the charging language and one of the charged subsections of Section 1591 by eliminating reference to "participation in a venture" under Section 1591(a)(2), and also eliminating Section 1591(b)(1) as a charged subparagraph.

---

[3] As a result of this change, the government's stated theory for Count 5 changed as well, contrary to the representations made in the government's motions in limine.  *See* Gov't MIL, at n. 1 ("For Count Five, the government intends to proceed at trial solely on sex trafficking of a minor under 18 U.S.C. § 1591(b)(2), not sex trafficking by force, fraud, or coercion under 18 U.S.C. § 1591(b)(1).")

Eighth, as to Count Seven, the S-4 Indictment removed Section 1594(a) (regarding attempts to commit violations of 1591) from the charged subsections based on the Court's ruling that the five-year statute of limitations for attempted sex trafficking had expired. *See* Sealed Opinion and Order, p.16.

Ninth, as to Count Nine, the S-4 Indictment added New York Penal Law Section 130.25 (the felony offense of rape in the third degree) and eliminated New York Penal Law Section 130.52 (the misdemeanor offense of forcible touching).

Of these nine changes, far and away the most substantial is the addition of the 2009 Sexual Exploitation of a Minor count. As set forth below, this count presents unique investigative challenges, and requires more time to investigate than the defense has been afforded.

2.   The Difference Between the S-4 and S-5 Indictments

The S-5 Indictment added the charge of Sexual Abuse by Physical Incapacitation from January 2012, sixteen years ago. Initially, the government charged that alleged Victim was drugged and sexually assaulted by Oren and Alon Alexander. The S-5 Indictment for the first time, through Count Eleven, charges an alternative theory, specifically that alleged Victim 7 voluntarily became intoxicated, and that her intoxication was in no way due to the actions of any of the defendants. At the defendants' arraignment on the S-5 Indictment on January 13, 2026, defense counsel moved to dismiss Count Eleven for failing to include a required statutory element, specifically the mens rea of knowingly, in the charging language.

3.   The Difference Between the S-5 and S-6 Indictments

The government conceded that the S-5 indictment did not allege an offense, and so the S-6 Indictment corrects the charging language to add the mens rea of "knowingly." In addition, the S-6 Indictment eliminated five pages of the methods and means by which the alleged sex trafficking conspiracy of Count One was conducted. By removing any reference to methods and

means, the government has now charged a new conspiracy of unknown breath and uncertain content.  It is worth noting that when the Court ruled on which other uncharged acts were admissible to prove the conspiracy, the Court relied on the allegations in the conspiracy to determine which acts were relevant and admissible.  Now that the Court has ruled on the conspiracy acts, the government – on the very eve of trial – has changed the conspiracy count by removing all defining language that defined the conspiracy.

The defense should not be forced to trial on a conspiracy count that was changed at the last minute.  For the reasons set forth below, the court should sever Count One.

4.  <u>The Requirement of the Defense Moving on the Operative Indictment</u>

The defendants filed extensive pretrial motions as to the S-3 Indictment.  Because the S-4 Indictment is different from the S-3 Indictment in at least these nine different ways, and because the S-5 Indictment is different from the S-4 Indictment, and because the S-6 Indictment is different from the S-5 Indictment the defendants are legally required to make pretrial motions specifically as to the S-6 indictment, which is presumably the indictment on which this trial will be held.[4]  In *United States v. Ng Chong Hwa*, 161 F.4th 127 (2d Cir. 2025), the Second Circuit recently ruled that where a defendant raises legal challenges as to an indictment that was later superseded, the defendant fails to preserve for appellate review those legal challenges as to the superseded indictment.  Specifically, the Second Circuit stated that the defendant "made no motion to dismiss the Second Superseding Indictment, thus failing to preserve any objection to S-2's venue allegations for appellate review."  *Id.* at 138.  Following the clear guidance of the Second Circuit, the defendants are required to make a full set of new motions as to the S-6 indictment or run the

---

[4] Defendants were about to file motions as to the S-4 Indictment at the time the S-5 Indictment was filed.

risk that, if necessary, the Circuit will deem the motions made as to the S-3 Indictment unpreserved for appellate review.

