UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-                                  AFFIRMATION IN RESPONSE

ALON ALEXANDER, OREN ALEXANDER, and    Ind. No. 71737-25
TAL ALEXANDER

                              Defendants.
-----------------------------------------------------------------X

        **ANDREW R. MILLER, ESQ.**, an attorney associated with the Law Offices of Miller & Miller, Esqs., for Caroline B. Epstein, hereby affirms under the penalties of perjury the following:

        1.        All allegations contained herein, unless otherwise indicated, are based upon information and belief, the sources of such information being available court records, conversations with available witnesses and counsel for the Defendants. This Affirmation is submitted in response to Defendant Tal Alexander's (hereinafter "Alexander") Opposition to Non-Party Witness 2's (hereinafter "Witness 2") motion to quash Alexander's subpoena which was served upon said witness on or about January 6, 2026.

        2.        Alexander's position is simple: (1) he acknowledges that he failed to comply with the service requirements of Rule 17(d); (2) he seeks testimony from a witness with no recollection; (3) he wants her present before the jury so that the jury can watch her say just that; and (4) he wants her to search 17-year-old records on speculation. Clearly, under these circumstances Alexander's subpoena to Witness 2 is improper and must be quashed.

        3.        Alexander argues that the subpoena is a "trial subpoena" and that it "is returnable on the date of Witness 2's testimony." This assertion is belied by the subpoena itself which has a

return date of January 20, 2026.[1]  See Witness 2's Mot. at exhibit A (ECF Dckt. 371(2))).  This Court addressed this very issue in its January 15, 2026, decision stating as follows:

> Rule 17(c)(1) authorizes service of subpoenas for "any books, papers, documents, data, or other objects" to be produced in court "before trial or before they are to be offered in evidence."  Rule 17(c) is not intended to be a tool for discovery, which is governed generally by Rule 16.  Instead, Rule 17(c) "should be used only as 'a mechanism for obtaining specific admissible evidence.'"  Rule 17(c)(2) authorizes the Court to quash subpoenas "if compliance would be unreasonable or oppressive."  Upon a motion to quash, the proponent of a subpoena "'must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence.'"
>
> In their opposition to Victim 1's motion to quash, Defendants lay bare their purpose for serving the subpoenas: to cull up impeachment evidence as to each of the victims.  See Def. Opp. at 1 (noting that the "requests directly bear on Alleged Victim 1's credibility, motive, and bias – subjects that are central to trial and well within the scope of permissible impeachment").  This is, in some respects, fatal, as Rule 17(c) may not be used to obtain materials solely for purposes of impeachment.  Because Rule 17(c) subpoenas may be used to obtain only evidentiary material, and because impeachment material is not itself evidentiary, Defendants subpoenas are necessarily deficient.
>
> To be sure, Rule 17(c) authorizes service of subpoenas that are returnable at trial ("trial subpoenas") to obtain impeachment material.  But unlike subpoenas that are returnable prior to trial, subpoenas for impeachment material are only returnable "if and when[ ] the witness who has made the statement takes the stand and testifies.  The defendant only then is entitled to inspect [these] statements[.]"  This is, as the Court has previously remarked, a "common sense rule.  Unless the witness about whom impeachment material is sought actually testifies (or [her] statements are admitted under circumstances making [her] subject to impeachment pursuant to Rule 806), the evidence is not admissible."
>
> Given that each subpoena's return date is pegged to the first day of trial, as currently constructed, the subpoenas can only be characterized as pre-trial subpoenas. As such, Defendants' requests for the materials identified in the subpoenas is inappropriate (and thus unreasonable) at this time.

---

[1]    Although the Subpoena was made returnable on January 20, 2026, Alexander's counsel subsequently advised your affirmant that they would not seek Witness 2's compliance until after February 2, 2026.

See <u>United States v. Alexander</u>, 24-CR-676(VEC), 2026 WL 112113 (US.Dist.SD.NY January 15, 2026) (citations omitted) (emphasis added).

4.      Here, as was the case with the subpoenas at issue in the Court's January 15th decision, Alexander makes clear that the purpose of this subpoena is to obtain impeachment materials to counter the anticipated testimony of Minor Victim 3. See Def. Opp. at 6. Further, the subpoena was made returnable on January 20, 2026, the nominal first day of trial. See Witness 2's Mot. at exhibit A (ECF Dckt. 371(2)) (ECF Dckt. 371(2)). Consequently, consistent with the Court's January 15th decision, Alexander's subpoena to Witness 2 must be quashed as an improper pretrial "impeachment" subpoena. See Alexander, 2026 WL 112113.