For many years, Courts in this District and others have permitted the government to make last minute changes to indictments and forcing defendants to trial on the new indictment. The Second Circuit's *Ng* decision should put an end to this objectionable practice. By ruling that criminal defendants are legally obligated to move on the operative indictment, and that motions on indictments later superseded fail to preserve issues for appellate review, the Second Circuit has effectively condemned the practice of making last minute changes to indictments, and not providing defense counsel with a reasonable opportunity to consider and make pretrial motions on the new indictment.

## **DEFENDANTS' PRETRIAL MOTIONS IN REGARD TO THE S-6 INDICTMENT**

Defendants make the following pretrial motions as to the sixth Superseding Indictment.[5]

First, all of the defendants move to sever the Count One (changed most recently in the S-6 Indictment).

Second, defendant Oren Alexander, joined by Alon Alexander, moves to sever Count Eleven (added for the first time in the S-5 Indictment).

Second, defendant Oren Alexander moves to sever Count Twelve (added for the first time on November 20, 2025 in the S-4 Indictment) from the remaining counts.

Third, to the extent that the government will seek to admit a purported birth certificate from a former Soviet Republic, the defense asserts that this document lacks authenticity and that the government has thus far failed to establish that the document is authentic. In addition, any other

---

[5] Defendants respectfully incorporate by reference to these motions the motions previously filed in regard to the now superseded S-3 Indictment, including motions with the following Document Numbers: 76, 82, 95, 97, 99, 102, 103, 106, 110, 136, 138, 144, and 151.

document relying in whole or in part on the challenged birth certificate, such as a subsequent passport or driver's license or any other document, is likewise inadmissible in the absence of a showing that the original birth certificate is accurate and authentic.

Fourth, the counts of the S-6 Indictment charging Sex Trafficking or Sex Trafficking Conspiracy (Counts 1, 2, 3, 5, 6, 7 and 8) should be dismissed for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

Fifth, the counts of the S-6 Indictment charging Inducement to Travel (Counts 4 and 9) should be dismissed for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

Sixth, Counts 10 and 11 of the S-6 Indictment should be dismissed for improper venue.

1. Counts One and Eleven Should Be Severed

Count Eleven was added for the first time eight days ago. The new version of Count One was added two days. The Second Circuit has reversed a conviction where a defendant was not provided with a reasonable time to prepare for trial after a last-minute superseding indictment. *See United States v. Guzman*, 754 F.2d 482 (2d Cir. 1985). In *Guzman*, the government filed a superseding indictment the day before trial was scheduled to begin. The new indictment increased the scope of a charged drug conspiracy from two-days to two-years. Holding that the defendant should not have been compelled to start trial under these circumstances, the Second Circuit reversed the conviction on the drug conspiracy count, which was the count that was changed by the superseding indictment.

The Second Circuit rejected the precise argument the government is likely to make here, specifically that the discovery provided and the relevant evidence will not change with the addition of Count Eleven (Sexual Abuse by Physical Incapacitation) against alleged Victim 7. Rejecting this argument, the Second Circuit stated, "even though the same evidence may have been presented to prove the existence of a two-year conspiracy as would have been used on the indictment

7

charging a conspiracy of only two days, it cannot be disputed that in the proper presentation of a defense to the charge of a two-year conspiracy, counsel was required to review a far longer period of activity with his client." *Id.* at 486.

The Second Circuit further found that by wrongly crediting this prosecution argument, the trial court abused its discretion, holding that "by focusing on the prosecution's case and the fact that the evidence introduced at trial on the superseding indictment was the same as that which the government had expected to use at the first trial, the district court neglected to take into account the impact that the second indictment might have on defense theories of the case, and the resultant need for more extended preparation." *Id.* The Second Circuit concluded that "the district court abused its discretion in not granting defendant Guzman a reasonable continuance," and reversed the conviction as a result. By adding a new charge based on a theory not contained in the prior indictments, the government's last-minute change here is more prejudicial than was the change in Guzman, which did not involve a new count.

The Second Circuit's ruling in *Guzman* requires that the Court not compel the defendants to proceed to trial as scheduled on newly-added Count Eleven. The change in the S-5 Indictment and now the S-6 Indictment is material in that it requires the defendants to embark on a factual investigation that was not relevant until now. Until now, the government's theory as to Victim 7 was that defendants Alon and Oren Alexander drugged her and forced her to have sex against her will. For reasons only known to the government, at the last minute, the government included an alternative or back-up theory in the S-5 Indictment (and now the S-6 Indictment) as to Count Eleven, namely that Alon and Oren did not drug Victim 7 at all; that instead Victim 7 became intoxicated presumably of her own volition and that Alon and Oren Alexander had sexual contact with her while she was incapable of consenting. This is a completely different factual theory,

8

brought under a different statute (Section 2242 as opposed to Section 2241) and involves a completely different defense theory. Under these circumstances, the holding in *Guzman* requires that the Court not compel the defense to proceed to trial on the scheduled date.