5.      Alexander argues that the testimony is needed because Minor Victim 3 will allegedly testify that *her mother* learned of her assault from Witness 2 and when confronted by her mother, Minor Victim 3 recharacterized the incident. See Def. Opp at 6. From conversations with Alexander's counsel, your affirmant does not believe that Alexander is claiming that Witness 2 actually spoke with Minor Victim 3's mother. Rather, your affirmant understands Alexander's position to be that Witness 2 was advised of the assault and relayed that information to some other unidentified individual and that Minor Victim 3's mother ultimately learned of this information through unknown means. Regardless, this anticipated testimony involves multiple layers of inadmissible hearsay which would necessarily be implicated if Witness 2 was compelled to take the stand and testify in the manner proposed.

6.      Alexander's anticipated attempt to impeach Minor Victim 3 on this testimony underscores the problematic nature of such hearsay testimony. Alexander argues that Witness 2's inability to recall such a conversation undermines the credibility of Minor Victim 3, but this is

disingenuous and misleading. Minor Victim 3 is purportedly relating information that <u>she obtained from her mother</u>, i.e., "that her mother learned of the alleged assault as a result of Non-Party Witness 2." Thus the only credibility issue for Minor Victim 3 is whether she accurately relates what her mother told her. How Minor Victim 3's mother obtained the information or was accurate in its retelling to Minor Victim 3 is an utterly different question which has no bearing upon Minor Victim 3's credibility.

7. It is entirely possibly for Minor Victim 3 to accurately relate the conversation she had with her mother, while her mother is wrong or mistaken about the source of the information. Under such circumstances, that Witness 2 may not recall the incident is hardly a fair and reasonable attack on Minor Victim 3's credibility. In effect, Alexander is intending to improperly use Witness 2 to challenge Minor Victim 3's credibility based upon information which did not originate with her and for which she is not responsible. Thus, the subpoena is unreasonable because it implicates inadmissible evidence and is otherwise being used improperly or in bad faith.

8. Alexander argues that:

> [s]urely, if Non-Party Witness 2 had learned that her sister's boyfriend, Alon Alexander, was involved in a gang assault of a minor at a beach house in the Hamptons over Memorial Day Weekend 2009, she would remember. And the fact that Non-Party Witness 2 messaged one of the Alexanders a month later to ask if she and her friends could stay in the same house where Minor Victim 3 was allegedly raped undermines Minor Victim 3's account and allegations.

Alexander's argument is wholly conjectural. But most importantly Alexander's argument hinges upon his characterization of a conversation for which there is no proof actually occurred in the manner suggested. As noted in Witness 2's motion, if Witness 2 had been told, by unknown

individuals, that Alexander "hooked up," "slept with," or had some other vaguely described encounter with a person unknown to her, there would be nothing inherently remarkable or memorable about such a statement. Further, Minor Victim 3's mother could have inferred an assault of Minor Victim 3 from communications that would be otherwise innocuous if they concerned consenting adults.

9.  Alexander's attempt to attack Minor Victim 3's credibility rests entirely on conjecture, inadmissible hearsay, and layered hypotheticals untethered from any admissible evidence. The argument is premised on statements that did not originate with Minor Victim 3, and cannot be attributed to her in any legally cognizable way. This effort to manufacture impeachment evidence where none exists is improper and should be rejected outright.

10. Rule 17(2)(c) simply does not permit Alexander to impose extraordinary burdens upon Witness 2, forcing her to travel across country, so that Alexander can engage in conjecture, inadmissible hearsay, and hypothetical recollections. The defense is attempting to use the subpoena as an investigative device to build impeachment and alibi narratives out of a witness who has sworn she has no recollection. Alexander's core theory is not that Witness 2 witnessed anything — it is that she did not. That is precisely why this subpoena is oppressive. The defendants are compelling a witness to appear solely to say "I don't remember" so they can build an inference argument to the jury. But, given the absence of personal knowledge, the lack of admissible testimony, the passage of time, and the severe burden imposed, compelling Witness 2's testimony is improper and unwarranted.

11. Concerning the photo which Alexander alleges supports his alibi, Alexander asserts as follows:

> Non-Party Witness 2's motion frivolously suggests that because others are in the photo, they should be called instead. The defense is entitled to call the witnesses it chooses. Non-Party Witness 2 is a competent witness to authenticate the photo and identify the circumstances of when and where the photo was taken; forcing the defense to rely on other witnesses is an improper burden on the presentation of the defense case.