The changes to Count One are even stranger than the new "backup theory" presented by Count Eleven. Through all the prior iterations of the Indictment, the government had outlined a certain set of manner and means through which the alleged conspiracy was effectuated. But the S-6 Indictment eliminates all of that language, and transforms Count One into a statutory allegations paragraph alone. Defendants have no idea whether this change has broadened the conspiracy alleged. Defendants also, of course, have no idea what the grand jury heard to cause them to vote on the new, stripped-down, Count One. But if the conspiracy in Count One is broader than that charged by the prior versions of the Indictment, the defense would need additional time to investigate and prepare. Because jury selection is starting on January 20, and these motions are being filed on January 17, Count One should be severed.

Accordingly, Counts One and Eleven should be severed from the rest of the indictment and tried separately at an appropriate time.

2.  Count Twelve Should Be Severed

Count Twelve charges Oren Alexander with the crime of Sexual Exploitation of a Minor in connection with alleged conduct from April 16, 2009, almost seventeen years ago. As noted in a letter to the Court from Oren Alexander's counsel dated November 23, 2025 (Dkt. 206) and which is incorporated by reference, this count was first charged on November 20, 2025. In light of the prejudice to Oren Alexander over being compelled to defend against a fifteen-year mandatory minimum count that was charged less than two months prior to the then-scheduled trial date, and relating to conduct from seventeen years earlier, Oren Alexander promptly moved on November

23, 2025, a mere three days after the S-4 Indictment was filed (and while it was still sealed) to sever that count from the remaining counts.  That motion to sever was denied.

However, since his original motion to sever this count, the prejudice from being forced to try this count along with the others has only increased.  As his counsel argued in open court, the alleged age of the female involved in the activity in this Count is established only by a █████████ ██████████████████████████████████.  If the ████████ birth certificate is to be credited (and there is no legal basis to do so), at the time of the alleged criminal activity, the female involved was ████████████████████████████.  Therefore, if her true birth date is ████████████████ prior to the date on her birth certificate, this event in Count Twelve transforms from a serious federal crime with a fifteen-year mandatory minimum sentence to no crime at all.

There is a serious reason to doubt the accuracy of the birth date on this purported foreign birth certificate. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████████████████████
███████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████.

As the defense has consistently maintained, the original records are located in a city that is in an active war. It is impossible to travel there safely. It is also unknown whether records maintained in that city are in an intact condition. Due to the central importance of the true birth date on a document purporting to be an authentic birth certificate, the defense requests that the court sever this count from the remaining counts so that counsel can conduct necessary investigation.

For the reasons stated, Counts One, Eleven and Twelve should be severed from the remaining counts and tried after the defense has had sufficient time to conduct an appropriate investigation, and has had a full opportunity to file meaningful pretrial motions and secure potentially expert testimony on these unusually complex issues. When the defense issued an explicit warning to the government about last-minute charges, especially in light of the Second Circuit's decision in *Ng*, requiring pretrial motions on the operative indictment, it was the government that made a severance necessary. For all the reasons stated both here and in our prior motions, Counts Eleven and Twelve should be severed.

3. The ████████████████ Birth Certificate Is Not Authentic

As of the date of this submission, the government has not undertaken any process to establish the authenticity of the challenged birth certificate. Accordingly, the Court should not permit the government to admit the birth certificate into evidence, nor should the government rely on the data in the inadmissible birth certificate. This includes any documents that would have necessarily relied on the challenged birth certificate, including a Passport, Driver's License or other document, for pedigree data including date of birth. Simply put, the sole basis for the birth

date included on these secondary documents is the challenged ████ birth certificate.  As a result, these other documents are unreliable and inadmissible.

4.  <u>The Counts Charging Sex Trafficking or Sex Trafficking Conspiracy Should Be Dismissed For Failure to State an Offense</u>

The Court ruled on defendants' motions against the S-3 Indictment to dismiss the Sex Trafficking and Sex Trafficking Conspiracy Counts. To the extent that the S-4, S-5 and S-6 Indictments are different from the S-3 Indictment concerning the Sex Trafficking Conspiracy Count (Count One) as well as several of the substantive Sex Trafficking Counts, the defendants incorporate the previously-filed motions as well as make the following arguments.