See Def. Opp at 5. Alexander overlooks the express purpose of Rule 17(c)(2), which asks one question: whether compliance is unreasonable or oppressive to the witness. The Defendant's purported need for evidence does not eliminate the Rule's protections for third parties. Alexander does not dispute that he has ready access to other individuals depicted within the photo, who could provide the same information as Witness 2. It is Alexander's burden to establish why it is necessary to impose extraordinary burdens upon Witness 2 by compelling her to travel across country to testify at this trial. In view of Alexander's access to other sources of the same information, Alexander's mere desire to have Witness 2 testify is insufficient to justify the extraordinary burden imposed upon Witness 2, especially since Witness 2 has indicated that in view of the 16 years passage of time, she has little recall about the photo and the circumstances surrounding it.

12.     Alexander belittles Witness 2's claim of burden alleging that it is pretextual. Alexander's assertion brings new meaning to the Yiddish term "chutzpah."[2] This is not a question of compelling a witness to travel across town, or even within the state. Alexander is seeking to compel Witness 2 to travel in excess of 2500 miles at short notice which will, of

---

[2]     "Chutzpah" is roughly the equivalent of the Latin phrase "'[a]b abusu ad usum non valet consequentia'" which is translated to mean that "[a] conclusion as to the use of a thing from its abuse is invalid." See People v. Velez 124 Misc.2d 612, 477 NYS.2d 78 (S.Ct. Bronx 1984) (quoting Black's Law Dictionary [3d ed]). More colloquially, it has been noted that "chutzpah" is that state of being that exists when a person who has been convicted of murdering his parents requests clemency from the Court because he is now an orphan.

course, necessitate a significant disruption of her personal and professional life.  Clearly the burden of having to travel cross country on short notice is not feigned or insignificant.  Witness 2's affidavit makes clear that: (1) She does not remember relevant events; (2) She has a medical issue affecting travel; and, (3) Compliance is burdensome and unnecessary.  These are classic grounds under Rule 17(c)(2) for the quashing of a subpoena.  Nor does Alexander have a 6th Amendment right to compel Witness 2's appearance at trial where the supposed need for her testimony is premised upon conjecture, inadmissible evidence and hypothetical recollections.

        13.    Regarding the document production, the subpoena seeks a variety of photographs, videos and "all communications with the Alexander Brothers or that mention or concern the Alexander Brothers between May 15, 2009 and August 31,2009."  In his opposition, Alexander broadens this demand to include "communications" between Witness 2's "friends about wanting to stay with the Alexanders' Hamptons share house i (sic) and plans concerning the same."  Alexander's request requires forensic retrieval of 17-year-old electronic data based on speculation that something useful might exist.  Clearly, this is by definition a fishing expedition.

        14.    Alexander acknowledges that he was required to tend $2,034.25 to Witness 2 as milage but claims that such a failure should be overlooked because Alexander served Witness 2 a standby notice.  But as Alexander, himself, notes this is in direct contravention of the plain language of Rule 17 which requires the tendering of "milage" for service to be complete.  Proper service is a non-technical requirement for a subpoena to be valid and enforceable.  Alexander is not entitled to create his own rules regarding how service may be accomplished.  Accordingly, since Alexander acknowledges that he failed to tender milage at the time of service, the service of the subpoena was not properly accomplished and the subpoena must be quashed.

15.     Finally, Alexander asserts that Witness 2's alternative request to appear virtually should be denied so that the Jury can observe Witness 2's demeanor.  Since the COVID crisis, courts throughout the country have routinely allowed witnesses to appear virtually.  Here, should the Court require Witness 2 to testify, Witness 2 would appear live <u>via</u> video.  Moreover, since Witness 2 is *"a defense* witness," any "[c]oncerns over reliability of evidence against [Alexander] are reduced."  <u>See</u> <u>United State v. Daskal</u>, 21-CR-110(NGG), 2023 WL 4185966 (U.S.Dist.Ct.ED.NY 2023).  Allowing Witness 2 to appear virtually will mitigate some of the "oppression" and difficulty inherent in Witness 2's appearance while still affording the jury ample opportunity to view Witness 2's demeanor.

**WHEREFORE**, it is respectfully requested that this Court grant the relief requested above, and that it grant such other and further relief as to the Court may seem just and proper.

Dated: Brooklyn, New York
       February 2, 2026

LAW OF MILLER & MILLER, ESQS.
By: Andrew R. Miller, Esq.
Attorneys for Witness 2
26 Court Street, Ste. 2511
Brooklyn, New York 11242