A commercial sex act is defined by statute as, "any sex act on account of which anything of value is given or received by any person."  Section 1591(e)(3).  In *United States v. Raniere*, the Second Circuit defined the phrase "on account of" in accordance with the Supreme Court's decision in *Rousey v. Jacoway*, 544 U.S. 320, 326 (2005), which held the phrase "on account of" to "require a causal connection between the term that the phrase 'on account of' modifies and the factor specified in the statute."  *Id.* at 326.  The *Rousey* decision further stated that "on account of" means "by reason of" or "because of."  *Id.* While the Supreme Court's *Rousey* decision was analyzing a bankruptcy provision under Title 11, United States Code, Section 522(d)(10)(E), the Second Circuit interpreted the phrase the same way for sex trafficking involving commercial sex, *see Raniere*, 55 F.4th at 364, and stated explicitly that it was relying on the Supreme Court's definition of "on account of" to give meaning to the same term in the sex trafficking context.

That the definition of commercial sex uses the phrase "on account of," rather than, for instance, the similar phrases "because of" or "in exchange for" is significant – both in general but specifically in light of the government's efforts to alter the connection between value and sex act. The phrase "on account of" connotes direct causation between two things, that one thing directly

caused the other.  In the case of commercial sex, the phrase requires that the sex act (whatever it may be) must have been directly caused by something of value (whatever it is).  That the sex act is defined broadly and is modified only by the word "any" does not diminish the requirement that there be a direct causal relationship between that sex act and the thing of value.  Similarly, that the thing of value is also modified only by the word "any," signifying that it too is to be expansively interpreted, likewise does not lessen the requirement connoted by the phrase "on account of" that the thing of value directly caused the sex act.

The key to the Supreme Court's definition of "on account of," as explicitly adopted by the Second Circuit in the *Raniere* case, is the direct causal relationship between two things, here the sex and the thing of value.  The Supreme Court in *Rousey*, 544 U.S. at 326 devoted a full paragraph to the phrase "on account of," including how the phrase has been interpreted by the Supreme Court in recent years.  Significantly, the *Rousey* decision charts its interpretation of the phrase "on account of" to the 1999 Supreme Court decision in *Bank of America Nat. Trust and Sav. Assn v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 450-451 (1999), another bankruptcy decision rendered only one year before Congress passed the Sex Trafficking statute in 2000.

In *Bank of America Nat. Trust*, Justice Souter, delivering the opinion of the Court, cited to four different statutes in the bankruptcy code using the phrase "on account of."  The Court noted that while the term "on account of" "harks back to accounting practice and means something like 'in exchange for' or 'in satisfaction,'" the better interpretation is "because of."  *Id.* at 452.  Six years later, the court in *Rousey* agreed that the phrase means both "because of" and "by reason of." Therefore, the sex act must be because of or by reason of the thing of value.  That the phrasing "on account of" connotes a close and direct causal relationship between two things is clear from the text of the phrase itself.  In addition, that Congress borrowed the term from the bankruptcy statute

13

underscores that the definition of commercial sex is indeed rooted in the terminology of commerce. Had Congress wanted a looser relationship between the thing of value and the sex act, it could have chosen a different connective phrase such as "influenced" or "contemplated." However, Congress chose a term connoting a direct causal relationship: "on account of."

The government's Sex Trafficking theory fundamentally changes the direct causal connection between the sex act and the thing of value explicitly required by both the statute's definition of commercial sex and the *Raniere* court's interpretation of it. The government here has adopted the unprecedented position that the thing of value is offered in exchange for something other than the actual sex act. As the Government stated in its Opposition to the Pretrial Motions, "**there is no bar to the 'thing of value' on account of which the sex act occurs contributing to a defendant's ability to recruit, entice, harbor, etc the victim**." *See* Gov'ts Mem. of Law in Opp'n To Defs.' Pretrial Mot. at 14. (emphasis added). The government is wrong because there is a bar to its interpretation of commercial sex, specifically that the government's description of commercial sex is plainly inconsistent with the definition in the statute. The government seeks to change the meaning of the phrase "on account of" to "one of the things that may contribute to," or "one of the things playing a role in." That is simply not what "on account of" means.

The government's argument seems to be that so long as the thing of value is a link in the chain leading to a sex act, that the definition of commercial sex is met. There has never been a case supporting the government's novel and inaccurate view. The reason there has never been such a case is because the Government's interpretation of commercial sex is so far afield of the statutory definition of a commercial sex act.

Indeed, the government has created a brand new federal sexual assault offense, one where the federal court has jurisdiction of any rape case if someone offered the purported victim

something of value to get her to the place where the rape occurred or to make it somehow more likely that a rape would take place. The truth is this is not merely a novel theory; it is an entirely new offense, one not created by Congress and one not remotely contemplated under the Sex Trafficking statute. Under these circumstances, "dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010); *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (affirming dismissal where the Government's proposed proof would not establish a crime within the terms of the statute); *United States v. Pacione*, 738 F.2d 567, 572 (2d Cir. 1984). By stating plainly its theory of sex trafficking, the Government has provided the Court with information it did not have at the time of the original motion schedule. This alone allows this Court to take a fresh look at the motions to dismiss previously filed in light of the decisions in *Aleynikov* and *Pirro*.

For the reasons stated in this memorandum as well as the those previously filed by all counsel, the defendants renew their request that the Court dismiss the Sex Trafficking Counts and the Count of Sex Trafficking Conspiracy in the S-4 Indictment.

5. Counts 4 and 9, Charging Inducement to Travel, Should Be Dismissed for Failure to State an Offense.

The S-4 Indictment changes both Count 4 and Count 9, charging Inducement to Travel to Engage in Unlawful Sexual Activity, by adding a different predicate New York State offense to each count. Specifically, as to Count Four, the S-4 Indictment added the misdemeanor offense of sexual misconduct, in violation of New York Penal Law Section 130.20. As to Count Nine, the S-4 Indictment added the felony offense of Rape in the Third Degree, and eliminated the misdemeanor offense of Forcible Touching, in violation of Penal Law Section 130.52. These changes are not material to the issues raised in the defendants' original motions as to the S-3

15

Indictment.  Accordingly, the defendants incorporate the prior motions by reference and move to dismiss Counts 4 and 9 for the reasons set out in the original motions.

6.  <u>Counts Ten and Eleven Should Be Dismissed For Improper Venue</u>

The S-4 Indictment did not change the allegations in Count Ten.  However, the S-5 Indictment involves the same venue-creating charade (an "Arrest" in the Southern District of New York of defendants located in jail in the Eastern District of New York and in relation to conduct taking place on the high seas) that the government used in connection with Count Ten and is inappropriately-venued in this District as a result.  Therefore, the defendants incorporate the prior motions by reference and move to dismiss Count 10 for the reasons set out in the original motions. As to Count Eleven, the defense, as noted above, asks that Count Eleven be severed so the defense can lodge an appropriate challenge to venue.  In the absence of a requested severance, we ask that Count Eleven be dismissed as being improperly venued in this District.

7.  <u>The Defendants Request A Ruling On Which Uncharged Acts Will Be Admitted</u>

In connection with the defendants' motion to exclude so-called "other act" evidence, the Court ruled that this evidence is admissible either as being relevant to the Count One Conspiracy or under Federal Rules of Evidence 404(b) or 413.  However, the Court also ruled that despite being admissible on those grounds, the government is not permitted to admit all such evidence as it would be wildly cumulative.

The defendants, respectfully, reiterate their request for a pretrial ruling as to specifically what uncharged act evidence will be admitted at this trial.  The Court's ruling that the government can essentially admit some, but not all, of its proffered uncharged act evidence does not provide the defense with sufficient clarity as to what actual evidence will be admitted at trial.  This is something the defense needs to know prior to opening statements.  Accordingly, the defense asks

that the court hold what would amount to a Rule 403 hearing at some point next week where the

Court will rule on specifically which of the proffered uncharged act evidence will be admissible.

      For the foregoing reasons, we ask that the Court grant the defendants' requested relief.

Dated: January 17, 2026
    New York, NY

                          Respectfully submitted,

                          Marc Agnifilo
                          Zach Intrater
                          Teny Geragos

                          *Attorneys for Oren Alexander*

                          Howard Srebnick
                          Jackie Perczek

                          *Attorneys for Alon Alexander*

                          Milton L. Williams
                          Alexander V. Kahn
                          Deanna Paul

                          *Attorneys for Tal Alexander*

cc:    All counsel (via ECF)

17